David W. Elrod (Texas State Bar No. 06591900)
Craig Tadlock (Texas State Bar No. 00791766)
ELROD, PLLC
500 N. Akard St., Suite 3000
Dallas, Texas 75201
Telephone: (214) 855-5188
Facsimile: (214) 855-5183

Mark T. Power (MP-1607)
Jeffrey Zawadzki (JZ-1656)
HAHN & HESSEN LLP
488 Madison Avenue
New York, New York 10022
Telephone: (212) 478-7200
Facsimile: (212) 478-7400

**Counsel for Gas Transmission Northwest Corporation and Portland Natural Gas Transmission System**

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 05-60200-BRL |
| CALPINE CORPORATION, *et al.*, | ) | (Jointly Administered) |
| | ) | |
| Debtors | ) | District Court |
| | ) | Case No. 07-_____ |

### GAS TRANSMISSION NORTHWEST CORPORATION AND PORTLAND NATURAL GAS TRANSMISSION SYSTEM'S MOTION TO WITHDRAW THE REFERENCE AS TO ARTICLE V, SECTION A.2, OF THE DEBTORS' FOURTH AMENDED JOINT PLAN OF REORGANIZATION AND DEBTORS' LIMITED OBJECTION TO THE CLAIMS OF GAS TRANSMISSION NORTHWEST CORPORATION AND PORTLAND NATURAL GAS TRANSMISSION SYSTEM FOR LACK OF JURISDICTION, AND LEGAL MEMORANDUM IN SUPPORT

Gas Transmission Northwest Corporation ("GTN") and Portland Natural Gas Transmission System ("PNGTS") (collectively the "Pipelines") move the court to withdraw the reference under 28 U.S.C.A. §157(d) as to Article V, Section A.2 of the Debtors' Fourth Amended Joint Plan of Reorganization (and/or any subsequent plan that seeks to avoid the executory contracts with GTN and/or PNGTS) ("Plan") and hold that this Court and the Bankruptcy Court lack jurisdiction to approve the Debtors' attempt to reject, or purportedly "repudiate," the contracts with GTN and PNGTS. The Pipelines also move the court to withdraw the reference as to Debtors' Limited Objection to Gas Transmission Northwest

Corporation's Claim Nos. 4562, 5912, 5914, 5927, 5928 and 5929, and Portland Natural Gas Transmission System's Claim Nos. 4769 and 4773 ("Objection"). The withdrawal of the reference to the Plan and Objection fall within the mandatory and permissive withdrawal provisions of 28 U.S.C.A. §157(d).

## I.   Summary of Motion to Withdraw

This Court should withdraw the reference to the Bankruptcy Court regarding that portion of the Debtors' proposed Plan and Objection that seek to "repudiate" the executory natural gas transportation contracts between the Debtors and the Pipelines, and determine the contract rate to be applied to the Pipelines' claims, and then dismiss the Debtors' requested relief. The rejection (or purported "repudiation") of the Pipelines' contracts, and the contract rate that is the basis for the Pipelines' damages, fall within the exclusive jurisdiction of the Federal Energy Regulatory Commission ("FERC"), which obtains its regulatory authority from the Natural Gas Act ("NGA"). As this Court previously held in *California Department of Water Resources v. Calpine Corp.* (*In re Calpine Corp.*), 337 B.R. 27, 29 (S.D.N.Y. 2006), the Bankruptcy Code prohibits an Article I court, or an Article III court, from interfering with FERC's exclusive jurisdiction. Under the law of this case, the Debtors cannot reject the FERC regulated contracts without FERC approval because the rejection of the regulated contracts falls within the exclusive jurisdiction of the FERC.

The same law applied regardless of the term Debtors ascribe to their actions. The Debtors purported "repudiation" of the Pipelines' contracts is nothing more than an improper attempt to avoid this Court's prior decision in *California Dept. of Water Resources*. There is no authority that allows the Debtors to avoid the mandatory requirements of Section 365 of the Bankruptcy Code, which requires a debtor to accept or reject executory contracts. Indeed, if the

Debtors are allowed to "repudiate" the Pipelines' contracts without FERC approval, the intent and legal import of the Bankruptcy Code, the NGA and the FERC will be avoided without any legal authority supporting the Bankruptcy Court's action.

Similarly, the Debtor's Objection must also be withdrawn because the Bankruptcy Court lacks jurisdiction to determine, as requested by the Debtors, that the contract rate applicable to the Pipelines' damage claims differs from the filed contract rate determined by the FERC. Under well established precedent, known as the filed rate doctrine, a court cannot challenge the rates determined by the FERC because that determination falls within FERC's exclusive jurisdiction.

Moreover, this Court must also withdraw the reference because the determination of the Debtors' Objection necessarily requires significant interpretations of federal law, and the consideration of the potential conflicts between the NGA, FERC jurisdiction, Article I and Article III courts' jurisdiction and title 11.

Finally, good cause exists to withdraw the reference because judicial economy and uniformity dictate that this Court interpret and apply its decision in *California Department of Water Resources* to (1) the Debtors' attempt to avoid the regulated contracts with the Pipelines, and (2) the Debtors' attempt to judicially determine the applicable regulated contract rate to be used to determine the amount of the Pipelines' claims.

Importantly, the withdrawal of the reference will not interfere with the confirmation of the Debtors' Plan because a simple modification to the Plan, coupled with the Debtors following FERC procedures, will allow confirmation of the Plan to proceed. First, the Debtors may modify the Plan to hold sufficient New Calpine Common Stock in reserve[1] for the Pipelines that equates to the value of their claims—which which have already been estimated for voting and reserve

---

[1] The Debtors' plan provides that holders of rejection damage claims shall receive shares of New Calpine common stock in satisfaction of their claims. Plan, Article II, B, ¶11.

purposes in the Bankruptcy Court's Order Approving the Debtors' Disclosure Statement—until the Objection can be resolved. Second, Debtors can seek FERC approval of the rejection of the Pipeline contracts and a determination of the proper contract rate to be applied to the Pipelines' claims.

## II.     Jurisdiction

The Bankruptcy Court has jurisdiction over the Debtor's Chapter 11 proceeding pursuant to 28 U.S.C.A. §1334(a). The District Court has jurisdiction to consider the Motion to Withdraw the Reference under 28 U.S.C.A. §§157, 1334 and 1412. Venue is proper under 28 U.S.C. §§1408 and 1409.

## III.     Compliance with Local Requirements

This Motion includes citations to the applicable authorities and a discussion of their application, which satisfy the requirements of Local Rule 9013-1 for the Bankruptcy Court of the Southern District of New York and Local Civil Rule 7.1 of the Southern District of New York.

## IV.     Relevant Background

### A.     The Debtors entered into regulated contracts with the Pipelines.

The Pipelines own and operate natural gas pipelines in the United States. The Debtors entered into long-term, firm contracts with the Pipelines in order to guarantee they had sufficient capacity to transport their natural gas. It is undisputed that the terms, rates, acceptance and rejection of the contracts entered into by the Debtors for the transportation of natural gas fall within the regulatory authority of the NGA and the FERC. All of the Pipelines interstate activities are regulated by the NGA. 15 U.S.C.A. §717 *et seq.* (2007). The NGA grants FERC the power to approve or reject the Pipelines' contracts. 15 U.S.C.A. §717(c) (2007); 18 C.F.R.

Part 154 (2007). As a result, the FERC has exclusive jurisdiction over any action affecting these regulated contracts.

### B. This Court previously held that the Debtors cannot obtain court approval reject contracts within the exclusive jurisdiction of the FERC.

In January 2006, this Court held that because the FERC had exclusive jurisdiction over certain contracts between wholesale power purchasers and the Debtors, the Court lacked jurisdiction to accept the Debtors' request to reject those contracts. *California Dept. of Water Resources v. Calpine Corp.* (*In re Calpine Corp.*), 337 B.R. 27, 29 (S.D.N.Y. 2006). As set forth below, the FERC also has exclusive jurisdiction over the firm contracts between the Debtors and the Pipelines. As a result, both this Court, and the Bankruptcy Court, lack jurisdiction to approve the Debtors' request to "repudiate" the Pipeline contracts or to determine the applicable contract rate to be applied to the Pipelines' damages as a result of the "repudiation." *Id.*

### C. The Debtors reject the PNGTS contract and then withdraw their objection.

In February 2006, Debtors filed a Notice of Rejection of the PNGTS Contract (the "PNGTS Rejection Notice"). Because this Court already ruled that the Bankruptcy Court lacked jurisdiction to accept the rejection of any FERC regulated contract, PNGTS filed a motion to withdraw the reference. Recognizing that they could not reject the PNGTS contract without FERC approval, the Debtors voluntarily withdrew the rejection the same month. The Debtors never attempted to reject the GTN firm contracts.

### D. The Debtors then "repudiate" the FERC regulated contracts and seek a judicial determination of the contract rate to be used to determine the Pipelines' damages.

The Debtors are now attempting to circumvent this Court's ruling in *California Department. of Water Resources* by asserting they are not rejecting, but "repudiating" their contracts with the Pipelines. (Ex. 1, Fourth Amended Disclosure Statement, p. 45, ¶2 "Repudiation of FERC Jurisdictional Contracts"). The Debtors claim this "repudiation" occurred when they told the Pipelines that they would "no longer accept service under the contracts." (Ex. 2, p. 5).

Until recently, Debtors did not object to the Pipelines proofs of claim.[2] The Debtors are now objecting to the Pipelines' recovery of future damages. (Ex. 2, Limited Objection). Debtors contend that the Pipelines' damages should be measured by the contract rate approved by the FERC as of the petition date instead of the filed rate at the time the damages are incurred. (Ex. 2, p. 6). As a result, Debtors are asking the Bankruptcy Court to determine the rates applicable to the long-term contracts agreed to by the Debtors—an issue within the exclusive jurisdiction of the FERC under the filed rate doctrine.

## V.    Legal Argument

The withdrawal of the reference with respect to that portion of the Plan that seeks to "repudiate" the FERC contracts is mandatory because the court lacks jurisdiction to approve any rejection of (or the purported "repudiation" of) the FERC regulated contracts. For the same reasons, Debtors' request for relief must be dismissed for lack of jurisdiction unless FERC approval is sought and obtained by the Debtors.

---

[2] GTN filed proofs of claim against Calpine Corporation, Calpine Energy Services, L.P., Calpine Energy Services Holdings, Inc., CPN Energy Services GP, Inc., CPN Energy Services, L.P. and Calpine Power Company for $525.1 million. PNGTS originally filed proofs of claim against Calpine Corporation and Rumford Power Associates Limited Partnership for $201.5 million. PNGTS and the Debtors entered into a stipulation on June 2, 2007, which was accepted by the bankruptcy court, that PNGTS would have an allowed claim in the Calpine Corporation and Rumford Power estates for an undetermined amount not to exceed $174 million. PNGTS later amended its proof of claim to recognize the stipulated cap of $174 million. Later, the parties entered into a claims estimation agreement whereby GTN's and PNGTS's claims have now been estimated at $300 million and $174 million, respectively, both for voting purposes and for purposes of establishing reserves of New Calpine Common Stock under Articles VI.C and VII.C3 of the Plan.

This Court must also withdraw the reference as to the Debtors' Objection because the determination of the contract rates to be applied to the Pipelines' damages also falls within the exclusive jurisdiction of the FERC under the filed rate doctrine. Moreover, any determination of the Objection requires significant interpretation of the NGA, the FERC regulatory scheme and considerations of the interplay between this area of federal law and title 11.

**I.   The Debtors' proposed Plan to "repudiate" the Pipeline contracts and Objection to the contract rate directly interferes with FERC's exclusive jurisdiction over the Pipelines' natural gas contracts and falls outside of the power of the courts.**

The Debtors' proposed Plan to "repudiate" the Pipeline contracts, and Objection to the Pipeline's proofs of claim, not only require significant interpretations of federal law—they fall outside of the jurisdiction of any Article I or Article III tribunal. Congress enacted the NGA because the interstate sale of natural gas affected the public interest. 15 U.S.C.A §717(a)-(b). The NGA evidences Congress' desire to occupy the field and assure adequate, reliable, and reasonably priced supply of natural gas for an entire nation by creating comprehensive regulatory framework. *Public Serv. Comm'n of Kentucky v. Fed. Energy Regulatory Comm'n*, 610 F.2d 439 (6th Cir. 1979). The NGA applies to companies that transport natural gas and the transportation of natural gas in interstate commerce. *Federal Power Comm'n v. East Ohio Gas Co.*, 70 S.Ct. 266, 338 U.S. 464, 94 L.Ed. 268 (1950).

Generally, the NGA vests the FERC with the power to perform any acts necessary to carry out the provisions of the NGA. 15 U.S.C. §717o; 18 C.F.R. §375.101. The NGA requires transporters of natural gas, like the Pipelines, to file their transportation rates and charges with FERC, who then determines if they are "just and reasonable." 15 U.S.C. §717c(a). The FERC has the exclusive authority to determine the reasonableness of a transporter's rate. *Id*. As a result, it is well established that a court cannot change or question FERC approved rates.

7

*Arkansas Louisiana Gas Co. v. Hall*, 453 U.S. 571, 577 (1981); *Mississippi Power & Light Co. v. Mississippi ex rel. Moore*, 487 U.S. 354, 371, 108 S.Ct. 2428, 101 L.Ed.2d 322 (1988).

Because transporters and sellers of natural gas may only charge FERC approved rates, a court cannot collaterally attack an approved rate. *California Dep't of Water Resources*, 337 B.R. at 32.[3] The only forum is the FERC. *Id.* This rule of law is known as the "filed rate doctrine." But FERC jurisdiction extends well beyond the regulation of rates—it also extends to the terms and conditions of contracts themselves. 15 U.S.C. § 717c(c); *Natural Gas Pipeline Co. of America v. F.E.R.C.*, 904 F.2d 1469, 1470 (10th Cir. 1990). As this Court has recognized, "once filed with FERC, wholesale power contracts become the 'equivalent of a federal regulation.'" *California Dep't of Water Resources*, 337 B.R. at 33. For this reason, the duty to perform under a regulated contract may be required by the FERC, not just by the parties to the contract. *Pennsylvania Water & Power Co. v. Federal Power Comm'n*, 343 U.S. 414, 422, 72 S.Ct. 843, 96 L.Ed. 1042 (1952).

Just as this Court previously held in *California Department of Water Resources* that neither this Court nor the Bankruptcy Court has the power to approve the Debtors' attempts to alter the "rates, terms, conditions or duration of the contracts" governed by the Federal Power Act and regulated by the FERC, the Debtors attempt to "repudiate" their filed rate natural gas contracts with the Pipelines, and request to have the bankruptcy court adjudicate the rates

---

[3] Although this Court's opinion in *California Dept. of Water Resources* was decided under the Federal Power Act, the courts have an established practice of citing interchangeably decisions interpreting the Federal Power Act and the Natural Gas Act. *See Arkansas Louisiana Gas Co.*, 453 U.S. at 577 n. 7 ("as we have previously said, the relevant provisions of the Federal Power Act and the Natural Gas Act 'are in all material respects substantially identical' … we therefore follow our established practice of citing interchangeably decisions interpreting the pertinent sections of the two statutes.") (citing *Federal Power Comm'n v. Sierra Pacific Power Co.*, 350 U.S. 348, 353 (1956)); s*ee also Public Utility District No. 1 of Grays Harbor County Washington v. Idacorp, Inc.*, 379 F.3d 641, 649 n. 8 (9th Cir. 2004).

applicable to the Pipelines' damages, is simply impermissible. As this Court stated, the Debtors cannot obtain in bankruptcy relief that they could not obtain without FERC approval:

> Because there is nothing in the Bankruptcy Code that limits FERC's jurisdiction, Calpine cannot achieve in Bankruptcy Court what neither it, nor any other party in this case, not any other federally regulated energy company in the country could do without seeking FERC approval: cease performance under the rates, terms, and conditions of filed rate wholesale energy contracts in hopes of getting a better deal.

*Id.* at 36.

Here, the NGA, just like the Federal Power Act, does not limit the FERC's jurisdiction when a contracting party is in bankruptcy. Regardless of what term the Debtors ascribe to their rejection of the contracts, they are undoubtedly seeking to alter the terms of the FERC jurisdictional contracts by changing their duration. *Id.* Similarly, the Debtors request for an adjudication of the contract rate applicable to the Pipelines' damages seeks to change the terms of the Pipelines' contracts. As this Court has stated, "what FERC giveth, only FERC may taketh away." *Id.* at 37. Because the relief the Debtors seek cannot be provided outside the exclusive jurisdiction of the FERC, this Court must withdraw the reference and must dismiss any relief sought by the Debtors that interferes with the FERC's jurisdiction. *In re Permian Basin Area Rate Cases*, 390 U.S. 747, 822, 88 S.Ct. 1344, 20 L.Ed.2d 312 (1968).

    **II.**    **The court must withdraw the reference because the issues require the interpretation of federal law.**

28 U.S.C.A. §157(d) mandates withdrawal of the reference to the Bankruptcy Court if "the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." This statutory mandate has been interpreted as requiring withdrawal of the reference if the determination of the issue would require the bankruptcy court to engage in

9

"significant interpretation" of federal law. *City of New York v. Exxon Corp.*, 932 F.2d 1020, 1026 (2nd Cir. 1991). Indeed, even a core proceeding must be withdrawn if it necessarily requires a significant interpretation of federal law or a potential conflict between federal law and title 11. *Schgrue v. Pension Benefit Guaranty Corp. (In re Ionosphere Clubs, Inc.)*, 142 B.R. 645, 647 (S.D.N.Y. 1992); *Keene Corp. v. Bailey & Wesner LLP (In re Keene Corp.)*, 182 B.R. 379, 382 (S.D.N.Y. 1995)(citation omitted).

In the present case, the reference must be withdrawn because a determination of the ability of the Debtors to "repudiate" the Pipeline contracts, and the determination of the contract rate to be applied to the Pipelines' claims, would involve a significant interpretation of the NGA, the regulatory powers granted to the FERC and a potential conflict between the goals of title 11 and a comprehensive, statutory scheme. The issues presented by the Debtors' requested relief call for a determination by an Article III judge because they involve much more than the routine application of statutes outside the Bankruptcy Code. *In re Horizon Air, Inc.*, 156 B.R. 369, 373 (N.D.N.Y. 1993).

Most notably, the Debtors' proposed plan seeks to "repudiate" the Pipeline contracts. There is absolutely no authority for this action under the Bankruptcy Code. Indeed, it directly contradicts Section 365 of the Code, which requires all executory contracts to be accepted or rejected. Moreover, Debtors are seeking an alteration of the terms of the FERC jurisdictional contracts by requesting the Bankruptcy Court find the Pipelines cannot recover their filed rates. This analysis requires an interpretation of the interplay between title 11, Congressional intent and the FERC regulatory scheme. Finally, this Court, not the Bankruptcy Court, should apply this Court's decision in *California Department of Water Resources* to the issues raised by the Plan and the Objection.

In sum, even if this Court and the Bankruptcy Court have jurisdiction to determine the ability of the Debtors to "repudiate" the Pipeline contracts and the applicable contract rates that govern the Pipelines' claims for damages, these issues involve much more than the application of federal law and bankruptcy law. Accordingly, at a minimum, the reference must be withdrawn.

### III.  Permissive withdrawal of the reference is also warranted.

There is also good cause to permissively withdraw the reference in this case. 28 U.S.C.A. §157(d). The Second Circuit applies a two-part test to determine if good cause exists to withdraw the reference to the bankruptcy court. First, the court considers whether the issue is a core issue or a non-core issue. Second, the court will consider whether the withdrawal of the reference is an efficient use of judicial resources and will promote uniform bankruptcy administration. *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993).

This Court has already considered the interplay between the Federal Power Act and the Debtors' request to reject certain firm contracts regulated by the FERC. In the interests of judicial economy, and the promotion of uniformity, it should now be the court to apply its prior decision in *California Department of Water Resources* to the NGA, the Plan and the Objection. Accordingly, even if a withdrawal is not mandatory, it is warranted.

### IV.  Withdrawal of the reference will not interfere with confirmation of the Plan.

The key to the successful confirmation of the Debtors' Plan is already in the hands of the Debtors. A simple modification to the Plan, coupled with the Debtors following FERC procedures, will allow confirmation of the Plan to proceed even if this Court withdraws the reference. First, the Debtors may modify the Plan to hold sufficient New Calpine Common Stock for the Pipelines that equates to the value of their claims—which have already been estimated for voting and reserve purposes in the Bankruptcy Court's Order Approving the

Debtors' Disclosure Statement—until the Objection can be resolved. (Ex. 3, Order Approving the Debtors' Disclosure Statement). Second, Debtors can seek FERC approval of the rejection of the Pipeline contracts and a determination of the proper contract rate to be applied to the Pipelines' claims. As a result, any concerns about a delay in the confirmation of the Debtors' Plan should not affect the withdrawal of the reference on these issues.

## VI.     Request for Relief

For these reasons, Gas Transmission Northwest Corporation and Portland Natural Gas Transmission System request that the Court withdraw the reference under 28 U.S.C.A. §157(d) as to Article V, Section A.2 of the Debtors' Fourth Amended Joint Plan of Reorganization and/or any subsequent or amended plan that seeks to reject or repudiate the contracts with these creditors and find that the court and the bankruptcy court lacks jurisdiction to approve the rejection or repudiation of the contracts with these creditors. Gas Transmission Northwest Corporation and Portland Natural Gas Transmission System request that the Court withdraw the reference as to the Limited Objection to Gas Transmission Northwest Corporation's Claim Nos. 4562, 5912, 5914, 5927, 5928 and 5929, and Portland Natural Gas Transmission System's Claim Nos. 4769 and 4773 and for all such other relief to which they may be legally and equitably entitled.

Dated: October 23, 2007                              Respectfully submitted,


                                                     ___/s/  David W. Elrod_____
                                                     David W. Elrod (TX State Bar 06591900)
                                                     Craig Tadlock (TX State Bar 00791766)
                                                     ELROD, PLLC
                                                     500 N. Akard Street, Suite 3000
                                                     Dallas, Texas 75201
                                                     Telephone: (214) 855-5188
                                                     Facsimile: (214) 855-5183

                                                     **ATTORNEYS FOR GAS
                                                     TRANSMISSION NORTHWEST
                                                     CORPORATION AND PORTLAND
                                                     NATURAL GAS TRANSMISSION
                                                     SYSTEM**

**CERTIFICATE OF SERVICE**

       I hereby certify that on October 23, 2007, the above-referenced document was served upon parties in interest via the Court's ECF notification system and in accordance with the Debtor's September 21, 2007 Notice of Debtors' Limited Objection to Gas Transmission Northwest Corporation's Claim Nos. 4562, 5912, 5914, 5927, 5928 and 5929, and Portland Natural Gas Transmission System's Claim Nos. 4769 and 4773 via facsimile and e-mail to: **(a)** Kirkland & Ellis LLP, Citigroup Center, 153 East 53rd Street, New York, New York 10022, *Attn: Edward Sassower, Richard Cieri;* and Kirkland & Ellis LLP, 200 East Randolph Street, Chicago, Illinois 60601, *Attn.: David R. Seligman, Marc Kieselstein, James J. Mazza, Jr., and Mark E. McKane* **(b)** the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004, *Attn: Paul Schwartzberg;* **(c)** counsel to the Unofficial Committee of First Lien Debtholders, Brown Rudnick Berlack Israels LLP, One Financial Center, Boston, Massachusetts 02111, *Attn.: Steven B. Levine;* **(d)** counsel to the Unofficial Committee of Second Lien Debtholders, Paul Weiss Rifkind Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019-6064, *Attn.: Alan W. Kornberg, Andrew N. Rosenberg, Elizabeth R. McColm;* **(e)** counsel to the Official Committee of Unsecured Creditors, Akin Gump Strauss Hauer & Feld LLP, 590 Madison Avenue, New York, New York 10022-2524, *Attn: Michael S. Stamer, Philip C. Dublin, Alexis Freeman;* **(f)** counsel to Debtors' postpetition lenders, Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York 10017, *Attn: David Mack and Peter Pantaleo;* **(g)** the Official Committee of Equity Security Holders, Fried Frank Harris Shriver & Jacobson LLP, One New York Plaza, New York, New York, 10004, *Attn: Gary Kaplan, Brad E. Scheler, Adrian Feldman.*

                                                                         ___/s/ Craig Tadlock_____      
                                                                         Craig Tadlock