**EXHIBIT B**

KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, NY 10022-4611
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Richard M. Cieri (RC 6062)
Marc Kieselstein (admitted pro hac vice)
David R. Seligman (admitted pro hac vice)
Edward O. Sassower (ES 5823)

Counsel for the Debtors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) ) |
| Calpine Corporation, et al., | ) Chapter 11 ) ) Case No. 05-60200 (BRL) |
| Debtors. | ) Jointly Administered ) |

**AFFIDAVIT OF MORGAN P. SUCKOW IN SUPPORT OF
DEBTORS' RESPONSE TO THE BANKRUPTCY COURT'S ORDER
TO SHOW CAUSE WHY THE EQUITY COMMITTEE'S MOTION
FOR A STAY PENDING APPEAL SHOULD NOT BE GRANTED**

STATE OF NEW YORK     )
                                       ) ss:
COUNTY OF NEW YORK )

Morgan P. Suckow, being duly sworn, deposes and states:

1. I am a Vice President of Miller Buckfire & Co. LLC ("Miller Buckfire"), which is serving as Financial Advisor and Investment Banker to the debtors in the above-captioned Chapter 11 Cases (collectively, the "Debtors").

2. I graduated from Duke University.

3. During my professional career, I have advised clients in numerous restructurings involving billions of dollars of debt. I have extensive experience representing debtors, creditors

and other constituents in numerous M&A, financing and restructuring transactions, including many in the energy industry. In addition to my work with these Debtors, my energy industry experience includes engagements with TECO Energy and the Official Committee of Unsecured Creditors of Mirant Corporation.

4. I am familiar with and participated in the Debtors' efforts to obtain additional capital to fund their emergence from these chapter 11 cases.

5. Between April and June 2007, the Debtors, through Miller Buckfire, ran a competitive process to obtain an exit financing commitment. During that process, Miller Buckfire contacted five potential lenders and received favorable initial proposals from each. The Debtors and Miller Buckfire subsequently negotiated with each potential lender to ensure that the Debtors would receive the most attractive terms available for the exit financing. On May 11, 2007, the Debtors selected Goldman Sachs to be the lead arranger for the exit financing. The Debtors and Goldman Sachs negotiated the exit financing commitment until June 20, 2007, when the Debtors received an executed commitment for an exit financing (the "Exit Financing Commitment") with very competitive pricing and structure terms. That Exit Financing Commitment expires on January 31, 2008.

6. Shortly after the Debtors executed the Exit Financing Commitment and paid a portion of the commitment fee, the capital markets began to experience significant volatility, resulting in deteriorating debt market conditions. Those worsening conditions are evidenced by market metrics for leveraged loans similar to Calpine's exit facility. For example, according to Standard & Poor's Leveraged Commentary and Data, the average yield in the secondary market for large single-B rated loans, expressed as a spread over the prevailing LIBOR rate, rose from 229 basis points to 367 basis points from the end of June 2007 to the end of September 2007. (A

2

true and accurate copy of the LCD chart showing the "Average Secondary Spread of B-Rated Deals Subset of Top 100 Facilities by Outstandings" is attached hereto as Exhibit A.) That rise represents investors' increased yield requirements in the current debt markets.

7. If the current debt capital market conditions were to persist, and if the Debtors were required to negotiate a new exit financing due to an expiration of the Exit Financing Commitment, the cost of new financing likely would be materially higher and certain terms would be materially worse. Consequently, the Debtors' interest expense on a new exit financing of similar size would significantly exceed the interest expense under the Exit Financing Commitment, costing the Debtors hundreds of millions of dollars over the life of the loan. For example, if the interest cost of Calpine's exit financing were to increase commensurate with the increase in the average yield on single-B rated loans – everything else being equal – Calpine would incur nearly $800 million in aggregate additional interest expense over the life of the financing. In short, the current Exit Financing Commitment is a valuable and irreplaceable asset of the Debtors' estates.

8. Further, if Calpine were to lose the Exit Financing Commitment and were required to raise new and more expensive exit financing, the Debtors may determine that it is prudent to raise less debt in order to maintain a manageable level of interest expense. Given current or further deteriorated debt capital market conditions, there is also a possibility that the amount of financing contemplated by the Exit Financing Commitment would not be available to the Debtors. The Debtors consequently may have insufficient liquidity to satisfy their second-lien lenders in cash, requiring material changes to the structure of the Debtors' plan of reorganization and further delaying these Chapter 11 cases.

3

9.     Finally, if the Debtors were to lose their Exit Financing Commitment and their emergence from bankruptcy were to be delayed, the Debtors would continue to accrue claims in respect of post-petition interest on, among other things, the second-lien debt, unsecured debt claims, contract rejection claims and general unsecured claims. Based on current claims estimates, the Debtors would accrue approximately $70 million in additional claims per month in respect of post-petition interest for each month that emergence from bankruptcy is delayed.

Dated: October 3, 2007

Respectfully submitted,

*(signature)*

Morgan P. Suckow
Vice President
Miller Buckfire & Co. LLC

Financial Advisor and Investment Banker
to the Debtors

Sworn to and subscribed before
me this 3 day of October 2007.

Notary Public: *(signature)* Michelle Nunns

My Commission Expires: Nov. 1 2008

MICHELLE NUNNS
Notary Public, State of New York
No. 01NU6117939
Qualified in New York County
Commission Expires November 1, 2008

5

**Exhibit A**



Average Secondary Spread of B-Rated Deals Subset of Top 100 Facilities by Outstandings

Source: Standard and Poor's LCD and S&P/LSTA Leveraged Loan Index

Legend: All (58) — Cov-Lite (16) — Cov Heavy (42)