David W. Elrod (Texas State Bar No. 06591900)      Mark T. Power (MP-1607)
Craig Tadlock (Texas State Bar No. 00791766)       Jeffrey Zawadzki (JZ-1656)
ELROD, PLLC                                        HAHN & HESSEN LLP
500 N. Akard St., Suite 3000                       488 Madison Avenue
Dallas, Texas 75201                                New York, New York 10022
Telephone:  (214) 855-5188                         Telephone:  (212) 478-7200
Facsimile:  (214) 855-5183                         Facsimile: (212) 478-7400

**Counsel for Gas Transmission Northwest**
**Corporation and Portland Natural Gas**
**Transmission System**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | Case No. 05-60200-BRL |
| CALPINE CORPORATION, *et al.*, | ) | (Jointly Administered) |
| | ) | |
| Debtors | ) | District Court |
| | ) | Case No. 07-cv-09584 (GEL) |

**GAS TRANSMISSION NORTHWEST CORPORATION AND**
**PORTLAND NATURAL GAS TRANSMISSION SYSTEM'S**
**REPLY IN SUPPORT OF ITS MOTION TO WITHDRAW THE REFERENCE**
**AS TO ARTICLE V, SECTION A.2, OF THE DEBTORS' FOURTH AMENDED JOINT**
**PLAN OF REORGANIZATION AND DEBTORS' LIMITED OBJECTION TO**
**THE CLAIMS OF GAS TRANSMISSION NORTHWEST CORPORATION**
**AND PORTLAND NATURAL GAS TRANSMISSION SYSTEM FOR LACK**
**OF JURISDICTION, AND LEGAL MEMORANDUM IN SUPPORT**

Gas Transmission Northwest Corporation ("GTN") and Portland Natural Gas

Transmission System ("PNGTS") (collectively the "Pipelines") file this reply in support of their

motion to withdraw the reference under 28 U.S.C.A. §157(d) as to Article V, Section A.2 of the

Debtors' Fourth Amended Joint Plan of Reorganization or any subsequent plan that seeks to

avoid the executory contracts with the Pipelines without obtaining the requisite regulatory

authority to do so and as to Debtors' Limited Objection the the Pipelines' Proofs of Claim.[1]  The

---

[1] GNT and PNGTS file this reply in support of its Motion to Withdraw the Reference and in response to the
Debtors' Opposition to Gas Transmission Northwest Corporation and Portland Natural Gas Transmission System's
Motion to Withdraw the Reference and the Memorandum of Law of the Official Committee of the Unsecured

withdrawal of the reference to the Plan and Limited Objection fall within the mandatory and

permissive withdrawal provisions of 28 U.S.C.A. §157(d).

## I.    Summary of Reply

This Court should withdraw the reference to the bankruptcy court regarding that portion

of the Debtors'[2] proposed plan and limited objection to the Pipelines' proofs of claim that seek to

repudiate—and now also reject—the  executory natural gas transportation contracts between the

Debtors and the Pipelines without obtaining the requisite regulatory authority to do so from the

FERC.  Despite the Debtors' attempts to moot the Pipelines' Motion to Withdraw by altering the

wording of the proposed plan, and rejecting the executory contracts for the first time in response

to the Pipelines' Motion to Withdraw, the reasons mandating or allowing withdrawal still exist.

As this Court previously held in *California Department of Water Resources v. Calpine

Corp.* (*In re Calpine Corp.*), 337 B.R. 27, 29 (S.D.N.Y. 2006), the bankruptcy code prohibits an

Article I court, or an Article III court, from interfering with FERC's exclusive jurisdiction.  As a

result, the Debtors cannot reject (or "repudiate") the Pipelines' FERC regulated contracts without

FERC approval.

Moreover, the Debtors recent amendment to the Plan does not change the fact that their

limited objection to the Pipelines' proofs of claim requests that the bankruptcy court calculate the

Pipelines' damages using a rate other than the rate approved (or extremely likely to be approved)

by the FERC.  Under well established precedent, a court cannot alter the rates determined by the

FERC because it would interfere with FERC's exclusive jurisdiction.

---

Creditors of Calpine Corporation et al. in Opposition to Gas Transmission Northwest Corporation and Portland Natural Gas Transmission System's Motion to Withdraw the Reference.

[2] For simplicity, the Pipelines will refer to the Debtors and the Official Committee of the Unsecured Creditors of Calpine Corporation collectively as "Debtors" in this reply as the opposition of the Debtors and the Committee raises the same issues and arguments.

The Debtors' unsupported accusation that the Pipelines seek to derail the confirmation of its plan, or its funding, should also be rejected by this Court. The withdrawal of the reference will not interfere with the confirmation of the plan because a simple modification to the plan, coupled with the Debtors following the established law of the case and FERC procedures, will allow confirmation of the plan to proceed. First, the Pipelines do not intend to inhibit the distributions to any other creditors. Rather, the Debtors may simply reserve sufficient New Calpine Common Stock for the Pipelines that equates to the value of their claims (which have already been estimated for voting and reserve purposes in the Bankruptcy Court's Order Approving the Debtors' Disclosure Statement) until the limited objection can be resolved. Second, Debtors can seek FERC approval prior to any rejection of the Pipeline contracts. Third, the determination of the proper contract rate to be applied to the Pipelines' claims is not a plan issue, but simply relates to the resolution of the Debtors' limited objection to the Pipelines' claims.

Finally, the Debtors' contention that the Pipelines' Motion to Withdraw is untimely relies upon a highly selective recitation of the underlying procedural background and ignores the circumstances surrounding the Pipelines' Motion to Withdraw. Specifically, until the Debtors filed their limited objection to the Pipelines' claims, and the bankruptcy court approved the Debtors' disclosure statement in support of the Debtors' proposed plan that purports to "repudiate" the Debtors' contracts with the Pipelines, the Pipelines had nothing on which to withdraw the reference.

Although the Pipelines' have consistently asserted that the Debtors' so-called "repudiation" theory was improper and had no legal effect, the issue of the bankruptcy court's jurisdiction over the Pipelines' FERC regulated contracts with the Debtors, and the contract rate

applicable to the Pipelines' claims against the Debtors, came to fruition in the fall of 2007. The

triggering events were the Debtors' decision to file a limited objection to the Pipelines' proofs of

claim for the first time on September 21, 2007 and the bankruptcy court's approval of the

Debtors' Amended Disclosure Statement on September 26, 2007, which supported a plan in

which the Debtors would be allowed to "repudiate" the FERC regulated contracts with the

Pipelines without FERC approval. Thus, only after there was a challenge to the contract rate of

the FERC regulated contracts, an order allowing the flawed plan to proceed and subsequent

discussions and negotiations with the Debtors to resolve the Pipelines' claims, and these issues,

prior to the confirmation hearing failed, did the Pipelines timely move to withdraw the reference

on October 23, 2007.

Moreover, since the Pipelines filed their Motion to Withdraw, the Debtors have flip-

flopped positions and now have filed a motion to reject the contracts. The motion to reject is still

flawed because it proposes rejection without the requisite FERC authority. But for purposes of

this Motion, the critical fact is that in filing the motion to reject the contracts, the Debtors are

tacitly admitting that their "repudiation" theory is ineffective. The Debtors' new attempt at

rejection places this case even more squarely within this Court's prior decision in *California

Department of Water Resources*. For these reasons, the reference must be withdrawn.

Alternatively, there are sufficient grounds for a permissive withdrawal.

## II.    Relevant Background

### A.    The Debtors previously attempted to reject one of the Pipelines' contracts, but withdrew the notice of rejection when the Pipelines moved to withdraw the reference.

The Pipelines own and operate natural gas pipelines in the United States. The Debtors

entered into long-term, firm contracts with the Pipelines between 1998 and 2002, in order to

guarantee they had sufficient capacity to transport their natural gas.  In December 2005, Debtors

filed voluntary petitions for relief under chapter 11.  In January 2006, this Court held that

because FERC had exclusive jurisdiction over certain contracts between wholesale power

purchasers and the Debtors, the Court lacked jurisdiction to approve the Debtors' request to

reject those contracts.  *See California Dept. of Water Resources v. Calpine Corp. (In re Calpine*

*Corp.*), 337 B.R. 27, 29 (S.D.N.Y. 2006).

Shortly thereafter, in February 2006, Debtors filed a Notice of Rejection of the PNGTS

Contract.  (Ex. 1, Notice of Rejection).  Because this Court already ruled that the bankruptcy

court lacked jurisdiction to approve the rejection of FERC regulated contracts, PNGTS filed a

motion to withdraw the reference.  (Ex. 2, Motion to Withdraw).  Recognizing that they could

not reject the PNGTS contract without FERC approval, the Debtors voluntarily withdrew the

rejection the same month.  (Ex. 3, Withdrawal of Rejection).

**B.      The Debtors later "repudiate" the Pipeline contracts, but refuse to assume or reject the contracts as required by the Bankruptcy Code.**

The only action that Debtors have ever taken, until recently, was to inform the Pipelines

that they intend to "repudiate" the contracts.  In response, the Pipelines continually asked for *any*

*authority* that would allow the Debtors to repudiate the contracts instead of assuming or rejecting

them as required by the Bankruptcy Code, but none was forthcoming.  (Ex. 4, Correspondence).[3]

Unlike the Debtors, the Pipelines' position has been steadfast and consistent.  They contend that:

(1) Debtors must either assume or reject the Pipelines' contracts in compliance with the

Bankruptcy Code; and (2) any rejection of the contracts falls within the exclusive jurisdiction of

FERC and requires FERC approval.

---

[3]  Indeed, the Debtors' position that they could repudiate violated the the bankruptcy court's 2005 order setting forth the required procedure for the Debtors' rejection or assumption of executory contracts under  Sections 365 and 554 of the Bankruptcy Code.  (Ex. 5, Rejection Order).

C.     **The Pipelines file proofs of claim and preserve their right to withdraw the reference if necessary, but the Debtors never take any action that would require the Pipelines to act.**

On or about July 31, 2006, the Pipelines timely filed their proofs of claim.  GTN filed proofs of claim against various Calpine entities for $525.1 million.  PNGTS filed proofs of claim against Calpine Corporation and Rumford Power Associates Limited Partnership for $201.5 million.[4]  In their proofs of claim, the Pipelines specifically reserved all their rights including their "position regarding the jurisdictional issues with respect to the Contract[s] and its *potential rejection*." (Exs. 6 & 7, Initial Proofs of Claim) (emphasis added).  Importantly, PNGTS and the Debtors entered into a court-approved stipulation on June 2, 2007 that granted PNGTS an *allowed claim* in the Calpine Corporation and Rumford Power estates for an undetermined amount not to exceed $174 million.  (Ex. 8, Stipulation).  PNGTS later amended its proofs of claim to recognize the stipulated cap of $174 million.  (Ex. 9, Amended Proof of Claim).  Throughout this time, the Debtors asserted without any authority that they were "repudiating" the Pipeline contracts.

D.     **The landscape changes significantly in the fall of 2007, requiring the Pipelines to move to withdraw the reference.**

After the Debtors filed their First Amended Plan and Disclosure Statement on August 27, 2007, the Pipelines timely filed their objections to the disclosure statement.  One of the objections was that the bankruptcy court could not approve the disclosure statement, because the proposed plan it supported was unconfirmable as a matter of law.  Among other reasons, the proposed plan was unconfirmable because it provided for repudiation of the Pipelines' contracts without proper rejection procedures under Bankruptcy Code Section 365 and without the approval of the FERC required to change the terms of the FERC jurisdictional contracts.  (Ex.

---

[4] PNGTS also filed proofs of claim against the other Debtors entities that were subsequently withdrawn pursuant to a stipulation.

10, Objection to Amended Disclosure Statement).   In *California Dep't of Water Resources*, this Court had already held that neither it, nor the bankruptcy court, had subject matter jurisdiction to authorize the rejection of FERC jurisdictional contracts without FERC approval.

On September 21, 2007, the Debtors objected to the Pipelines' proofs of claim for the first time.  The Debtors filed a limited objection raising three defenses that they contended would significantly lower the allowed amount of the Pipelines' claims.  (Ex. 11, Limited Objection). Specifically, Debtors asserted that: (a) the claims do not reflect the correct contract rates; (b) the claims have not been discounted to present value; and (c) the claims do not reflect any reductions for mitigation.[5]  The Debtors' objection proposed a bifurcated proceeding, whereby the contract rate and discount rate issues would be resolved prior to confirmation, but mitigation and the final determination of the Pipelines' claims would not be done until after confirmation.

On September 26, 2007, the bankruptcy court entered an Order approving the Debtors' disclosure statement and allowing Debtors' proposed plan to go forward, including the sections proposing to "repudiate" the FERC approved contracts with the Pipelines.  (Ex. 12, Order). Thus, the Order, and the limited objection to the Pipelines' proofs of claim, raised significant issues regarding the bankruptcy court's jurisdiction.  Importantly, the Order Approving the Disclosure Statement established November 30, 2007 as the deadline to file objections to the proposed plan.

After the limited objection proposing bifurcation was filed, and after the disclosure statement was approved, the Pipelines asserted (consistent with their prior positions) that their

---

[5] Three days after the filing of Debtors' Limited Objection, the Pipelines and Debtors entered into a claims estimation agreement whereby GTN's and PNGTS's claims have now been estimated at $300 million and $174 million, respectively, both for voting purposes and for purposes of establishing reserves of New Calpine Common Stock under Articles VI.C and VII.C3 of the Plan.  The Estimation Agreement was approved by the Court as part of the September 26, 2007 Order Approving the Disclosure Statement.  See Ex. 12 at ¶33.  The Order Approving the Disclosure Statement also expressly preserved the Pipelines' plan related objections.

claims could and should be entirely resolved prior to confirmation, rather than bifurcated.  On

October 10, 2007, the Pipelines filed their response to the Debtors' request for bifurcation,

setting forth this position.   (Ex. 13, Pipelines' Response to Request for Bifurcation).

Importantly, if the amount of the claims could be entirely resolved prior to confirmation, the

Pipelines believed that the requisite FERC approval could be readily obtained such that the flaw

in the proposed plan would be resolved.

During this same time frame, GTN reached a settlement of its pending rate case with all

interested parties – including Calpine.  The Pipelines believed that the settlement of a new

FERC-approved toll would resolve most if not all of the parties' dispute regarding the contract

rate issue.

The parties discussed these issues at various times during October 2007.  (Ex. 14,

Communications).  When it became apparent that the Debtors would insist on attempting to

bifurcate the proceedings so that the Pipelines' claims would not be fully resolved until after

confirmation and the Debtors would continue to insist on an incorrect contract rate

notwithstanding the GTN rate case settlement, the Pipelines timely filed their Motion to

Withdraw the Reference on October 23, 2007.

### III.     Reply Argument

Contrary to the Debtors' Opposition, the Pipelines' Motion to Withdraw is not untimely,

and they have demonstrated that the withdrawal of the reference is mandatory or is a proper

exercise of this Court's discretion.

### A.     The Motion to Withdraw is Timely.

The Pipelines have not waived their right to seek withdrawal of the reference, and their

request is not untimely.  The Debtors incorrectly contend that the request is untimely because the

Debtors repudiated the contracts months ago. (Opposition, p. 7-8). The Debtors' argument incorrectly assumes that the Pipelines could move to withdraw the reference based on the mere fact that the bankruptcy court *might* allow them to repudiate the FERC regulated contacts in the future. In addition, prior to September 21, 2007, the Debtors never objected to the Pipelines' proofs of claim. As a result, there was no challenge to the filed-rate doctrine pending before the bankruptcy court.

As this Court has recognized, when considering if something is timely, it must evaluate the context of the specific situation. *In re Texaco, Inc*., 84 B.R. 911, 919 (S.D.N.Y. 1988)(citing *In re Baldwin United Corp*., 57 B.R. 751, 753 (S.D. Ohio 1985)). A motion to withdraw the reference is timely if it is made as soon a possible "in light of the status of the bankruptcy proceeding." *Id*. If there does not appear to be an unreasonable delay, and the debtors will not be prejudiced, the motion is timely. *Interconnect Tel. Serv., Inc. v. Farren*, 59 B.R. 397, 402 (S.D.N.Y. 1986)(motion to withdraw the reference was not untimely although the action had been on file for a year).

The Pipelines' motion to withdraw the reference is not untimely in light of the status of the proceeding and the relevant circumstances. Although the Debtors had notified the Pipelines they would "repudiate" the FERC regulated contracts, there was no motion or other pleading filed to bring this matter before the bankruptcy court. Indeed, as the Pipelines have repeatedly stated, the Debtors' "repudiation" is a bankruptcy non-event because it is not recognized by the Code and did not include required FERC approval.

The time to withdraw the reference began when the bankruptcy court approved the disclosure statement and thereby determined that the Debtors could proceed with their proposed plan that included "repudiation" on September 26, 2007. This was the first time that any

"repudiation" issue affecting the Pipelines was before the bankruptcy court. The parties continued to discuss the issues well into October 2007, and under the Order Approving the Disclosure Statement, plan objections were not due until November 30, 2007. The Pipelines filed their Motion to Withdraw the Reference more than a month before plan objections were due. If the Pipelines were really trying to derail the proposed plan by an eleventh-hour filing, they could have waited much longer. The timing demonstrates that this was not the Pipelines' intent. As a result, the motion was timely. *See In re Texaco*, 84 B.R. at 920 (Although the debtor previously moved to "preserve" the contracts, the motion to withdraw was timely because the debtor later moved to reject the agreements. The court held that the movant could not know whether the debtor would eventually assume or reject the agreements.).

Moreover, the Debtors did not object to the Pipelines' proofs of claims until September 21, 2007. Until that time, the Debtors had not taken any position that invoked the "filed-rate doctrine," which prohibits Debtors from challenging the Pipelines' FERC approved contract rate. 15 U.S.C. § 717c(c); *Natural Gas Pipeline Co. of America v. F.E.R.C.*, 904 F.2d 1469, 1470 (10th Cir. 1990).

Moreover, the Debtors are not prejudiced by the timing of the filing of the motion to withdraw. Debtors chose to file a limited objection to the Pipelines' proofs of claims in September 2007 when they could have done so months earlier. Debtors sought and obtained a plan objection deadline of November 30, 2007 with a confirmation hearing beginning in mid-December.

In addition, as set forth in the Pipelines' Motion to Withdraw, the limited withdrawal requested by the Pipelines will not interfere with the confirmation of the plan or jeopardize the Debtors' ability to keep its exit financing. A simple modification to the plan, coupled with the

Debtors following FERC procedures, will allow confirmation of the plan to proceed even if this Court withdraws the reference.  As a result, if this Court withdraws the reference, it will not affect confirmation or the Debtors' financing.

**B.      Withdrawal is still mandatory and permissive.**

In an attempt to avoid the withdrawal of Article V, Section A.2 of the plan and the Debtors' limited objection to the Pipelines' proofs of claim, Debtors offer two equally unconvincing arguments.

**1.          The recent amendment of Article V, Section A.2 of the plan does not moot the Motion to Withdraw.**

Debtors incorrectly contend that the motion to withdraw the reference with regard to Article V, Section A.2 of the plan is now "moot" because the Debtors have now moved to reject the Pipeline contracts and modified the plan to state that the contracts can only be repudiated or rejected "as determined by the appropriate court, or by FERC, if a court so directs." (Opposition, p. 9).  The Debtors' last minute tactic, however, does not "moot" the Pipelines' Motion to Withdraw.  In fact, the Debtors' modification to the plan, and attempted rejection of the contracts without requiring FERC approval in advance of any rejection by the bankruptcy court, further supports the need for mandatory withdrawal.

Regardless of whether the Debtors' proposed plan "repudiates" or rejects the Pipeline contracts, the term used does not change the fact that the bankruptcy court lacks jurisdiction over any action by the Debtors that interferes with FERC's exclusive jurisdiction.  As this Court has recognized, "once filed with FERC, wholesale power contracts become the 'equivalent of a federal regulation.'" *California Dep't of Water Resources*, 337 B.R. at 33; *see also Pennsylvania Water & Power Co. v. Federal Power Comm'n*, 343 U.S. 414, 422, 72 S.Ct. 843, 96 L.Ed. 1042 (1952).  And as this Court previously held in *California Department of Water*

*Resources,* neither this Court, nor the bankruptcy court, has the power to approve the Debtors'

attempts to alter the "rates, terms, conditions or *duration* of the contracts" governed by the

Federal Power Act and regulated by the FERC. *Id.*

Matters subject to FERC jurisdiction are analyzed the same whether they are regulated

under the Natural Gas Act, as with the Debtor-Pipeline contracts, or under the Federal Power

Act, as with the contracts in *California Department of Water Resources.    See Arkansas*

*Louisiana Gas Co. v. Hall*, 453 U.S. 571, 577 n.7 (1981) ("as we have previously said, the

relevant provisions of the Federal Power Act and the Natural Gas Act 'are in all material respects

substantially identical' … we therefore follow our established practice of citing interchangeably

decisions interpreting the pertinent sections of the two statutes."); *see also Public Utility District*

*No. 1 of Grays Harbor County Washington v. Idacorp, Inc.*, 379 F.3d 641, 649 n. 8 (9th Cir.

2004).  Accordingly, regardless of the label the Debtors attach to their intended actions, they are

clearly seeking to *alter the duration* of the FERC jurisdictional Pipeline contracts.  For this

reason alone, the reference must be withdrawn.

In fact, the Debtors' recent rejection of the contracts now places this case even more

squarely within the *California Department of Water Resources* case.  In an attempt to avoid this

binding precedent, the Debtors argue that rejection does not alter the contracts' duration.  Aside

from being directly contrary to the facts and common sense, the authority relied upon by the

Debtors does not support this contention.  (Opposition, p. 15-16).  For example, Debtors rely

upon *In re Drexel Burnham Lambert Group*, 138 B.R. 687, 703 (Bankr. S.D.N.Y. 1992), to

support this contention.  But the *Drexel* court simply held that rejection does not eliminate the

party's contract rights, just the estates' obligation to perform. *Id.*   Unlike the cases cited by the

Debtors, the situation presented here is not one where "rejection amounts to nothing more than a

breach" and then "claims are processed through the bankruptcy." (Opposition p. 16). Here, the

FERC's statutory scheme requires the Debtors to seek approval of their *intent not to perform*.

Moreover, the Debtors recent amendment to the plan also does not moot the necessity for

withdrawal. The Debtors' amendment still allows the bankruptcy court to approve the

repudiation and/or rejection of the Pipeline contracts. It states that this determination can be

made by the appropriate court "or by FERC." (Opposition, p. 9). This is still contrary to the

law, which requires FERC approval first. See *California Dep't of Water Resources*, 337 B.R. at

33. Because the Debtors have included this disjunctive language, the amendment does not moot

the Pipelines' objection that the repudiation and/or rejection of the Pipeline contracts fall within

the exclusive jurisdiction of FERC.

**2.**          **The Debtors' limited objection to the Pipelines' claims requires withdrawal.**

The Debtors also contend that the the bankruptcy court can adjudicate the determination

of the Pipelines' claims because the bankruptcy court's determination of the applicable contract

rate does not invoke the filed-rate doctrine. (Opposition, p. 11). The Debtors contend the filed-

rate doctrine does not apply because the proper measure of damages for all the Pipelines'

contracts is the FERC approved rate on the date the petition was filed. (Ex. 15, Response to

Limited Objection). The Debtors' position actually demonstrates why withdrawal is necessary.

Freezing the rates as of the petition date would violate the terms of the FERC-approved contracts

between the Debtors and the Pipelines, and it would violate the filed-rate doctrine by using a rate

other than the rate approved (or very likely to be approved) by the FERC.

The FERC jurisdictional contracts at issue provide that the reservation rates payable

under the contracts (on which the Pipelines' claims are based) are not a fixed amount for the

duration of the contracts, but rather change over time as approved by the FERC. For instance,

the GTN contracts provide:

> "Shipper shall pay [GTN] each month for services rendered pursuant to this Agreement in accordance with [GTN's] Rate Schedule FTS-1, or superseding rate schedule(s), on file with and subject to the jurisdiction of the FERC . . .".

> "This Agreement in all respects shall be and remains subject to the applicable provisions of Rate Schedule FTS-1, or superseding rate schedule(s) and of the applicable Transportation General Terms and Conditions of [GTN's] FERC Gas Tariff First Revised Volume No. 1-A on file with the FERC, which are by this reference made a part hereof."

> "[GTN] shall have the unilateral right from time to time to propose and file with FERC such changes in the rates and charges applicable to transportation services pursuant to this Agreement, the rate schedule(s) under which this service is hereunder provided, or any provisions of [GTN's] Transportation General Terms and Conditions applicable to such services . . .".

(Ex. 6, Ex. C thereto, at §§6.1, 6.3, 6.4). The contract between the Debtors and PNGTS contains

similar provisions. (Ex. 9, Ex. B thereto at ¶20; see also ¶¶13-15).

The Debtors' limited objection seeks to alter these terms of the FERC-approved

contracts, and it seeks to have the bankruptcy court apply a rate other than the rate approved (or

extremely likely to be approved) by the FERC. As a result, if the bankruptcy court allows the

Debtors to apply a damage model that freezes the Pipelines' contract rate on the date of the

Debtors' petition, it would undoubtedly be a judicial determination changing FERC approved

contract rates. This would violate the filed rate doctrine. *See, e.g., Arkansas Louisiana Gas Co.,*

453 U.S. at 577; *Mississippi Power & Light Co. v. Mississippi ex rel. Moore*, 487 U.S. 354, 108

SCt. 2428 (1988). Because this would interfere with FERC's exclusive jurisdiction, withdrawal

is mandatory. As this Court has stated, "what FERC giveth, only FERC may taketh away."

*California Department of Water Resource,* 337 B.R. at 37. Accordingly, this Court must

withdraw the reference. *In re Permian Basin Area Rate Cases*, 390 U.S. 747, 822, 88 S.Ct. 1344, 20 L.Ed.2d 312 (1968).

The Debtors' Opposition provides an incorrect impression that FERC has repeatedly approved, and preferred, that the courts determine all breach of FERC contract issues. This is simply not true. For example, Debtors rely upon *Southern Co. Energy Mktg., L.P.*, 86 FERC ¶61,131 at ¶61,459 (1999) to support its position that the determination of a breach of a service contract is "better left to the courts." In *Southern*, however, FERC simply held that the breach of contract issue in that case—whether the contract was terminated in bad faith—was one that did not require its jurisdiction. Similarly, Debtors incorrectly rely upon *Arkansas La. Gas Co.*, 7 FERC ¶61,026 at ¶61,044 (1979) for the proposition that FERC will defer to the bankruptcy court on rejection issues. The language cited by Debtors in their Opposition, however, is actually a quote from the Circuit Court of Appeals' opinion quoted in the FERC opinion; it was not the opinion of FERC. *Id.* Moreover, in that case, FERC held that its jurisdiction was premature because the trustee had not assumed or rejected the contract in compliance with the Circuit Court's opinion. FERC held that once the rejection occurred that the parties could seek its decision on the applicable contract rate. *Id.* In fact, none of the authority cited by Debtors supports their contention that the issues raised here should be determined by the bankruptcy court.

### C.    The Pipelines did not consent to bankruptcy court jurisdiction.

The Debtors also incorrectly contend that the Pipelines consented to the jurisdiction of the bankruptcy court by filing proofs of claim and that this action somehow waived their right to seek a withdrawal of the reference. There is no legal or factual support for this position. For example, Debtors incorrectly rely upon *Pam Am. World Airways, Inc. v. Evergreen Int'l Airlines*,

132 B.R. 4, 7 (S.D.N.Y. 1991) to support their assertion that the Pipelines agreed to have the

bankruptcy court determine their claims. But this case simply stands for the proposition that by

submitting a proof of claim, a creditor seeking to recover claims under state law turns the claims

into a core proceeding within the jurisdiction of the bankruptcy court. *Id*. Moreover, from the

filing of their first proofs of claims to the filing of their objections to the Debtors' Fourth

Amended Plan and Disclosure Statement, the Pipelines have repeatedly preserved their

objections to bankruptcy court. (Exs. 2, 6, 7, 9, 10, 13 & 15).

> **D.     The Court must follow the law of this case,** *California Department of Water*
> *Resources***.**

Not surprisingly, because this Court's prior decision in *California Department of Water*

*Resources* is dispositive of the Pipeline's Motion to Withdraw, the Debtors go to great lengths to

disparage Judge Casey's decision.   First, they attempt to separate themselves from the decision

by asserting it is limited to the energy contracts "at issue." (Opposition, p. 20). They then

contend that this dicta somehow prohibits the application of its holding here.

But Judge Casey's central holding, that neither this Court nor the Bankruptcy Court has

the power to approve the Debtors' attempts to alter the "rates, terms, conditions or duration of

the contracts," is clearly applicable to the Pipeline contracts. The Debtors cannot obtain in

bankruptcy relief that they could not obtain without FERC approval:

> Because there is nothing in the Bankruptcy Code that limits FERC's jurisdiction,
> Calpine cannot achieve in Bankruptcy Court what neither it, nor any other party in
> this case, not any other federally regulated energy company in the country could
> do without seeking FERC approval: cease performance under the rates, terms, and
> conditions of filed rate wholesale energy contracts in hopes of getting a better
> deal.

*California Dep't of Water Resources*, 337 B.R. at 36.

The Debtors also argue that the decision is inapplicable because its underlying principle, a concern for consumers, is inapplicable here. (Opposition, p. 20). This position ignores that the principles underlying the enactment of the NGA, and FERC's exclusive jurisdiction, apply to all gas contracts. When Congress enacted the NGA, it desired to occupy the field and assure adequate, reliable, and reasonably priced supply of natural gas for an entire nation by creating a comprehensive regulatory framework. *Public Serv. Comm'n of Kentucky v. Fed. Energy Regulatory Comm'n*, 610 F.2d 439 (6th Cir. 1979). This comprehensive framework is not limited to energy tagged for sale to consumers. The NGA applies to all companies that transport natural gas and the transportation of natural gas in interstate commerce. *Federal Power Comm'n v. East Ohio Gas Co.*, 70 S.Ct. 266, 338 U.S. 464, 94 L.Ed. 268 (1950).

The Debtors are asking this Court to not follow its prior decision and adopt the non-binding precedent of other Circuits.[6] This Court should follow its precedent and the law of the case. This tenet is particularly true where, as here, Debtors dismissed their appeal of Judge Casey's opinion. If Debtors felt the case was incorrectly decided, and should not be applied to the subsequent proceedings in this case, they should have prosecuted an appeal instead of asking this Court to overturn its prior decision.

## IV.    Request for Relief

For these reasons, Gas Transmission Northwest Corporation and Portland Natural Gas Transmission System request that the Court withdraw the reference under 28 U.S.C.A. §157(d) as to Article V, Section A.2 of the Debtors' Fourth Amended Joint Plan of Reorganization and/or any subsequent or amended plan that seeks to reject or repudiate the contracts with these

---

[6] Under the facts of this case, the result would be the same under the Fifth Circuit's decision in *In re Mirant*, 378 F.3d 511 (5th Cir. 2004). If this Court were to determine that *Mirant* applies, rather than the law of the case in *California Dep't of Water Resources,* the Pipelines request discovery to establish the evidentiary facts relevant to the *Mirant* analysis and expressly reserve the right to seek such discovery.

creditors and find that the court and the bankruptcy court lacks jurisdiction to approve the rejection or repudiation of the contracts with these creditors. Gas Transmission Northwest Corporation and Portland Natural Gas Transmission System request that the Court withdraw the reference as to the Limited Objection to Gas Transmission Northwest Corporation's Claim Nos. 4562, 5912, 5914, 5927, 5928 and 5929, and Portland Natural Gas Transmission System's Claim Nos. 4769 and 4773 and for all such other relief to which they may be legally and equitably entitled.

Dated: November 16, 2007                               Respectfully submitted,


      /s/  David W. Elrod
David W. Elrod (TX State Bar 06591900)
Craig Tadlock (TX State Bar 00791766)
ELROD, PLLC
500 N. Akard Street, Suite 3000
Dallas, Texas 75201
Telephone: (214) 855-5188
Facsimile: (214) 855-5183

**ATTORNEYS FOR GAS TRANSMISSION NORTHWEST CORPORATION AND PORTLAND NATURAL GAS TRANSMISSION SYSTEM**

## CERTIFICATE OF SERVICE

I hereby certify that on November 16, 2007, the above-referenced document was served upon parties in interest via the Court's ECF notification system and in accordance with the Debtor's September 21, 2007 Notice of Debtors' Limited Objection to Gas Transmission Northwest Corporation's Claim Nos. 4562, 5912, 5914, 5927, 5928 and 5929, and Portland Natural Gas Transmission System's Claim Nos. 4769 and 4773 via facsimile and e-mail to: **(a)** Kirkland & Ellis LLP, Citigroup Center, 153 East 53rd Street, New York, New York 10022, *Attn: Edward Sassower, Richard Cieri;* and Kirkland & Ellis LLP, 200 East Randolph Street, Chicago, Illinois 60601, *Attn.: David R. Seligman, Marc Kieselstein, James J. Mazza, Jr., and Mark E. McKane* **(b)** the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004, *Attn: Paul Schwartzberg*; **(c)** counsel to the Unofficial Committee of First Lien Debtholders, Brown Rudnick Berlack Israels LLP, One Financial Center, Boston, Massachusetts 02111, *Attn.: Steven B. Levine*; **(d)** counsel to the Unofficial Committee of Second Lien Debtholders, Paul Weiss Rifkind Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019-6064, *Attn.: Alan W. Kornberg, Andrew N. Rosenberg, Elizabeth R. McColm*; **(e)** counsel to the Official Committee of Unsecured Creditors, Akin Gump Strauss Hauer & Feld LLP, 590 Madison Avenue, New York, New York 10022-2524, *Attn: Michael S. Stamer, Philip C. Dublin, Alexis Freeman*; **(f)** counsel to Debtors' postpetition lenders, Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York 10017, *Attn: David Mack and Peter Pantaleo*; **(g)** the Official Committee of Equity Security Holders, Fried Frank Harris Shriver & Jacobson LLP, One New York Plaza, New York, New York, 10004, *Attn: Gary Kaplan, Brad E. Scheler, Adrian Feldman.*

       \_\_\_/s/ Craig Tadlock_____
       Craig Tadlock