ELROD, PLLC
500 N. Akard St., Suite 3000
Dallas, Texas 75201
Telephone: (214) 855-5188
Facsimile: (214) 855-5183
David W. Elrod *(admitted pro hac vice)*
Craig Tadlock *(admitted pro hac vice)*
Brian A. Farlow *(admitted pro hac vice)*

-and-

HOGAN & HARTSON L.L.P.
875 Third Avenue
New York, NY 10022
Telephone: (212) 918-3000
Facsimile: (212) 918-3100
David M. Posner (DP–6505)
Brian J. Grieco (BG–4385)

*Counsel for Portland Natural Gas Transmission System*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
|  | Case No. 05-60200-BRL |
| CALPINE CORPORATION, *et al.*, | (Jointly Administered) |
| Debtors |  |

**NOTICE OF PORTLAND NATURAL GAS TRANSMISSION SYSTEM'S MOTION
FOR WITHDRAWAL OF REFERENCE AS TO DEBTORS' FEBRUARY 6, 2006
<u>NOTICE REJECTING CERTAIN EXECUTORY CONTRACTS</u>**

**PLEASE TAKE NOTICE** that Portland Natural Gas Transmission System ("PNGTS"), by and through its counsel, shall move (the "Motion") before the United States District Court for the Southern District of New York, at a date and time to be set by the District Court for entry of an Order, pursuant to 28 U.S.C. § 157(d), Rule 5011 of the Federal Rules of Bankruptcy Procedure and Rule 5011-1 of the Local Bankruptcy Rules for the Southern District of New

York, withdrawing the reference to the United States Bankruptcy Court for the Southern District of New York as to the Debtors' February 6, 2006 Notice Rejecting Certain Executory Contracts.

**PLEASE TAKE FURTHER NOTICE** that in support of the relief sought by the Motion, PNGTS shall rely upon its Motion to Withdraw the Reference as to Debtors' February 6, 2006 Notice Rejecting Certain Executory Contracts and Memorandum of Law in Support of the Motion, and the Declaration of Craig Tadlock, Esq. in Support of the Motion and Exhibits thereto, submitted herewith.

**PLEASE TAKE FURTHER NOTICE** that a hearing may be held on the Motion on a date and at such time and place as determined by the District Court, pursuant to the Local District Court Rules, and that Notice of such hearing will be provided to the appropriate parties in accordance with the Local District Court Rules.

Dated: February 16, 2006
      Dallas, Texas

**ELROD, PLLC**

By:   /s/ David W. Elrod
David W. Elrod *(admitted pro hac vice)*
Craig Tadlock *(admitted pro hac vice)*
Brian A. Farlow *(admitted pro hac vice)*
500 N. Akard St., Suite 3000
Dallas, Texas 75201
Telephone: (214) 855-5188
Facsimile: (214) 855-5183

-and-

HOGAN & HARTSON L.L.P.
875 Third Avenue
New York, NY 10022
Telephone: (212) 918-3000
Facsimile: (212) 918-3100
David M. Posner (DP–6505)
Brian J. Grieco (BG–4385)

*Counsel for Portland Natural Gas Transmission System*

## CERTIFICATE OF SERVICE

I hereby certify that on February 16, 2006, the above-referenced document was served upon parties in interest via the Court's ECF notification system and in accordance with the Debtor's February 6, 2006 Notice Rejecting Certain Executory Contracts, via facsimile and e-mail to (a) Kirkland & Ellis LLP, Attn: Matthew Cantor, Esq. 153 E. 53rd Street, New York, New York 10022-4611, facsimile number 212-446-4900, e-mail mcantor@kirkland.com; and (b) Kirkland & Ellis LLP, Attn: Bennett Spiegel, Esq., 777 South Figueroa Street, Los Angeles, California 90017, facsimile number 213-680-8500; e-mail bspiegel@kirkland.com.

          /s/ Craig Tadlock_____
Craig Tadlock

| | |
|---|---|
| David W. Elrod (Texas State Bar No. 06591900) | David M. Posner (DP-6505) |
| Craig Tadlock (Texas State Bar No. 00791766) | Brian J. Grieco (BG-4385) |
| Brian A. Farlow (Texas State Bar No. 00794339) | HOGAN & HARTSON L.L.P. |
| ELROD, PLLC | 875 Third Avenue |
| 500 N. Akard St., Suite 3000 | New York, New York 10022 |
| Dallas, Texas 75201 | Telephone: (212) 918-3000 |
| Telephone: (214) 855-5188 | Facsimile: (212) 918-3100 |
| Facsimile: (214) 855-5183 | |

**Counsel for Portland Natural Gas Transmission System**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| | ) | Case No. 05-60200-BRL |
| CALPINE CORPORATION, *et al.*, | ) | (Jointly Administered) |
| | ) | |
| Debtors | ) | District Court |
| | ) | Case No. 06-_____ |

**MOTION OF PORTLAND NATURAL GAS TRANSMISSION SYSTEM
TO WITHDRAW THE REFERENCE AS TO DEBTORS'
FEBRUARY 6, 2006 NOTICE REJECTING CERTAIN EXECUTORY
CONTRACTS, AND MEMORANDUM OF LAW IN SUPPORT**

Pursuant to 28 U.S.C. §157(d), Federal Rule of Bankruptcy Procedure 5011, and Rule 5011.1 of the Local Rules of Bankruptcy Procedure for the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), party in interest Portland Natural Gas Transmission System ("PNGTS") hereby moves to withdraw the reference as to the Bankruptcy Court of the Debtors' February 6, 2006 Notice Rejecting Certain Executory Contracts (the "Rejection Notice," attached as Exhibit A to the accompanying declaration of Craig Tadlock), through which the Debtors seek to reject their contract for long-term firm capacity for transportation of natural gas on the PNGTS pipeline.[1]

---

[1] To the extent necessary for the purposes of this Motion, PNGTS also moves to withdraw the reference as to the Bankruptcy Court's Order Pursuant to Sections 365 and 554 of the Bankruptcy Code Authorizing and Approving Expedited Procedures for the Rejection of Executory Contracts and Unexpired Leases of Personal and

- 1 -

## INTRODUCTION

PNGTS asks that the District Court withdraw the reference with respect to the notice of rejection filed by Calpine Corporation and its affiliated debtors (collectively, "Debtors") of a contract for natural gas pipeline capacity that is subject to exclusive FERC jurisdiction under the Natural Gas Act, 15 U.S.C. §717, *et seq.* Following the District Court's recent decisions in *California Department of Water Resources, et al. v. Calpine Corp.* and applying the same rationale in the context of the Natural Gas Act that the District Court applied in the context of the Federal Power Act, the District Court should withdraw the reference and dismiss the Debtors' notice of rejection for lack of subject matter jurisdiction.

## JURISDICTION

The Bankruptcy Court has jurisdiction over the Debtor's chapter 11 proceeding pursuant to 28 U.S.C. §1334(a). The District Court has jurisdiction to consider the Motion to Withdraw the Reference under 28 U.S.C. §§157, 1334 and 1412. Venue for the Motion to Withdraw the Reference is proper under 28 U.S.C. §§1408 and 1409.

## MEMORANDUM OF LAW

This Motion includes citations to the applicable authorities and a discussion of their application to this Motion. Accordingly, PNGTS respectfully submits that such citations and discussion satisfy the requirement of Local Rule 9013-1 for the Bankruptcy Court of the Southern District of New York and Local Civil Rule 7.1 of the Southern District of New York that motions be accompanied by memoranda of law.

---

Non-Residential Real Property, as it applies to the Rejection Notice. Also, PNGTS is filing contemporaneously herewith an Objection to the Rejection Notice in the Bankruptcy Court (made subject to and without prejudice to PNGTS's objections to the jurisdiction of the Bankruptcy Court and the District Court), and to the extent necessary for purposes of this Motion, PNGTS moves to withdraw the reference with respect to the Objection as well.

**FACTUAL BACKGROUND**

On December 20, 2005, Calpine Corporation and many of its U.S. subsidiaries and affiliates (collectively, "Calpine" or "Debtors"), including Rumford Power Associates, L.P. ("Rumford Power"), filed voluntary petitions for chapter 11 bankruptcy.

PNGTS is a general partnership, owned 61.71 percent by an affiliate of TransCanada PipeLines Limited and 38.29 percent by an affiliate of Gaz Metro Limited Partnership.

PNGTS owns and operates an interstate natural gas pipeline that runs from Pittsburg, New Hampshire, at the Canadian border, south to Dracut, Massachusetts, near Boston (the "PNGTS Mainline"). Along the PNGTS Mainline, at Westbrook, Maine, the PNGTS pipeline intersects with the Maritimes & Northeast Pipeline ("Maritimes"), and from that point south to Dracut, Massachusetts, the pipeline is jointly owned and shared by PNGTS and Maritimes. Several laterals branch off the PNGTS Mainline to serve various shipper-customers. The most significant of these laterals is the one branching off near Albany Township, Maine, and extending to Rumford, Maine (the "Rumford Lateral"), with a further extension from Rumford to Jay, Maine. The Rumford Lateral together with the Rumford Station meter serve Rumford Power. A map of the PNGTS pipeline is attached as Exhibit B to the accompanying declaration of Craig Tadlock.

The PNGTS pipeline was constructed in the late 1990's and went into service on March 10, 1999. Before construction could begin, PNGTS was required to obtain authority from the Federal Energy Regulatory Commission ("FERC"). Following a contested proceeding, FERC issued a Certificate of Public Convenience and Necessity with conditions and recognizing certain circumstances, to allow PNGTS to construct its pipeline system, including the Rumford Lateral.

In the late 1990's, Rumford Power arranged for the construction of an electric generating station located in Rumford, Maine. In order to deliver the natural gas necessary to fuel the plant, on February 12, 1998, Rumford Power entered into a 20-year, 44,000 decatherms per day ("Dth/day") contract for firm transportation service with PNGTS. *See* Gas Transportation Contract for Firm Transportation Service Between Portland Natural Gas Transmission System and Rumford Power Associates Limited Partnership (the "PNGTS Contract," attached as Exhibit C to the accompanying declaration of Craig Tadlock).[2] Rates under the PNGTS Contract are set at the tariff rate established by FERC, which may change over time. *See* PNGTS Contract (Ex. C), at ¶ 6 ("[S]hipper hereby agrees to accept and pay for, firm natural gas transportation service on Transporter's System under Transporter's Rate Schedule FT and its FERC Tariff, as that Rate Schedule or FERC Tariff may be changed from time to time."); *see also* PNGTS Contract (Ex. C), at ¶¶ 13-17, 20.

The service that Rumford Power receives under the PNGTS Contract is firm transportation service. This level of service requires PNGTS to reserve 44,000 Dth/day of capacity on its pipeline to serve Rumford Power. *See* PNGTS Contract (Ex. C), at ¶¶ 10-11. Correspondingly, the largest part of the rate paid by Rumford Power under the PNGTS Contract consists of the reservation charge – that is, a price per Dth of reserved capacity that must be paid regardless of whether Rumford Power actually ships gas under the PNGTS Contract.

The term of the PNGTS Contract runs through October 31, 2020. *See* PNGTS Contract (Ex. C), at ¶¶ 21-22. At the current tariff rate for reservation charges (85 cents/Dth/day, with a 2 cent/Dth/day reduction in effect for two years from April 2006 through March 2008), the gross

---

[2] The PNGTS Contract was originally for 46,000 Dth/day but the quantity was adjusted downward to 44,000 Dth/day under paragraph 7 of the PNGTS Contract.

- 4 -

amount of reservation charges due PNGTS from Rumford Power from now through the end of the term of the PNGTS Contract is approximately $200 million.

Rumford Power has continued to nominate and ship gas on the PNGTS pipeline under the PNGTS Contract on a post-petition basis. Moreover, even though Debtors filed the Rejection Notice on February 6, 2006, and purport to make rejection effective as of that date, Rumford Power has continued to nominate and ship gas under the PNGTS Contract after February 6. *See* Spreadsheet attached as Exhibit D to the accompanying declaration of Craig Tadlock.

## ARGUMENT AND AUTHORITIES

**A.    The Court Should Withdraw the Reference with Respect to the Rejection Notice.[3]**

Under similar circumstances in this same bankruptcy case, but under the Federal Power Act rather than the Natural Gas Act, which applies here, the District Court granted the California Counter-Parties' motion to withdraw the reference. *See* Order dated January 4, 2006, in Case Nos. 05 Civ. 10842 (RCC), 05 Civ. 10861 (RCC), and 05 Civ. 10875 (RCC). PNGTS believes that the same rationale that resulted in the January 4, 2006 Order compels withdrawal of the reference here but nonetheless submits this briefing on the applicable legal standards.

### 1.    Mandatory Withdrawal of the Reference Is Appropriate.

Section 157(a) of Title 28 of the United States Code provides that "[e]ach district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." 28 U.S.C. §157(a). The District Court for the Southern District of New York has issued an order providing for the automatic reference of bankruptcy cases in the district to the

---

[3] As previously noted, to the extent necessary, this Court should also withdraw the reference with respect to this Objection and the Order on Rejection Procedures, as applied to the Rejection Notice.

Bankruptcy Court. *See Southern District of New York Order of Reference*, Administrative Order M-61 (July 11, 1984).

Section 157(d) of Title 28 contains both permissive and mandatory withdrawal provisions:

> "The district court *may* withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court *shall*, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." (emphasis added).

11 U.S.C. §157(d).

The Second Circuit has held that the "mandatory withdrawal provision has been interpreted to require withdrawal to the district court of cases or issues that would otherwise require a bankruptcy court judge to engage in significant interpretation, as opposed to simple application, of federal laws apart from the bankruptcy statutes." *City of New York v. Exxon Corp.*, 932 F.2d 1020, 1026 (2nd Cir. 1991). As stated by the court in *McCrory Corp v. 99cent Only Stores* (*In re McCrory Corp.*), 160 B.R. 502, 505 (S.D.N.Y. 1993), courts follow a two-pronged analysis with respect to mandatory withdrawal of the reference. "First, they reserve mandatory withdrawal for cases in which there needs to be 'substantial and material consideration of non-Bankruptcy code federal statutes.' … Second, they determine whether such consideration is 'necessary for the resolution of the proceeding.'" *Id*. (*citing Shugrue v. Air Line Pilots Ass'n Int'l*, 922 F.2d 984, 995 (2d Cir. 1990), *cert. denied*, 502 U.S. 808, 112 S.Ct. 50, 116 L.Ed.2d 28 (1991).

"While consideration of non-Bankruptcy Code law must entail more than routine application to the facts, matters requiring significant application of non-bankruptcy federal statutes affecting interstate commerce must be removed from the bankruptcy court and

transferred to the district courts which have more experience in applying those laws." *McCrory*, 160 B.R. at 505; *see also Schgrue v. Pension Benefit Guaranty Corp. (In re Ionosphere Clubs, Inc.)*, 142 B.R. 645, 647 (S.D.N.Y. 1992) (even matters falling within the bankruptcy court's "core" jurisdiction under section 157(b)(1) and (2) must upon timely motion be withdrawn under section 157(d) if they require the bankruptcy court to substantially interpret federal statutes which affect interstate commerce).

Mandatory withdrawal is appropriate when substantial and material potential conflicts exist between non-bankruptcy federal laws and Title 11. *Keene Corp. v. Bailey & Wesner LLP (In re Keene Corp.)*, 182 B.R. 379, 382 (S.D.N.Y. 1995) (*citing O'Connell v. Terranova (In re Adelphi Institute, Inc.)*, 112 B.R. 534, 536 (S.D.N.Y. 1990)); *see also E.P.A. v. National Gypsum Co., (In re National Gypsum Co.)*, 134 B.R. 188, 192 (N.D. Tex. 1991).

The resolution of the Debtors' Notice Rejecting Certain Executory Contracts and PNGTS's Objection requires substantial and material interpretation of provisions of the Natural Gas Act, 15 U.S.C. §717 *et seq.*, as reflected in Section B hereinbelow. Furthermore, substantial and material potential conflicts exist between the goals and purposes of Title 15 and the goals and purposes of Title 11. The requirements for mandatory withdrawal of the reference are met in this case.

### 2.     "Cause" Exists for Permissive Withdrawal of the Reference.

In addition to the mandatory provision for withdrawal of reference, Congress has provided for the permissive withdrawal of reference. 28 U.S.C. §157(d) provides that "[t]he district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." The statute

applies to both core and non-core proceedings. *In re National Gypsum Co.*, 134 B.R. 188, 192 (N.D. Tex. 1991).

In considering whether to grant permissive withdrawal, the district court must first determine whether the claim is core or non-core. *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2nd Cir. 1993), cert dismissed, 114 S.Ct. 1418 (1994); *Sibarium v. NCNB Texas Nat. Bank*, 107 B.R. 108, 115 (N.D. Tex. 1989). Once the district court has determined the nature of the proceeding as either core or non-core, it may then consider other factors including the efficient use of judicial resources, delay and costs to parties, uniformity of bankruptcy administration, prevention of forum shopping and other related factors. *Orion*, 4 F.3d at 1101.[4]

In light of the District Court's January 27, 2006 Memorandum & Order which dealt with substantially similar issues as those presented in connection with the Debtors' Notice Rejecting Certain Executory Contracts and PNGTS's Objection, principles of judicial economy and uniformity of bankruptcy administration dictate in favor of withdrawal of the reference in this matter.

B.  **Once the Court Grants the Motion to Withdraw the Reference, It Should Dismiss the Rejection Notice, Because FERC Has Exclusive Jurisdiction Over the PNGTS Contract.**

In enacting the Natural Gas Act, Congress has declared that "the business of transporting and selling natural gas for ultimate distribution to the public is affected with a public interest, and that Federal regulation in matters relating to the transportation of natural gas and the sale thereof in interstate and foreign commerce is necessary in the public interest." *See* 15 U.S.C.

---

[4] *See also Hatzel & Buehler, Inc. v. Orange & Rockland Utilities, Inc.*, 107 B.R. 34, 40 (D. Del. 1989) (permissive withdrawal for cause includes considerations of nature of proceedings and judicial economy); *Matter of Dunes Casino Hotel*, 63 B.R. 939, 950 (D.N.J. 1986) (among factors to consider whether cause exists are convenience, judicial economy, and particular knowledge of court's facts); *Holland America Ins. Co. v. Successor of Roy*, 777 F.2d 992, 999 (5th Cir. 1985) (district court should consider goals of promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, fostering the economical use of the Debtors' and creditors' resources, and expediting the bankruptcy process).

§717(a). The Natural Gas Act is specifically made applicable to the transportation of natural gas in interstate commerce. *See* 15 U.S.C. §717(b). PNGTS is a transporter of natural gas in interstate commerce, and therefore is defined as a "natural-gas company" under the Natural Gas Act. *See* 15 U.S.C. §717a(6). Accordingly, PNGTS, along with all of its transportation agreements including the PNGTS Contract, are subject to the Natural Gas Act, 15 U.S.C. §717, *et seq*.

Under the Natural Gas Act, FERC is vested with the power to "perform any and all acts, and to prescribe, issue, make, amend, and rescind such orders, rules, and regulations as it may find necessary or appropriate" to carry out the provisions of the Act. *See* 15 U.S.C. §717o; 18 C.F.R. §375.101.

Sections 717c(c) and (d) of the Natural Gas Act require sellers or transporters of natural gas in interstate commerce to file their rates and charges for any transportation or sale with FERC. The rates that a regulated gas company files with FERC are lawful only if they are "just and reasonable." *See* 15 U.S.C. §717c(a); *see also Arkansas Louisiana Gas Co. v. Hall,* 453 U.S. 571, 577, 101 S.Ct. 2925, 2930, 69 L.Ed.2d 856 (1981). As held by the United States Supreme Court in *Arkansas Louisiana Gas*, "[n]o court may substitute its own judgment on reasonableness for the judgment of the Commission. The authority to decide whether the rates are reasonable is vested by … the Act solely in the Commission." *Id.* Known as the "filed rate doctrine," transporters and sellers of natural gas are allowed to charge only those rates that the FERC has permitted to go into effect. *Id; see also East Tennessee Natural Gas Co. v. Federal Energy Regulatory Commission*, 863 F.2d 932, 941 (D.C. Cir. 1988). As was recently stated by this Court in its Memorandum & Order on a motion to withdraw the reference in *California Dept. of Water Resources, et al v. Calpine Corp.*, 05 Civ. 10842, and related matters (hereinafter

referred to as the "January 27, 2006 Memorandum & Order"), "[i]t has been widely recognized that the filed rate doctrine prohibits any collateral attack in the courts on the reasonableness of rates, and that the only forum for such a challenge is the FERC." January 27, 2006 Memorandum & Order, p. 6.[5]

The filed rate doctrine's purpose is two-fold: to prevent discriminatory or preferential treatment of customers by charging different rates or offering different services and to preserve the rate-making authority of FERC. *Arkansas Louisiana Gas Co.*, 453 U.S. at 579. The powers of FERC in this regard are defined by sections 4 and 5, 15 U.S.C. Section 717c and 717d. "The basic power of the Commission is that given it by [section] 5(a) to set aside and modify any rate or contract which it determines, after hearing, to be 'unjust, unreasonable, unduly discriminatory, or preferential.'" *See United Gas Pipe Line Co. v. Mobile Gas Service Corp.*, 350 U.S. 332, 341, 76 S. Ct. 373, 100 L.Ed. 373 (1956); 15 U.S.C. §§717c(e) and 717d(a).[6]

As the District Court held in *California Dept. of Water Resources*, FERC's jurisdiction and the filed rate doctrine stretch past regulation of rates and extend to the terms and conditions of the FERC-jurisdictional contracts themselves, such as the duration of such a contract. *See Nantahala Power & Light Co. v. Thornburg*, 476 U.S. 953, 966-67 (1986) ("The filed rate

---

[5] Although this Court's opinion in *California Dept. of Water Resources, et al v. Calpine Corp.*, 05 Civ. 10842, and related matters, was decided under the Federal Power Act, the courts have an established practice of citing interchangeably decisions interpreting the Federal Power Act and the Natural Gas Act. *See Arkansas Louisiana Gas Co.*, 101 S.Ct. at 2930, n. 7 ("as we have previously said, the relevant provisions of the Federal Power Act and the Natural Gas Act 'are in all material respects substantially identical'… we therefore follow our established practice of citing interchangeably decisions interpreting the pertinent sections of the two statutes.") (citing *FPC v. Sierra Pacific Power Co.*, 350 U.S. 348, 353, 76 S.Ct. 368, 371, 100 L.Ed. 388 (1956); s*ee also Public Utility District No. 1 of Grays Harbor County Washington v. Idacorp, Inc.*, 379 F.3d 641, 649 n. 8 (9th Cir. 2004).

[6] 15 U.S.C. §717d(a) is substantially similar to Section 824e(a) of the Federal Power Act, which authorizes FERC, after hearing, to change filed rates if it determines that they are unjust or unreasonable. *See* 16 U.S.C. §824e(a); *see also Federal Power Commission v. Sierra Pacific Power Co.*, 350 U.S. 348, 350-51, 76 S.Ct. 368, 100 L.Ed. 388 (1956).

doctrine is not limited to 'rates' per se."); *In re Permian Basin Area Cases*, 390 U.S. 747, 822 (1968) ("The regulatory system created by the [Federal Power] Act is premised on contractual agreements voluntarily devised by the regulated companies; it contemplates abrogation of these agreements only in circumstances of unequivocal public necessity."); *Pennsylvania Water & Power Co. v. Federal Power Comm'n*, 343 U.S. 414, 423 (1952) (holding that if an energy supplier "wishes to discontinue some or all of the services [the Federal Power Act] opens up a way provided [the supplier] can prove that its wishes are consistent with public interest"); *see also AT&T v. Cent. Office Tel., Inc.*, 524 U.S. 214, 223, 118 S.Ct. 1956, 1963, 141 L.Ed.2d 222 (1998) ("Rates, however, do not exist in isolation. They have meaning only when one knows the services to which they are attached.").

Likewise, in the context of the Natural Gas Act, the filed rate doctrine is not limited to gas rates; it extends to services, classifications, charges and practices included in the rate filing. *See* 15 U.S.C. 717c(c). These matters fall plainly within the jurisdiction of FERC under the Act. Sections 4 and 5 of the Natural Gas Act, 15 U.S.C. §§717c and 717d, authorize FERC's "plenary review of the contracts and rate schedules established by [natural gas] companies." *Natural Gas Pipeline Company of America v. F.E.R.C.*, 904 F.2d 1469, 1470 (10th Cir. 1990) (citing *Colorado Interstate Gas Co. v. F.E.R.C.*, 791 F.2d 803, 806 (10th Cir. 1986), *cert. denied*, 479 U.S. 1043, 107 S.Ct. 907, 93 L.Ed.2d 857 (1987)). Section 5 of the Natural Gas Act also authorizes FERC, at any time and "upon its own motion" or that of third persons, to hold a hearing on the reasonableness of any rate, practice, or contract of a natural gas company and to "determine the just and reasonable rate, charge, classification, rule, regulation, practice, or contract to be thereafter observed and in force." 15 U.S.C. §717d(a); *Natural Gas Pipeline Co. of America*, 904 F.2d at 1470.

In *Federal Power Commission v. Sierra Pacific Power Company*, *supra*, a case decided by the United States Supreme Court on the same day that it decided *United Gas Pipe Line Company v. Mobile Gas Service Corp.*, *supra*, the Court was asked to review an order of the Federal Power Commission approving the unilateral filing, by an electric power provider, of a new rate for the sale of electric power. *Sierra Pacific Power Co.,* 350 U.S. at 350-51.[7] The Supreme Court held that "[t]he condition precedent to the Commission's exercise of its power under section 206(a) is a finding that the existing rate is 'unjust, unreasonable, unduly discriminatory or preferential." *Sierra Pacific Power Co.*, 350 U.S. at 353. The Supreme Court noted that "the purpose of the power given the Commission by section 206(a) is the protection of the public interest, as distinguished from the private interests of the utilities…When section 206(a) is read in the light of this purpose, it is clear that a contract may not be said to be either 'unjust' or 'unreasonable' simply because it is unprofitable to the public utility." *Sierra Pacific Power Co.*, 350 U.S. at 355. Concluding that "[w]hether under the facts of this case the contract rate is so low as to have an adverse effect on the public interest is of course a question to be determined in the first instance by the Commission," the Supreme Court affirmed the order of the Court of Appeals, with instructions to remand the case to the Federal Power Commission for such further proceedings "as the Commission may deem desirable." *Id.*

As stated by the District Court in its January 27, 2006 Memorandum & Order, pp. 7-8 "once filed with FERC, wholesale power contracts become the 'equivalent of a federal regulation,'" *California ex rel. Lockyer v. Dynergy, Inc.*, 375 F.3d 831, 839 (9th Cir. 2004), and "the duty to perform under those contracts may be required, 'not from the private law of

---

[7] The Supreme Court noted in the opening paragraph of its opinion in *Sierra Pacific Power Co.* that the pertinent provisions implicated in the appeal, Federal Power Act §§ 205(c),(d), and (e), and 206(a), 16 U.S.C. §§ 824d and 824e, are substantially identical to §§ 4(c), (d), and (e) and 5(a), respectively, of the Natural Gas Act, 15 U.S.C. §§ 717c and 717d.

contract,' but by FERC itself, *Pennsylvania Water & Power Co. v. Federal Power Comm'n*, 343 U.S. 414, 422, 72 S.Ct. 843, 847, 96 L.Ed. 1042 (1952)."

As was the case in *California Dept. of Water Resources,* the PNGTS Contract that Debtors seek to reject herein is subject to FERC jurisdiction under the Natural Gas Act and has been filed with FERC. Accordingly, under normal conditions, altering the rates, terms, conditions, or duration of the contracts would require FERC involvement and approval. Furthermore, the Natural Gas Act, like the Federal Power Act, contains no provisions that specifically limit FERC jurisdiction in the bankruptcy context.

Also as in *California Dept. of Water Resources*, Debtors seek release from specific performance under the PNGTS Contract, thus altering the duration of the contract, which cannot be accomplished outside the exclusive jurisdiction of FERC. *See In re Permian Basin Area Rate Cases*, 390 U.S. 747, 822 (1968) ("The regulatory system created by the Act is premised on contractual agreements voluntarily devised by the regulated companies; it contemplates abrogation of these agreements only in circumstances of unequivocal public necessity.") and other cases cited *infra*. Although not necessary to this Court's determination, it also appears that Debtors are seeking rejection based on dissatisfaction with the rates, given the fact that the Debtors have continued to ship gas under the PNGTS Contract post-petition and even after they filed the Rejection Notice.[8] *See* Spreadsheet, Ex. D hereto.

Just as the District Court determined in *California Dept. of Water Resources* that it had no subject matter jurisdiction to hear the Debtors' motion to reject certain energy contracts in

---

[8] Because the Debtors have continued to use the capacity under the PNGTS Contract, thereby demonstrating that the Debtors need that capacity and are simply seeking a better rate through rejection, the Rejection Notice would also be subject to exclusive FERC jurisdiction and therefore outside the jurisdiction of the District Court and Bankruptcy Court under the standards set forth in *Mirant Corp. v. Potomac Elec. Power Co. (In re Mirant)*, 378 F.3d 511 (5th Cir. 2004) (drawing distinction between situations where a debtor seeks to reject a contract because the filed rate exceeds the market rate and where the rejection is sought because the contract is unnecessary).

light of FERC's jurisdiction over those energy contracts, the Court should likewise determine that it has no jurisdiction over the Debtor's Rejection Notice due to FERC's exclusive jurisdiction over the terms and conditions of the PNGTS Contract, and accordingly dismiss the Debtors' Rejection Notice.

## CONCLUSION

For the reasons set forth herein, PNGTS respectfully requests that the District Court withdraw the reference with respect to the Rejection Notice, dismiss the Rejection Notice for lack of subject matter jurisdiction, and grant PNGTS such other and further relief to which it is entitled.

Dated: February 16, 2006
at Dallas, Texas

Respectfully submitted,

  /s/ David W. Elrod
David W. Elrod (TX State Bar 06591900)
Craig Tadlock (TX State Bar 00791766)
Brian A. Farlow (TX State Bar 00794339)
ELROD, PLLC
500 N. Akard Street, Suite 3000
Dallas, Texas 75201
Telephone: (214) 855-5188
Facsimile: (214) 855-5183

David M. Posner (DP-6505)
Brian J. Grieco (BG-4385)
HOGAN & HARTSON L.L.P.
875 Third Avenue
New York, New York 10022
Telephone: (212) 918-3000
Facsimile: (212) 918-3100

**ATTORNEYS FOR PNGTS**

## CERTIFICATE OF SERVICE

       I hereby certify that on February 16, 2006, the above-referenced document was served upon parties in interest via the Court's ECF notification system and in accordance with the Debtor's February 6, 2006 Notice Rejecting Certain Executory Contracts, via facsimile and e-mail to (a) Kirkland & Ellis LLP, Attn: Matthew Cantor, Esq. 153 E. 53rd Street, New York, New York 10022-4611, facsimile number 212-446-4900, e-mail mcantor@kirkland.com; and (b) Kirkland & Ellis LLP, Attn: Bennett Spiegel, Esq., 777 South Figueroa Street, Los Angeles, California 90017, facsimile number 213-680-8500; e-mail bspiegel@kirkland.com.

                              ___/s/ Craig Tadlock_____
                              Craig Tadlock