FORM B10 (Official Form 10) (10/05)

| UNITED STATES BANKRUPTCY COURT Southern | DISTRICT OF New York | **Received**<br>PROOF OF CLAIM |
|---|---|---|

| Name of Debtor<br>Calpine Corporation | Case Number<br>05-60200 |
|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

AUG 0 9 2006

Kurtzman Carson

USBC SDNY
Claim # 4141
Calpine Corporation
05-60200

| Name of Creditor (The person or other entity to whom the debtor owes money or property):<br><br>Gas Transmission Northwest Corporation | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. |
|---|---|

| Name and address where notices should be sent:<br>c/o David W. Elrod and Craig Tadlock, Elrod, PLLC<br>500 N. Akard St., Suite 3000, Dallas, TX 75201<br>Telephone number: 214-855-5188 | ☐ Check box if you have never received any notices from the bankruptcy court in this case.<br>☒ Check box if the address differs from the address on the envelope sent to you by the court. |
|---|---|

THIS SPACE IS FOR COURT USE ONLY

| Last four digits of account or other number by which creditor identifies debtor: | Check here ☐ replaces<br>if this claim ☐ amends   a previously filed claim, dated: |
|---|---|

**1.   Basis for Claim**
- ☐ Goods sold
- ☐ Services performed
- ☐ Money loaned
- ☐ Personal injury/wrongful death
- ☐ Taxes
- ☒ Other ——— See Exhibit A ———

- ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
- ☐ Wages, salaries, and compensation (fill out below)
  Last four digits of your SS #: _____
  Unpaid compensation for services performed
  from _____ to _____
  (date)              (date)

**2.   Date debt was incurred:**
See Exhibit A

**3.   If court judgment, date obtained:**
N/A

**4.   Classification of Claim.** Check the appropriate box or boxes that best describe your claim and state the amount of the claim at the time case filed.
See reverse side for important explanations.

Unsecured Nonpriority Claim $ See Exhibit A

☒ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**Unsecured Priority Claim**

☐ Check this box if you have an unsecured claim, all or part of which is entitled to priority.

Amount entitled to priority $_____

Specify the priority of the claim:
- ☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B)
- ☐ Wages, salaries, or commissions (up to $10,000),* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
- ☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

**Secured Claim**

☒ Check this box if your claim is secured by collateral (including a right of setoff).

Brief Description of Collateral:                                    See
- ☐ Real Estate   ☐ Motor Vehicle   ☒ Other   Exhibit A

Value of Collateral:   $ See Exhibit A

Amount of arrearage and other charges at time case filed included in secured claim, if any: $ _____

- ☐ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
- ☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
- ☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(___).
*Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**5.   Total Amount of Claim at Time Case Filed:**
$ See Exhibit A
(unsecured)    (secured)    (priority)    (Total)

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**6.   Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**7.   Supporting Documents:** *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**8.   Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

RECEIVED
JUL 3 1 2006

| Date<br>7/26/06 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):<br><br>*[signature]*<br>Ken Nichols, Director, Credit and Risk Management |
|---|---|

Penalty for presenting fraudulent claim: Fine of up to $500,000 or impr—

0560200060731000000000062

# <u>Exhibit A</u>

# Exhibit A

## to Proofs of Claim of Gas Transmission Northwest Corporation ("GTN") asserted against Calpine Corporation and various subsidiaries thereof

GTN's claims are based on 8 firm transportation service agreements between GTN and Calpine Energy Services, L.P. ("CES") (the "Contracts"). GTN asserts (a) claims for damages as a result of the Debtors' failure to perform under certain of the Contracts post-petition; (b) contingent claims for rejection damages under the Contracts; and (c) a claim against Calpine Corporation based on a Guarantee dated January 22, 2002 (the "Guarantee"). All claims are asserted against Calpine Corporation and various subsidiaries thereof, as set forth below. A summary of GTN's claims and all of the relevant contracts is attached as Exhibit B. A copy one of the Contracts, as amended, is attached as Exhibit C, and the other Contracts are of substantially similar form. A copy of the Guarantee is attached as Exhibit D. Other supporting evidence for these proofs of claim, including additional documents, is summarized herein.

The total principal amount of GTN's claims, as set forth on Exhibit B, is $525,167,992. The principal amount of GTN's claims for Debtors' failure to perform under certain of the Contracts post-petition, to date, is $2,350,082. At this time, GTN's contingent claims for rejection damages are $522,817,910 (gross value; subject to discounting to present value and reduction by potential mitigation, if any).

In filing these proofs of claim, GTN reserves all of its rights, including without limitation: (a) its positions regarding jurisdictional issues with respect to the Contracts and their potential rejection; (b) its right to assert that some or all of its claims are entitled to administrative priority; (c) its rights to draw down and apply assurances; (d) its rights of setoff; (e) its positions as to the inappropriateness and invalidity of the Debtors' purported "repudiation" of certain of the Contracts; (f) its rights to assert claims for interest on the amounts stated in these proofs of claim, if applicable; (g) its rights to assert claims for attorney's fees; (h) its rights to assert claims for the costs of efforts to mitigate its damages; (i) its rights to amend and/or supplement these proofs of claim at any time and in any manner; (j) its rights to file additional proofs of claim for additional claims; (k) its rights to attach or bring forth additional documents supporting its claims and additional documents that may become available after further investigation and discovery; (l) its rights to file proofs of claim against additional debtor entities; (m) its rights to assert claims against non-debtor Calpine-affiliated entities; and (n) its rights to assert claims against non-debtor entities that are not affiliated with Calpine.

In addition, GTN is continuing to investigate matters related to its claims. These proofs of claim are protective in nature and are filed to protect GTN from potential forfeiture of any of its rights against the Debtors. The filing of these proofs of claim shall not constitute: (a) a waiver or release of the rights of GTN against the Debtors or any other person or property; (b) a waiver of GTN to contest the jurisdiction of this Court with respect to the subject matter of GTN's claims, any objection or other proceeding commenced with respect thereto or otherwise involving GTN; or (c) an election of remedies or choice of law.

**Debtors Against Which GTN Claims Are Asserted**

GTN asserts its claims against the following debtor entities:

| | |
|---|---|
| Calpine Corporation | 05-60200 |
| Calpine Power Company | 05-60202 |
| Calpine Energy Services Holdings, Inc. | 05-60208 |
| CPN Energy Services GP, Inc. | 05-60209 |
| CPN Energy Services LP, Inc. | 05-60210 |
| Calpine Energy Services, L.P. | 05-60222 |

GTN asserts its claims directly against the counterparty to the Contracts, CES.

GTN also asserts its claims directly against the counterparty to the Guarantee, Calpine Corporation.

GTN also asserts its claims against Calpine Corporation and the other debtor entities listed above, based upon Calpine Corporation's operation of its own business and that of its subsidiaries and affiliates as an integrated enterprise, as repeatedly referenced by Calpine Corporation publicly and in its counsel's representations to this Court. GTN reserves the right to assert its claims against additional debtor entities based on Calpine's operation of its business as an integrated enterprise.

GTN also asserts its claims against Calpine Corporation and the other debtor entities listed above based on a single business enterprise theory as between CES and one or more of the debtor entities. GTN also asserts its claims directly against the other debtor entities listed above.

GTN also asserts its claims against Calpine Energy Services, L.P. ("CES"), CPN Energy Services GP, Inc. ("CES-GP"), CPN Energy Services LP, Inc. ("CES-LP"), Calpine Energy Services Holdings, Inc. ("CESH"), and Calpine Corporation, based on CES's actual use of the capacity under the Contract, payment for the capacity under the Contract, and management of the capacity under the Contract, particularly its direction of the capacity for the benefit of Calpine facilities not owned by CES and for trading purposes for the benefit of Calpine entities other than CES. CES-GP is the general partner of CES, holding a 1% ownership interest in CES. CES-LP is the sole limited partner of CES, holding a 99% ownership interest in CES. CESH is the direct 100% owner of CES-GP and CES-LP. Calpine Corporation is the direct 100% owner of CESH. CES, CES-GP, CES-LP, CESH, and Calpine Corporation all benefited from the use, payment and management of the capacity under the Contract by CES.

GTN also asserts claims against Calpine Power Company ("CPC") and Calpine Corporation based on actual use of the capacity under one or more of the Contracts to deliver gas to fire Calpine's Hermiston Power Plant. GTN may also assert claims against non-debtor entities that are subsidiaries of Calpine Corporation based on actual use of the capacity under one or more of the Contracts to deliver gas to fire Calpine's Hermiston Power Plant – Hermiston Power Partnership ("Hermiston Power"); Calpine Hermiston, LLC ("Calpine Hermiston"); CPN Hermiston, LLC ("CPN Hermiston"); Calpine CCFC LP, Inc. ("CCFC-LP"), CCFC Preferred

Holdings, LLC ("CCFC-PH"), CCFC Preferred Holdings 2, LLC ("CCFC-PH2"), and Calpine CCFC Holdings, Inc. ("CCFC-H"). On information and belief, Hermiston Power owns the Hermiston Power Plant. Calpine Hermiston and CPN Hermiston are the partners in Hermiston Power, each holding a 50% ownership interest. CCFC-LP is the direct 100% owner of Calpine Hermiston and CPN Hermiston. CCFC-PH is the direct 100% owner of CCFC-LP. CCFC-PH2 is the direct 100% owner of CCFC-PH. CCFC-H is the direct 100% owner of CCFC-PH2. CPC is the direct 100% owner of CCFC-H. Calpine Corporation is the direct 100% owner of CPC. Hermiston Power, Calpine Hermiston, CPN Hermiston, CCFC-LP, CCFC-PH, CCFC-PH2, CCFC-H, CPC, and Calpine Corporation all benefited from the use of the capacity under the Contract to deliver gas to fire the Hermiston Power Plant.

GTN has not had the ability to take any discovery to date on its claims; accordingly, GTN reserves the right to assert its claims against additional debtor entities. In particular, GTN believes that Calpine Corporation, CES, and/or other Calpine-affiliated entities have used the capacity under certain of the Contracts to deliver gas to fire some or all of Calpine's gas-fired electric generation facilities in the State of California, as follows:

1.  Delta Energy Center (CA)
2.  Metcalf Energy Center (CA)
3.  Los Medanos Energy Center (CA)
4.  Sutter Energy Center (CA)
5.  Goldendale Energy Center (WA)
6.  Los Esteros Critical Energy Facility (CA)
7.  Gilroy Energy Center (CA)
8.  Gilroy Cogeneration Plant (CA)
9.  King City Cogeneration Plant (CA)
10. Pittsburg Power Plant (CA)
11. Greenleaf 2 Power Plant (CA)
12. Greenleaf 1 Power Plant (CA)
13. Wolfskill Energy Center (CA)
14. Yuba City Energy Center (CA)
15. Feather Ridge Energy Center (CA)
16. Lambie Energy Center (CA)
17. Goose Haven Energy Center (CA)
18. Creed Energy Center (CA)
19. Riverview Energy Center (CA)
20. King City Energy Center (CA)

GTN reserves the right to assert its claims against any or all Calpine-affiliated debtor entities that own, operate, or manage any or all of these facilities, and any or all of their parent entities or other entities that benefited from such use of the capacity under the Contracts.

## Item 1 – Basis for Claim

As noted above, GTN asserts claims for damages as a result of Debtors' failure to perform under certain of the Contracts post-petition, a contingent claim for rejection damages

under the Contracts, a claim based on the Guarantee, and any and all claims, rights and/or remedies that GTN may have, including without limitation, claims for setoff, indemnification, contribution, rescission, breach of contract, breach of implied contract or quasi-contract, unjust enrichment, recovery in quantum meruit, agency liability, aiding and abetting in the breach of fiduciary duties, piercing the corporate veil, alter ego liability, single business enterprise liability, fraud, specific performance, misrepresentation, reimbursement, restitution, subrogation, interest, attorney's fees, and/or costs of efforts to mitigate its damages, related to or arising from transactions by or among or involving GTN, the Debtors and/or any of their respective affiliates, successors, predecessors or assigns, arising as a matter of law or equity.

The Debtors have not assumed or rejected the Contracts or obtained the requisite authority of the Federal Energy Regulatory Commission ("FERC") to do so. If the Debtors assume any or all of the Contracts, then the Debtors would be required to cure any outstanding defaults and assume all going-forward liabilities associated with such Contracts. Such liabilities would then constitute post-petition obligations of the Debtors, rather than pre-petition damage claims. Accordingly, pending assumption or rejection of each of the Contracts, the type and full extent of the claims made herein cannot be determined. GTN reserves its rights to amend any of the claims set forth herein.

## Item 2 – Date Debt Was Incurred

GTN's post-petition claims for Debtors' failure to perform under certain of the Contracts were incurred for services beginning April 1, 2006, and, to date, running through July 31, 2006. These claims will continue to increase (and GTN's contingent claims for rejection damages will likewise decrease) until such Contracts are properly assumed or rejected. GTN reserves the right to assert that these claims are entitled to administrative priority.

At this time, GTN's contingent claims for rejection damages are for services beginning August 1, 2006, and running through the end of the terms of each of the Contracts, which are summarized on Exhibit B.

## Item 4 – Classification of Claim

GTN's claims are secured to the extent of a letter of credit in the amount of $3,964,024, provided on a pre-petition basis; cash collateral in the amount of $1,693,916.82, provided on a pre-petition basis; and cash collateral in the amount of $423,330.84, provided on a post-petition basis.

In addition, GTN may hold certain volumes of imbalance gas in connection with the Contracts, over which GTN may assert a right of setoff against its claims.

The balance of GTN's claims is unsecured. To the extent GTN may have any additional setoff, counterclaim or credit, these amounts are undetermined at this time. To the extent that any portion of GTN's claims are entitled to administrative priority status under Sections 503 and 507 of the Bankruptcy Code, GTN claims such priority status in the maximum amount allowed by law. The filing of these proofs of claim shall in no way be deemed a waiver of GTN's rights

to assert that any or all of the amounts owed under any of the Contracts are entitled to administrative priority status.

## Item 5 – Total Amount of Claim at Time Case Filed

The total principal amount of GTN's claims, as set forth on Exhibit B, is $525,167,992. The principal amount of GTN's claims for Debtors' failure to perform under the Contract post-petition, to date, is $2,350,082. At this time, GTN's contingent claims for rejection damages are $522,817,910 (gross value; subject to discounting to present value and reduction by potential mitigation, if any).

In addition, GTN reserves the right to assert any and all contingent unliquidated and/or undetermined claims under any or all of the Contracts, including without limitation, claims identified in Item 1 above.

## Item 6 – Credits

See Item 4 above.

## Item 7 – Supporting Documents

GTN believes that the Debtors have copies of all documents supporting these proofs of claim not attached hereto, and such documents are summarized herein. Additional copies or copies of any other relevant materials in the possession, custody or control of GTN will be provided upon request.

# <u>Exhibit B</u>

**Gas Transmission Northwest Corporation**
**Proof of Claim Summary**
7/26/06

Dates    8/1/2006    1/1/2007

| GTN contract | Receipt | Delivery | path start date | path end date | rate schedule | Reservation rate up to Dec. 31, 2006 | Reservation rate after January 1, 2007 | MDQ | Post-petition unpaid amounts (April 1, 2006 to July 31, 2006) | Exposure (Contingent Claim) beyond July 31, 2006 |
|---|---|---|---|---|---|---|---|---|---|---|
| 08429 | Kingsgate | Malin | 11/1/2003 | 10/31/2028 | FTS-1 | 0.254825 | 0.427193 | 25,000 | $775,093 | $86,135,630 |
| 07357 | Kingsgate | Malin | 11/1/2002 | 10/31/2023 | FTS-1 | 0.254825 | 0.427193 | 15,000 | $465,056 | $39,974,154 |
| 08096 | Kingsgate | Malin | 11/1/2002 | 11/30/2042 | FTS-1 | 0.254825 | 0.427193 | 35,800 | $1,109,933 | $202,000,741 |
| 08428 | Kingsgate | Calpine H.P.P. | 11/1/2003 | 10/31/2028 | FTS-1 | 0.133337 | 0.224172 | 25,000 | $0 | $45,198,702 |
| 08155 | Kingsgate | Malin | 11/1/2003 | 10/31/2023 | FTS-1 | 0.254825 | 0.427193 | 10,000 | $0 | $26,649,436 |
| 08194 | Kingsgate | Malin | 11/1/2003 | 10/31/2015 | FTS-1 | 0.254825 | 0.427193 | 10,000 | $0 | $14,166,857 |
| 08115 | Kingsgate | Malin | 11/1/2001 | 10/31/2023 | FTS-1 | 0.254825 | 0.427193 | 19,438 | $0 | $51,801,174 |
| 08158 | Kingsgate | Malin | 12/1/2001 | 10/31/2023 | FTS-1 | 0.254825 | 0.427193 | 21,348 | $0 | $56,891,216 |
| **Totals** | | | | | | | | 161,586 | **$2,350,082** | **$522,817,910** |

Note:

# Exhibit C

APPROVED
AS TO FORM: _M C S_
DATE: _8-21-02_

F-08429

# FIRM TRANSPORTATION SERVICE AGREEMENT

THIS AGREEMENT is made and entered into this 6th day of August, 2002, by and between

PG&E GAS TRANSMISSION, NORTHWEST CORPORATION, a California corporation (hereinafter referred to as "PG&E GT-NW"),

and

CALPINE ENERGY SERVICES, L.P., a corporation existing under the laws of the State of Delaware (hereinafter referred to as "Shipper").

WHEREAS, PG&E GT-NW owns and operates a natural gas pipeline transmission system which extends from a point of interconnection with the pipeline facilities of Alberta Natural Gas Company Ltd (ANG) at the International Boundary near Kingsgate, British Columbia, through the states of Idaho, Washington and Oregon to a point of interconnection with Pacific Gas and Electric Company at the Oregon-California border near Malin, Oregon; and

WHEREAS, Shipper desires PG&E GT-NW, on a firm basis, to transport certain quantities of natural gas from Kingsgate, British Columbia to Malin, Oregon as specified in Exhibit A of this agreement; and

WHEREAS, PG&E GT-NW is willing to transport certain quantities of natural gas for Shipper, on a firm basis,

NOW, THEREFORE, the parties agree as follows:

## I
## Governmental Authority

1.1    This Firm Transportation Agreement ("Agreement") is made pursuant to the regulations of the Federal Energy Regulatory Commission (FERC) contained in 18 CFR Part 284, as amended from time to time.

1.2    This Agreement is subject to all valid legislation with respect to the subject matters hereof, either state or federal, and to all valid present and future decisions, orders, rules, regulations and ordinances of all duly constituted governmental authorities having jurisdiction.

PG&E Gas Transmission, Northwest Corporation is not the same company as Pacific Gas and Electric Company, the California utility. PG&E Gas Transmission, Northwest Corporation is not regulated by the California Public Utilities Commission, and customers of Pacific Gas and Electric Company do not have to buy PG&E Gas Transmission, Northwest Corporation 's products in order to continue to receive quality regulated services from the utility.

1.3     Shipper shall reimburse PG&E GT-NW for any and all filing fees incurred by PG&E GT-NW in seeking governmental authorization for the initiation, extension, or termination of service under this Agreement and Rate Schedule FTS-1. Shipper shall reimburse PG&E GT-NW for such fees at PG&E GT-NW's designated office within ten (10) days of receipt of notice from PG&E GT-NW that such fees are due and payable. Additionally, Shipper shall reimburse PG&E GT-NW for any and all penalty fees or fines assessed PG&E GT-NW caused by the negligence of Shipper in not obtaining all proper Canadian and domestic import/export licenses, surety bonds or any other documents and approvals related to the Canadian exportation and subsequent domestic importation of natural gas transported by PG&E GT-NW hereunder.

## II
## Quantity of Gas and Priority of Service

2.1     Subject to the terms and provisions of this Agreement and PG&E GT-NW's Transportation General Terms and Conditions applicable to Rate Schedule FTS-1, daily receipts of gas by PG&E GT-NW from Shipper at the point(s) of receipt shall be equal to daily deliveries of gas by PG&E GT-NW to Shipper at the point(s) of delivery; provided, however, Shipper shall deliver to PG&E GT-NW an additional quantity of natural gas at the point(s) of receipt as compressor station fuel, line loss and unaccounted for gas as specified in the Statement of Effective Rates and Charges applicable to Rate Schedule FTS-1. Any limitations of the quantities to be received from each point of receipt and/or delivered to each point of delivery shall be as specified on the Exhibit A attached hereto.

2.2     The maximum quantities of gas to be delivered by PG&E GT-NW for Shipper's account at the point(s) of delivery are set forth in Exhibit A.

2.3     In providing service to its existing or new customers, PG&E GT-NW will use the priorities of service specified in Paragraph 19 of PG&E GT-NW's Transportation General Terms and Conditions on file with the FERC.

2.4     Prior to initiation of service, Shipper shall provide PG&E GT-NW with any information required by the FERC, as well as all information identified in PG&E GT-NW's Transportation General Terms and Conditions applicable to Rate Schedule FTS-1.

## III
## Term of Agreement

3.1     This Agreement shall become effective November 1, 2003, and shall continue in full force and effect through October 31, 2028.

## IV
## Points of Receipt and Delivery

4.1    The point(s) of receipt of gas deliveries to PG&E GT-NW is as designated in Exhibit A, attached hereto.

4.2    The point(s) of delivery of gas to Shipper is as designated in Exhibit A, attached hereto.

4.3    Shipper shall deliver or cause to be delivered to PG&E GT-NW the gas to be transported hereunder at pressures sufficient to deliver such gas into PG&E GT-NW's system at the point(s) of receipt. PG&E GT-NW shall deliver the gas to be transported hereunder to or for the account of Shipper at the pressures existing in PG&E GT-NW's system at the point(s) of delivery.

## V
## Operating Procedure

5.1    Shipper shall conform to the operating procedures set forth in PG&E GT-NW's Transportation General Terms and Conditions.

5.2    Nothing in Section 5.1 shall compel PG&E GT-NW to transport gas pursuant to Shipper's request on any given day. PG&E GT-NW shall have the right to interrupt or curtail the transport of gas for the account of Shipper pursuant to PG&E GT-NW's Transportation General Terms and Conditions applicable to Rate schedule FTS-1.

## VI
## Rate(s), Rate Schedules,
## and General Terms and Conditions of Service

6.1    Shipper shall pay PG&E GT-NW each month for services rendered pursuant to this Agreement in accordance with PG&E GT-NW's Rate Schedule FTS-1, or superseding rate schedule(s), on file with and subject to the jurisdiction of FERC. In the event PG&E GT-NW and shipper agree on a Negotiated Rate, that rate, and any provisions governing such Negotiated Rate, shall be set forth in Exhibit B attached hereto.

6.2    Shipper shall compensate PG&E GT-NW each month for compressor station fuel, line loss and other unaccounted for gas associated with this transportation service provided herein in accordance with PG&E GT-NW's Rate Schedule FTS-1, or superseding rate schedule(s), on file with and subject to the jurisdiction of FERC.

6.3    This Agreement in all respects shall be and remains subject to the applicable provisions of Rate Schedule FTS-1, or superseding rate schedule(s) and of the applicable Transportation General Terms and Conditions of PG&E GT-NW's FERC Gas Tariff First Revised Volume No. 1-A on file with the FERC, all of which are by this reference made a part hereof.

F-08429

6.4    PG&E GT-NW shall have the unilateral right from time to time to propose and file with FERC such changes in the rates and charges applicable to transportation services pursuant to this Agreement, the rate schedule(s) under which this service is hereunder provided, or any provisions of PG&E GT-NW's Transportation General Terms and Conditions applicable to such services. Shipper shall have the right to protest any such changes proposed by PG&E GT-NW and to exercise any other rights that Shipper may have with respect thereto.

## VII
## Miscellaneous

7.1    This Agreement shall be interpreted according to the laws of the State of California.

7.2    Shipper warrants that upstream and downstream transportation arrangements are in place, or will be in place as of the requested effective date of service, and that it has advised the upstream and downstream transporters of the receipt and delivery points under this Agreement and any quantity limitations for each point as specified on Exhibit A attached hereto.

7.3    Shipper agrees to indemnify and hold PG&E GT-NW harmless for refusal to transport gas hereunder in the event any upstream or downstream transporter fails to receive or deliver gas as contemplated by this Agreement.

7.4    Unless herein provided to the contrary, any notice called for in this Agreement shall be in writing and shall be considered as having been given if delivered by registered mail or telex with all postage or charges prepaid, to either PG&E GT-NW or Shipper at the place designated below. Routine communications, including monthly statements and payment, shall be considered as duly delivered when received by ordinary mail. Unless changed, the addresses of the parties are as follows:

| | |
|---|---|
| "PG&E GT-NW" | PG&E GAS TRANSMISSION, NORTHWEST CORPORATION<br>1400 SW 5th Avenue, Suite 900<br>Portland, Oregon 97201<br>Attention: Peter G. Lund, Vice President |
| "Shipper"<br>(Notices) | CALPINE ENERGY SERVICES, L.P.<br>P.O. Box 11749<br>Pleasanton, California  94588-1749<br>Attention:  Contract Administration |
| "Shipper"<br>(Invoices) | CALPINE ENERGY SERVICES, L.P.<br>700 Louisiana, Suite 2700<br>Houston, Texas 77010<br>Attention:  Fuels Accounting |

4

F-08429

7.5     A waiver by either party of any one or more defaults by the other hereunder shall not operate as a waiver of any future default or defaults, whether of a like or of a different character.

7.6     This Agreement may only be amended by an instrument in writing executed by both parties hereto.

7.7     Nothing in this Agreement shall be deemed to create any rights or obligations between the parties hereto after the expiration of the term set forth herein, except that termination of this Agreement shall not relieve either party of the obligation to correct any quantity imbalances or Shipper of the obligation to pay any amounts due hereunder to PG&E GT-NW.

7.8     This Agreement shall terminate upon the expiration of any transportation authority which is not superseded, for whatever reason, by permanent transportation authority.

7.9     Exhibits A and C, attached hereto are incorporated herein by reference and made a part hereof for all purposes.

IN WITNESS WHEREOF the parties hereto have caused this Agreement to be executed as of the day and year first above written.

PG&E GAS TRANSMISSION, NORTHWEST CORPORATION

By: _____

Name: Peter G. Lund

Title:   VP, Pipeline Marketing & Development

CALPINE ENERGY SERVICES, L.P.

By: _____

Name: Brad A. Barnds

Title: Vice President

Contract electronically signed on E-trans[SM]

By:     Elizabeth Waters

Date:   August 6, 2002

5

F-08429

# EXHIBIT A

### TO THE TRANSPORTATION AGREEMENT
#### Dated 6th day of August, 2002
#### Between

## PG&E GAS TRANSMISSION, NORTHWEST CORPORATION
### And
## CALPINE ENERGY SERVICES, L.P.

| Receipt Point[1] | Delivery Point[1] | Maximum Daily Quantity (MDQ) (Dth/day)[2] |
|---|---|---|
| Kingsgate, B.C. | Malin, OR | 10,000 |

[1] Pursuant to paragraph 29 of PG&E GT-NW's Transportation General Terms and Conditions, Shipper may designate other receipt and delivery points as "secondary receipt" and "secondary delivery" points.

[2] Shipper's Maximum Daily Quantity or MDQ for service under this Agreement, shall be based on the quantity of gas delivered at Shipper's point(s) of delivery as stated in this Exhibit A.

[3] The term for such capacity is from November 1, 2003 through October 31, 2028.

F-08429

# EXHIBIT C

## TO THE FIRM TRANSPORTATION SERVICE AGREEMENT
### Dated 6th day of August, 2002
### Between

## PG&E GAS TRANSMISSION, NORTHWEST CORPORATION,
### and
## CALPINE ENERGY SERVICES, L.P.

Type of Replacement Service:

Replacement Shipper:

Receipt Point:

Delivery Point:

Maximum Daily Quantity:

Commencement of Credit:

Termination of Credit:

Level of Credit:  __ percent of the maximum rate defined as:_____
applicable for service under Rate Schedule FTS-1.

Other Terms and Conditions:

1._____

2._____

3._____

Effective _____

7

F-08429

# AMENDMENT NO. 1

## TO THE TRANSPORTATION SERVICE AGREEMENT

### DATED AUGUST 6, 2002

### BETWEEN

## PG&E GAS TRANSMISSION, NORTHWEST CORPORATION

### And

## CALPINE ENERGY SERVICES, L.P.

This Amendment relates to that certain Gas Transportation Service Agreement (F-08429) dated August 6, 2002 entered into by PG&E GAS TRANSMISSION, NORTHWEST CORPORATION and CALPINE ENERGY SERVICES, L.P.

The parties hereby agree that Exhibit A to the Gas Transportation Service Agreement shall be amended as attached hereto to reflect a new Maximum Daily Quantity.

Dated effective November 1, 2003.

PG&E Gas Transmission, Northwest
Corporation

By: _____
    Jay G. Story
    Director, Gas Control & Transportation
    Services

Calpine Energy Services, L.P.

By: _____

Print Name: _Paul Posoli_____

Title: _Senior Vice President_____

1ˢᵗ Revision

Revised _____

F-08429

## FIRST REVISED EXHIBIT A

### TO THE TRANSPORTATION AGREEMENT
Dated 6th day of August, 2002
Between

## PG&E GAS TRANSMISSION, NORTHWEST CORPORATION
And
## CALPINE ENERGY SERVICES, L.P.

| Receipt Point(1) | Delivery Point(1) | Maximum Daily Quantity (MDQ) (Dth/day)(2) |
|---|---|---|
| Kingsgate, B.C. | Malin, Oregon | 25,000 |

(1)   Pursuant to paragraph 29 of PG&E GTN's Transportation General Terms and Conditions, Shipper may designate other receipt and delivery points as "secondary receipt" and "secondary delivery" points.

(2)   Shipper's Maximum Daily Quantity or MDQ for service under this Agreement, shall be based on the quantity of gas delivered at Shipper's point(s) of delivery as stated in this Exhibit A.

(3)   The term for such capacity is from November 1, 2003 through October 31, 2028.

1st Revision
Revised _____

# **<u>Exhibit D</u>**



## GUARANTEE

This GUARANTEE dated as of January 22, 2002 is made by Calpine Corporation, a Delaware corporation ("Guarantor"), for the benefit of PG&E Gas Transmission, Northwest Corporation, a California corporation ("PG&E GT –NW").

WHEREAS, PG&E GT-NW and Calpine Fuels Corporation, a California corporation, and/or Calpine Energy Services, L.P., a Delaware limited partnership, each a subsidiary of Guarantor, (collectively, "Shipper"), have entered or expect to enter into one or more Gas Transportation Agreements and/or an Authorized Imbalance Service Agreement (collectively, the "Agreements") providing for the transportation of natural gas and/or hub services on PG&E GT-NW's facilities.

NOW, THEREFORE, as an inducement to PG&E GT-NW to enter into the Agreements with Shipper and to transport gas for Shipper, Guarantor agrees as follows:

1. <u>Guarantee.</u>  Guarantor unconditionally guarantees to PG&E GT-NW the prompt and complete payment and performance when due, by acceleration or otherwise, of all amounts payable by and all covenants and obligations of Shipper under the Agreements and any amendments thereto (collectively, the "Obligations"). This is a guarantee of payment and not of collection. If Shipper fails to pay or perform any Obligation for any reason, Guarantor will pay or cause to be performed such Obligation directly for PG&E GT-NW's benefit promptly upon PG&E GT-NW's demand therefor and without PG&E GT-NW having to make prior demand on Shipper. All payments hereunder shall be made without setoff or counterclaim except to the extent of any defenses to payment which Shipper may have under the Agreements. Guarantor's obligations under this Guarantee shall terminate upon the later of (1) written confirmation by PG&E GT-NW, addressed to the Guarantor, pursuant to a written request by the Guarantor, stating that all Obligations have been paid or performed; or (2) sixty (60) days after expiration of all Agreements; or (3) September 30, 2003, provided that nothing in this paragraph shall diminish the Guarantor's obligations as stated in Paragraph 2 hereof.

2. <u>Guarantor's Obligations.</u>  Guarantor's obligations under this Guarantee are absolute and unconditional, shall remain in force until all Obligations have been paid or performed, and shall not be released or discharged for any reason whatsoever, including without limitation; (i) PG&E GT-NW's waiver of Shipper's performance of any Obligation or Shipper's default under the Agreements; (ii) the extension of time for payment or performance of any Obligation or the amendment, extension or renewal of the Agreements or any Obligation; (iii) any delay or failure by PG&E GT-NW to enforce or exercise any right or remedy under the Agreements, or waiver by PG&E GT-NW of any such right or remedy; (iv) any transfer, assignment or mortgaging by Shipper or PG&E GT-NW of any interest in the Agreements or this Guarantee; (v) the release or discharge of Shipper from the performance or observance of any Obligation by operation of law or otherwise; (vi) the voluntary or involuntary liquidation, dissolution, sale or other disposition of all or substantially all the assets and liabilities, or the voluntary or involuntary receivership, insolvency, bankruptcy, assignment for the benefit of creditors,

reorganization, or other similar proceeding affecting Shipper, or the disaffirmance of the Agreements in any such proceeding; (vii) any merger, consolidation or other reorganization to which Shipper, Guarantor or any related entity is a party, or any direct or indirect sale or disposition of Guarantor's or Shipper's assets or Guarantor's direct or indirect ownership interest in Shipper; or (viii) the release, acceptance or disposal of any collateral by PG&E GT-NW for any of the Obligations. Guarantor is aware of and consents to the terms of the Agreements and agrees that the Agreements may be amended by PG&E GT-NW and Shipper without notice to or consent of Guarantor and that Guarantors obligations hereunder shall continue in force with respect to the Agreements as so amended.

3. <u>Assignment by Guarantor.</u> Guarantor's Obligations under this Guarantee shall be released and discharged upon the transfer or assignment by Shipper of the Agreements or any rights under the Agreements, provided PG&E GT-NW consents to such transfer or assignment, which consent shall not be unreasonably withheld or delayed. Guarantor may not assign this Guarantee or its Obligations thereunder without the prior written consent of PG&E GT-NW, which consent shall not be unreasonably withheld or delayed.

4. <u>Waiver by Guarantor.</u> Guarantor waives "notice of the acceptance of this Guarantee, demand or presentment for payment to Shipper or the making of any protest, notice of the amount of the Obligations outstanding at any time, notice of nonpayment or failure to perform on the part of the Shipper, notice of any amendment, modification or waiver of or under the Agreements, and all other notices or demands not specifically required hereunder. PG&E GT-NW shall not be required to make demand on or file suit against Shipper or any other party for any Obligation to attempt to collect any Obligation from Shipper or any other party, to foreclose against any security now or hereafter existing for the Obligations, or to exercise or exhaust any other right or remedy to which PG&E GT-NW may be entitled prior to enforcing this Guarantee. Guarantor waives any rights under California Civil Code Sections 2848 and 2849 or otherwise to succeed to or enforce any rights which PG&E GT-NW may have with respect to Shipper or to any collateral which PG&E GT-NW may have to secure performance of the Obligations. Until all Obligations shall have been paid and performed in full, Guarantor shall not claim or enforce any right of subrogation, reimbursement, indemnity or any similar right against Shipper on account of any payment or action by Guarantor under this Guarantee. Guarantor waives all defenses based on any loss or deferral of such rights. Guarantor also acknowledges that it is able to and will keep itself fully informed of Shipper's financial condition and waives any obligation of PG&E GT-NW to inform Guarantor of any matter relating thereto.

5. <u>Representations and Warranties.</u> Guarantor hereby represents and warrants that (i) it is a corporation duly organized, validly existing and in good standing under the laws of the jurisdiction of its incorporation, (ii) the execution, delivery and performance by Guarantor of this Guarantee are within its corporate powers, have been duly authorized by all necessary corporate action and do not violate Guarantor's charter or by-laws or any law, order or contractual restriction binding on Guarantor, (iii) no consents of or filings with any governmental authority or any other person are required for the execution,

delivery, performance or enforceability of this Guarantee, except those which have been duly obtained or made, and (iv) this Guarantee has been duly authorized, executed and delivered by Guarantor and constitutes its legal, valid and binding obligation, enforceable against it in accordance with its terms (except as enforceability may be limited by bankruptcy, insolvency, moratorium and other similar laws affecting enforcement of creditors' rights in general and general principles of equity).

6. <u>Miscellaneous.</u>  No provision of this Guarantee may be amended or waived except by a written instrument executed by Guarantor and PG&E GT-NW. This Guarantee shall bind and benefit the successors and assigns of Guarantor and PG&E GT-NW, but Guarantor may not assign its obligations hereunder without the prior written consent of PG&E GT-NW. This Guarantee shall not be deemed to benefit any person except PG&E GT-NW and its successors and assigns (including any holder of a collateral security interest in PG&E GT-NW's rights under this Guarantee). Guarantor shall be liable for all reasonable legal fees and other costs and expenses incurred by PG&E GT-NW in enforcing this Guarantee. This Guarantee shall be governed by the laws of the State of California.

This guaranty replaces and supercedes the guaranty dated September 20, 1999 made by Calpine Corporation for the benefit of PG&E GT-NW.

IN WITNESS WHEREOF, Guarantor has executed this Guarantee as of the date first above written.

Calpine Corporation
Guarantor

By: _____
Name: Ann B. Curtis
Title:  Executive Vice President

3