FORM B10 (Official Form 10) (10/05)

| UNITED STATES BANKRUPTCY COURT Southern DISTRICT OF New York | PROOF OF CLAIM |
|---|---|

| Name of Debtor: Calpine Corporation | Case Number: 05-60200 |
|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

Name of Creditor (The person or other entity to whom the debtor owes money or property):
Portland Natural Gas Transmission System

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

Name and address where notices should be sent:
c/o David W. Elrod and Craig Tadlock, Elrod, PLLC
500 N. Akard St., Suite 3000, Dallas, TX 75201
Telephone number: 214-855-5188

☐ Check box if you have never received any notices from the bankruptcy court in this case.

☒ Check box if the address differs from the address on the envelope sent to you by the court.

COPY
RECEIVED
AUG 1 1 2006
KURTZMAN CARSON
THIS SPACE IS FOR COURT USE ONLY

Last four digits of account or other number by which creditor identifies debtor:

Check here ☐ replaces
if this claim ☐ amends a previously filed claim, dated: _____

1. **Basis for Claim**
   ☐ Goods sold
   ☐ Services performed
   ☐ Money loaned
   ☐ Personal injury/wrongful death
   ☐ Taxes
   ☒ Other — See Exhibit A

   ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
   ☐ Wages, salaries, and compensation (fill out below)
   Last four digits of your SS #: _____
   Unpaid compensation for services performed
   from _____ to _____
   (date)           (date)

2. **Date debt was incurred:**
   See Exhibit A

3. **If court judgment, date obtained:**
   N/A

4. **Classification of Claim.** Check the appropriate box or boxes that best describe your claim and state the amount of the claim at the time case filed. See reverse side for important explanations.

   Unsecured Nonpriority Claim $ See Exhibit A
   ☒ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

   **Unsecured Priority Claim**
   ☐ Check this box if you have an unsecured claim, all or part of which is entitled to priority.
   Amount entitled to priority $ _____

   Specify the priority of the claim:
   ☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B)
   ☐ Wages, salaries, or commissions (up to $10,000),* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
   ☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

   **Secured Claim**
   ☒ Check this box if your claim is secured by collateral (including a right of setoff).
   Brief Description of Collateral:
   ☐ Real Estate   ☐ Motor Vehicle   ☒ Other See Exhibit A
   Value of Collateral: $ See Exhibit A
   Amount of arrearage and other charges at time case filed included in secured claim, if any: $ _____

   ☐ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
   ☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
   ☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(___).
   *Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

5. **Total Amount of Claim at Time Case Filed:** $ See Exhibit A
   (unsecured)   (secured)   (priority)   (Total)
   ☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

6. **Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

7. **Supporting Documents:** Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

8. **Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY
RECEIVED
[AUG 1 1] 2006
CLAIMS PROCESSING CENTER
USBC, SDNY

Date: 7/26/06

Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):
[signature]
Ken Nichols, Director, Credit and Risk Management

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

# Exhibit A

## Exhibit A

### to Proofs of Claim of Portland Natural Gas Transmission System ("PNGTS") asserted against Calpine Corporation and various subsidiaries thereof

PNGTS's claims are based on the Gas Transportation Contract for Firm Transportation Service Between Portland Natural Gas Transmission System and Rumford Power Associates Limited Partnership, dated February 12, 1998 (the "Contract"). PNGTS asserts (a) a claim for pre-petition debt; (b) claims for damages as a result of the Debtors' failure to perform under the Contract post-petition; and (c) contingent claims for rejection damages under the Contract. All claims are asserted against Calpine Corporation and various subsidiaries thereof, as set forth below. A summary of PNGTS's claims is attached as Exhibit B. A copy of the Contract, as amended, is attached as Exhibit C. Other supporting evidence for these proofs of claim, including additional documents, is summarized herein.

The total principal amount of PNGTS's claims, as set forth on Exhibit B, is $201,587,006. The principal amount of PNGTS's claim for pre-petition debt is $1,873,396. The principal amount of PNGTS's claims for Debtors' failure to perform under the Contract post-petition, to date, is $5,581,650. At this time, PNGTS's contingent claims for rejection damages are $194,131,960 (gross value; subject to discounting to present value and reduction by potential mitigation, if any).

In filing these proofs of claim, PNGTS reserves all of its rights, including without limitation: (a) its positions regarding jurisdictional issues with respect to the Contract and its potential rejection; (b) its right to assert that some or all of its claims are entitled to administrative priority; (c) its rights to draw down and apply assurances; (d) its rights of setoff; (e) its positions as to the inappropriateness and invalidity of the Debtors' purported "repudiation" of the Contract; (f) its rights to assert claims for interest on the amounts stated in these proofs of claim, if applicable; (g) its rights to assert claims for attorney's fees; (h) its rights to assert claims for the costs of efforts to mitigate its damages; (i) its rights to amend and/or supplement these proofs of claim at any time and in any manner; (j) its rights to file additional proofs of claim for additional claims; (k) its rights to attach or bring forth additional documents supporting its claims and additional documents that may become available after further investigation and discovery; (l) its rights to file proofs of claim against additional debtor entities; (m) its rights to assert claims against non-debtor Calpine-affiliated entities; and (n) its rights to assert claims against non-debtor entities that are not affiliated with Calpine.

In addition, PNGTS is continuing to investigate matters related to its claims. These proofs of claim are protective in nature and are filed to protect PNGTS from potential forfeiture of any of its rights against the Debtors. The filing of these proofs of claim shall not constitute: (a) a waiver or release of the rights of PNGTS against the Debtors or any other person or property; (b) a waiver of PNGTS to contest the jurisdiction of this Court with respect to the subject matter of PNGTS's claims, any objection or other proceeding commenced with respect thereto or otherwise involving PNGTS; or (c) an election of remedies or choice of law.

**Debtors Against Which PNGTS Claims Are Asserted**

PNGTS asserts its claims against the following debtor entities:

| | |
|---|---|
| Calpine Corporation | 05-60200 |
| Calpine Power Company | 05-60202 |
| Calpine Rumford, Inc. | 05-60414 |
| Calpine Rumford I, Inc. | 05-60327 |
| Rumford Power Associates Limited Partnership | 05-60467 |
| Calpine Energy Services Holdings, Inc. | 05-60208 |
| CPN Energy Services GP, Inc. | 05-60209 |
| CPN Energy Services LP, Inc. | 05-60210 |
| Calpine Energy Services, L.P. | 05-60222 |
| Androscoggin Energy, Inc. | 05-60239 |
| Calpine Northbrook Corporation of Maine, Inc. | 05-60409 |

PNGTS asserts its claims directly against the counterparty to the Contract, Rumford Power Associates Limited Partnership ("Rumford Power").

PNGTS also asserts its claims against Calpine Corporation and the other debtor entities listed above, based upon Calpine Corporation's operation of its own business and that of its subsidiaries and affiliates as an integrated enterprise, as repeatedly referenced by Calpine Corporation publicly and in its counsel's representations to this Court. PNGTS reserves the right to assert its claims against additional debtor entities based on Calpine's operation of its business as an integrated enterprise.

PNGTS also asserts its claims against Calpine Corporation and the other debtor entities listed above based on a single business enterprise theory as between Rumford Power and one or more of the debtor entities. PNGTS also asserts its claims directly against Calpine Corporation and the other debtor entities listed above.

PNGTS also asserts its claims against Calpine Rumford, Inc., Calpine Rumford I, Inc., Calpine Power Comapny ("CPC"), and Calpine Corporation based on actual use of the capacity under the Contract for the direct benefit of Rumford Power. Calpine Rumford, Inc., is the general partner of Rumford Power, holding a 2% ownership interest in Rumford Power. Calpine Rumford I, Inc. is the sole limited partner of Rumford Power, holding a 98% ownership interest in Rumford Power. CPC is the direct 100% owner of Calpine Rumford, Inc., and Calpine Rumford I, Inc. Calpine Corporation is the direct 100% owner of CPC. Calpine Rumford, Inc., Calpine Rumford I, Inc., CPC, and Calpine Corporation all benefited from the use of the capacity under the Contract by Rumford Power.

PNGTS also asserts its claims against Calpine Energy Services, L.P. ("CES"), CPN Energy Services GP, Inc. ("CES-GP"), CPN Energy Services LP, Inc. ("CES-LP"), Calpine Energy Services Holdings, Inc. ("CESH"), and Calpine Corporation, based on CES's actual use of the capacity under the Contract, payment for the capacity under the Contract, and management

of the capacity under the Contract, particularly its direction of the capacity for the benefit of Calpine facilities other than Rumford Power and for trading purposes for the benefit of Calpine entities other than Rumford Power. CES-GP is the general partner of CES, holding a 1% ownership interest in CES. CES-LP is the sole limited partner of CES, holding a 99% ownership interest in CES. CESH is the direct 100% owner of CES-GP and CES-LP. Calpine Corporation is the direct 100% owner of CESH. CES, CES-GP, CES-LP, CESH, and Calpine Corporation all benefited from the use, payment and management of the capacity under the Contract by CES.

PNGTS also asserts its claims against Androscoggin Energy, Inc. ("AEI"), Calpine Northbrook Corporation of Maine, Inc. ("CNC"), and Calpine Corporation based on actual use of the capacity under the Contract for the direct benefit of Androscoggin Energy, LLC ("AELLC"). AEI and CNC were members of AELLC during the relevant time period, each owning a 16.165% interest, and Calpine Corporation is the direct 100% owner of AEI and CNC. In addition, CNC was the managing member of AELLC and acted at the direction of Calpine Corporation in managing AELLC. AEI, CNC, and Calpine Corporation all benefited from the use of the capacity under the Contract by AELLC.

PNGTS also asserts claims against CPC and Calpine Corporation based on actual use of the capacity under the Contract to deliver gas to fire Calpine's Westbrook Energy Center. PNGTS may also assert claims against non-debtor entities that are subsidiaries of Calpine Corporation based on actual use of the capacity under the Contract to deliver gas to fire the Westbrook facility – Calpine Construction Finance Company, L.P. ("CCFC"), Calpine CCFC GP, Inc. ("CCFC-GP"), Calpine CCFC LP, Inc. ("CCFC-LP"), CCFC Preferred Holdings, LLC ("CCFC-PH"), CCFC Preferred Holdings 2, LLC ("CCFC-PH2"), and Calpine CCFC Holdings, Inc. ("CCFC-H"). On information and belief, CCFC owns the Westbrook facility. CCFC-GP is the general partner of CCFC, holding a 1% ownership interest. CCFC-LP is the sole limited partner of CCFC, holding a 99% ownership interest. CCFC-PH is the direct 100% owner of CCFC-GP and CCFC-LP. CCFC-PH2 is the direct 100% owner of CCFC-PH. CCFC-H is the direct 100% owner of CCFC-PH2. CPC is the direct 100% owner of CCFC-H. Calpine Corporation is the direct 100% owner of CPC. CCFC, CCFC-GP, CCFC-LP, CCFC-PH, CCFC-PH2, CCFC-H, CPC, and Calpine Corporation all benefited from the use of the capacity under the Contract to deliver gas to fire the Westbrook facility.

PNGTS also asserts its claims against Rumford Power, Calpine Corporation, and potentially other debtor entities unknown at this time based on the December 2000 sale-leaseback transaction involving Rumford Power. The December 2000 sale-leaseback transaction stripped Rumford Power of a substantial portion of its assets, including divesting Rumford Power of its ownership interest in the Rumford facility and transferring out of Rumford Power substantial interests in the land underlying the Rumford facility.

PNGTS has not had the ability to take any discovery to date on its claims; accordingly, PNGTS reserves the right to assert its claims against additional debtor entities.

### Item 1 – Basis for Claim

As noted above, PNGTS asserts a claim for pre-petition debt, claims for damages as a result of Debtors'.failure to perform under the Contract post-petition, and contingent claims for rejection damages under the Contract, and any and all claims, rights and/or remedies that PNGTS may have, including without limitation, claims for setoff, indemnification, contribution, rescission, breach of contract, breach of implied contract or quasi-contract, unjust enrichment, recovery in quantum meruit, agency liability, aiding and abetting in the breach of fiduciary duties, piercing the corporate veil, alter ego liability, single business enterprise liability, fraud, specific performance, misrepresentation, reimbursement, restitution, subrogation, interest, attorney's fees, and/or costs of efforts to mitigate its damages, related to or arising from transactions by or among or involving PNGTS, the Debtors and/or any of their respective affiliates, successors, predecessors or assigns, arising as a matter of law or equity.

The Debtors have not assumed or rejected the Contract or obtained the requisite authority of the Federal Energy Regulatory Commission ("FERC") to do so. If the Debtors assume the Contract, then the Debtors would be required to cure any outstanding defaults and assume all going-forward liabilities associated with the Contract. Such liabilities would then constitute post-petition obligations of the Debtors, rather than pre-petition damage claims. Accordingly, pending assumption or rejection of the Contract, the type and full extent of the claims made herein cannot be determined. PNGTS reserves its rights to amend any of the claims set forth herein.

### Item 2 – Date Debt Was Incurred

PNGTS's claim for pre-petition debt was incurred for services rendered from November 1, 2005, through December 20, 2005.

PNGTS's post-petition claims for Debtors' failure to perform under the Contract were incurred for services beginning March 1, 2006, and, to date, running through July 31, 2006. These claims will continue to increase (and PNGTS's contingent claims for rejection damages will likewise decrease) until the Contract is properly assumed or rejected. PNGTS reserves the right to assert that these claims are entitled to administrative priority.

At this time, PNGTS's contingent claims for rejection damages are for services beginning August 1, 2006, and running through the end of the term of the Contract, October 31, 2020. These claims will decrease (and PNGTS's post-petition claims for Debtors failure to perform under the Contract will likewise increase) until the Contract is properly assumed or rejected.

### Item 4 – Classification of Claim

PNGTS's claims are secured to the extent of $3,412,750 of cash collateral in escrow.

In addition, PNGTS holds 20,883 Dth of natural gas under its Operational Balancing Agreement with Rumford Power, over which PNGTS asserts a right of setoff against its claims.

The balance of PNGTS's claims is unsecured. To the extent PNGTS may have any additional setoff, counterclaim or credit, these amounts are undetermined at this time. To the extent that any portion of PNGTS's claims are entitled to administrative priority status under Sections 503 and 507 of the Bankruptcy Code, PNGTS claims such priority status in the maximum amount allowed by law. The filing of these proofs of claim shall in no way be deemed a waiver of PNGTS's rights to assert that any or all of the amounts owed under the Contract are entitled to administrative priority status.

### Item 5 – Total Amount of Claim at Time Case Filed

The total principal amount of PNGTS's claims, as set forth on Exhibit B, is $201,587,006. The principal amount of PNGTS's claim for pre-petition debt is $1,873,396. The principal amount of PNGTS's claims for Debtors' failure to perform under the Contract post-petition, to date, is $5,581,650. At this time, PNGTS's contingent claims for rejection damages are $194,131,960 (gross value; subject to discounting to present value and reduction by potential mitigation, if any).

In addition, PNGTS reserves the right to assert any and all contingent unliquidated and/or undetermined claims under the Contract, including without limitation, claims identified in Item 1 above.

### Item 6 – Credits

See Item 4 above.

### Item 7 – Supporting Documents

PNGTS believes that the Debtors have copies of all documents supporting these proofs of claim not attached hereto, and such documents are summarized herein. Additional copies or copies of any other relevant materials in the possession, custody or control of PNGTS will be provided upon request.