Firm Gas Transportation Contract

22. This Contract shall be effective as of the date first herein above written, and shall continue in force and effect for an initial term of twenty (20) Years from the Commencement Date; provided, however, that Transporter shall have no liability under this Contract and shall be under no obligation to receive or to deliver any quantities of Gas hereunder prior to the Commencement Date.

23. After expiration of the initial term, this Contract shall continue in force and effect Year to Year thereafter unless terminated by either Party upon twenty-four (24) Months prior written notice to the other; provided, however, that if the FERC authorizes Transporter to abandon service to Shipper on an earlier date, this Contract shall terminate as of such earlier date.

24. The termination of this Contract by expiration of fixed Contract term or by termination notice provided by Shipper triggers pregranted abandonment under Section 7 of the Natural Gas Act as of the effective date of the termination.

25. Any provision of this Contract necessary to correct or cash-out imbalances or to make payment under this Contract as required by the FERC Tariff will survive the other parts of this Contract until such time as such balancing or payment has been accomplished.

**ARTICLE IX - NOTICES**

26. Except as herein otherwise provided, any written statement, notice and/or request provided for in this Contract or any notice which either Party may desire to give to the other shall be in writing and mailed by registered or certified mail or sent by a nationally recognized overnight courier service to the post office address of the Party intended to receive the same, as the case may be, as follows:

    Notices to Transporter shall be addressed to:

        Portland Natural Gas Transmission System
        30 Monument Square
        Concord, MA 01742
        Phone: (508) 371-5656
        Fax: (508) 371-9999

    Notices to Shipper shall be addressed to:

        Rumford Power Associates Limited Partnership
        One Energy Road
        North Dartmouth, MA 02747
        Phone: (508) 998-8515
        Fax: (508) 998-7478

Either Party may change its address under this Article by written notice to the other Party.

7



Firm Gas Transportation Contract

## ARTICLE X - TRANSFER AND ASSIGNMENT OF CONTRACT

27. Any entity which shall succeed by purchase, merger or consolidation to the properties, substantially as an entirety, of either Transporter or Shipper, as the case may be, shall be entitled to the rights and shall be subject to the obligations of its predecessor in title under this Contract. Either Party may, without relieving itself of its obligations under this Contract, assign any of its rights hereunder to an entity with which it is affiliated, but otherwise no assignment of this Contract or of any of the rights or obligations hereunder shall be made unless there first shall have been obtained the written consent thereto of Shipper in the event of an assignment by Transporter, or Transporter in the event of an assignment by Shipper, which consents shall not be unreasonably withheld. It is agreed, however, that the restrictions on assignment contained in this Article X shall not in any way prevent either Party to this Contract from pledging or mortgaging its rights hereunder as security for its indebtedness.

28. Shipper acknowledges that Transporter intends to make a collateral assignment of this Contract to financial institutions (collectively, the "Transporter's Lenders") in connection with a Financing Agreement and agrees that if the Transporter's Lenders succeed to the interest of Transporter by foreclosure or otherwise Shipper shall accord the Transporter's Lenders the same rights as Transporter hereunder.

29. In order to facilitate obtaining financing or refinancing for the System, Shipper shall execute such consents, agreements or similar documents with respect to a collateral assignment hereof to the Transporter's Lenders, and any credit support documents, and shall deliver an opinion of counsel on behalf of Shipper and any provider of credit support, as Transporter's Lenders may reasonably request in connection with the documentation of the financing or refinancing for the System, which consent and opinion shall, among other things warrant or opine the enforceability of this Contract and of any credit support documents under the applicable governing law(s) and the compliance thereof with all applicable law.

30. Transporter acknowledges that Shipper intends to make a collateral assignment of this Contract to financial institutions (collectively, the "Shipper's Lenders") in connection with a Financing Agreement and agrees that if the Shipper's Lenders succeed to the interest of Shipper by foreclosure or otherwise Transporter shall accord the Shipper's Lenders the same rights as Shipper hereunder; provided however, that Shipper's Lenders must demonstrate creditworthiness pursuant to the provisions of Transporter's pro forma FERC Tariff or FERC Tariff, as applicable, and must assume all of Shippers obligations under this Contract including all past due obligations.

31. In order to facilitate obtaining financing or refinancing for the Rumford Station, Transporter shall execute such consents, agreements or similar documents with respect to a collateral assignment hereof to the Shipper's Lenders, and any credit support documents, and shall deliver an opinion of counsel on behalf of Transporter and any provider of credit support, as Shipper's Lenders may reasonably request in connection with the documentation of the financing or refinancing for the Rumford Station, which consent and opinion shall, among other things warrant or opine the

enforceability of this Contract and of any credit support documents under the applicable governing law(s) and the compliance thereof with all applicable law.

## ARTICLE XI - NONRECOURSE OBLIGATION OF PARTNERSHIP AND OPERATOR

32. Shipper acknowledges and agrees that: (a) Transporter is a Maine general partnership; (b) Shipper shall have no recourse against any partner in Transporter with respect to Transporter's obligations under this Contract and that Shipper's sole recourse shall be against the partnership assets, irrespective of any failure to comply with applicable law or any provision of this Contract; (c) no claim shall be made against any partner under or in connection with this Contract; (d) Shipper shall have no right of subrogation to any claim of Transporter for any capital contributions from any partner to Transporter; (e) no claims shall be made against the Operator, its officers, employees, and agents, under or in connection with this Contract and the performance of Operator's duties as Operator (provided that this shall not bar claims resulting from the gross negligence or willful misconduct of Operator, its officers, employees or agents) and Shipper shall provide Operator with a waiver of subrogation of Shipper's insurance company for all such claims; and (f) this representation is made expressly for the benefit of the partners in Transporter and Operator.

33. Transporter acknowledges and agrees that: (a) Shipper is a Maine limited partnership; (b) Transporter shall have no recourse against any partner in Shipper with respect to Shipper's obligations under this Contract and that Transporter's sole recourse shall be against the partnership assets, irrespective of any failure to comply with applicable law or any provision of this Contract; (c) no claim shall be made against any partner under or in connection with this Contract; (d) Transporter shall have no right of subrogation to any claim of Shipper for any capital contributions from any partner to Shipper; (e) Rumford Operator shall mean an entity other than Shipper, which has been designated by Shipper to operate the Rumford Station; (f) no claims shall be made against the Rumford Operator, its officers, employees, and agents, under or in connection with this Contract and the performance of the Rumford Operator's duties as Rumford Operator (provided that this shall not bar claims resulting from the gross negligence or willful misconduct of Rumford Operator, its officers, employees or agents) and Transporter shall provide Rumford Operator with a waiver of subrogation of Transporter's insurance company for all such claims; and (f) this representation is made expressly for the benefit of the partners in Shipper.

## ARTICLE XII - LAW OF CONTRACT

34. Notwithstanding conflict-of-laws rules, the interpretation and performance of this Contract shall be in accordance with and controlled by the laws of the State of Maine.

## ARTICLE XIII - CHANGE IN TARIFF PROVISIONS

35. Shipper agrees that Transporter shall have the unilateral right to file with the Federal Energy Regulatory Commission or any successor regulatory authority any changes in any of the provisions of its Tariff, including of any of its Rate Schedules, or the General Terms and Conditions,

**Firm Gas Transportation Contract**

as Transporter may deem necessary, and to make such changes effective at such times as Transporter desires and is possible under applicable law. Nothing herein contained shall be construed to deny Shipper any rights it may have under the Natural Gas Act, as amended, including the right to participate fully in rate proceedings by intervention or otherwise to contest increased rates in whole or in part. Subject to the provisions of this Article XIII, no modification of this Contract shall be made except by both Parties pursuant to a written agreement.

Firm Gas Transportation Contract

## ARTICLE XIV - DEFAULT AND REMEDIES

36. If either Party defaults under this Contract after the Commencement Date, the other Party shall have available all remedies under the law.

## ARTICLE XV - MISCELLANEOUS

37. This Contract, including the FERC Tariff and Rate Schedules FT, reflects the whole and entire agreement among the Parties with respect to the subject matter hereof and supersedes all prior agreements and understandings among the Parties with respect to the subject matter hereof.

IN WITNESS WHEREOF, the Parties hereto have caused this Contract to be duly executed in several counterparts by their proper officers thereunto duly authorized, as of the date first herein above written.

ATTEST: *[signature]*

PORTLAND NATURAL GAS TRANSMISSION SYSTEM

By *[signature]*

ATTEST: *[signature]*

RUMFORD POWER ASSOCIATES LIMITED PARTNERSHIP
By: EMI/Rumford Inc., its General Partner

By: *[signature]*
James S. Gordon,
President, EMI/Rumford, Inc.

11

Firm Gas Transportation Contract

## SCHEDULE 1

| | |
|---|---|
| Receipt Point: | Pittsburg, New Hampshire |
| Maximum Daily Quantity: | 46,000 MMBtu/day |
| Minimum Delivery Pressure: | Transporter's line pressure as may exist from time to time |
| Maximum Contract Demand: | 46,000 MMBtu/day |

12

Firm Gas Transportation Contract

13

Firm Gas Transportation Contract

## SCHEDULE 2

| | |
|---|---|
| Delivery Point: | Rumford Station, Rumford, Maine |
| Maximum Daily Quantity: | 46,000 MMBtu/day |
| Minimum Delivery Pressure: | 450 psig |
| Maximum Contract Demand: | 46,000 MMBtu/day |

14

AMENDMENT NO. 1 TO GAS TRANSPORTATION CONTRACT
FOR FIRM TRANSPORTATION SERVICE
BETWEEN
PORTLAND NATURAL GAS TRANSMISSION SYSTEM
AND RUMFORD POWER ASSOCIATES LIMITED PARTNERSHIP

This Amendment No. 1 is hereby made to the Gas Transportation Contract for Firm Transportation Service ("FT Service Contract") between Portland Natural Gas Transmission System ("Transporter") and Rumford Power Associates Limited Partnership ("Shipper") dated the 12th Day of February 1998 pursuant to the following recitals and representations:

WHEREAS, on October 1, 2001 Transporter filed with the Federal Energy Regulatory Commission ("FERC"), in Docket No. RP02-13-000, revised rates pursuant to Section 4 of the Natural Gas Act, proposing to increase Transporter's rates for, among other things, service under Shipper's FT Service Contract; and

WHEREAS, Article VI of Shipper's FT Service Contract contains a Most Favored Nations provision which provides that if Transporter discounts any mainline transportation services, Shipper will be entitled to a discount, as set forth in the FT Service Contract, on a per MMBtu or per Dth basis for all quantities contracted by Shipper under the FT Service Contract for the same period of time ("Discount Clause"); and

WHEREAS, Transporter's other FT shippers have similar Discount Clauses in their FT Service Contracts with Transporter; and

WHEREAS, Transporter, Shipper, and the other parties to Docket No. RP02-13-000 have agreed to certain principles of settlement ("Principles") to resolve all issues in Docket No. RP02-13-000, and those Principles will be memorialized in a formal Stipulation and Settlement Agreement ("Settlement"), which will be filed with the FERC for approval; and

WHEREAS, the Principles provide that Transporter's FT shippers will each execute a permanent amendment to their FT Service Contracts to reflect modifications to the Discount Clause of such contracts which will limit the applicability of such clauses, as set forth herein;

NOW THEREFORE, in consideration of the mutual covenants and agreements herein assumed, Transporter and Shipper agree as follows:

1. **Preconditions for Effectiveness.** This Amendment No. 1 will be effective only if and after: (1) it and like amendments have been executed by all shippers that are parties to FT Service Contracts with Discount Clauses as of the date the Settlement is filed with the FERC; and (2) the Settlement becomes effective either (a) as the result of a FERC order which approves the Settlement without modification and which has become final, or (b)

1

in the event the order approving the Settlement modifies the Settlement or does not become final, as the result of the ratification of the Settlement by Shipper, Transporter and all other shippers that are parties to FT Service Contracts with Discount Clauses.

2. **Modification to Discount Clause.** Transporter and Shipper agree that, upon the effectiveness of this Amendment No. 1, the Discount Clause contained in Article VI, paragraph 18, of the FT Service Contract between Shipper and Transporter is amended and restated in its entirety, for the remaining term of the FT Service Contract, as follows:

"If Transporter discounts the applicable Recourse Rate under Rate Schedule FT for service provided to a third party pursuant to an FT Service Contract with a primary term greater than 24 consecutive months, then Shipper will be entitled to a discount, as set forth below, on a per Dth basis for all quantities contracted by Shipper under this Contract for the same period of time. Provided, however, that such third-party transportation services which entitle Shipper to a discount hereunder shall not include any firm off-peak seasonal service, or any backhaul service north of Westbrook (defined as any service for which the Primary Receipt Point designated in the transportation contract is located (a) south of the Primary Delivery Point designated in the transportation contract and (b) at, or north of, the Westbrook, Maine interconnection). If Transporter so discounts during the months of November through March, Shipper will be offered an equivalent unit-rate discount during the same period of time for the receipt and delivery points designated by Shipper. If Transporter so discounts during the off-peak months of April through October, Shipper will be entitled to a discount equal to Shipper's Imputed Off-Peak Rate minus the unit rate provided to said third party, during the same period of time for the receipt and delivery points designated by Shipper. For purposes of this paragraph, the Imputed Off-Peak Rate (IOR) shall be computed as follows:

$$IOR = \frac{(AR \times 365) - (WR \times 151)}{214}$$

where AR is the 100 percent load factor Recourse Rate in effect for FT Service and WR is 1.9 x AR. The discount provision in this paragraph shall apply during the term of this Contract."

3. **Relationship to FT Service Contract.** Except as specified in this Amendment No. 1, all terms and provisions of Shipper's FT Service Contract will remain in effect without limitation or modification.

2

IN WITNESS WHEREOF, the Parties hereto have caused this Amendment No. 1 to be duly executed in several counterparts by their proper officers thereunto duly authorized, as of this 24th day of September 2002.
~~September~~ October

ATTEST:                RUMFORD POWER ASSOCIATES LIMITED PARTNERSHIP

_____        By _____


ATTEST:                PORTLAND NATURAL GAS TRANSMISSION SYSTEM

E.J. Mackee           By Richard H. Luhr

3