Hearing Date: October 24, 2007 at 10:00 a.m. (EST)
Response Deadline: October 10, 2007 at 5:00 p.m. (EST)

KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, NY 10022-4611
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Richard M. Cieri (RC 6062)
Marc Kieselstein (admitted *pro hac vice*)
David R. Seligman (admitted *pro hac vice*)
Edward O. Sassower (ES 5823)
Mark E. McKane (admitted *pro hac vice*)

Counsel for the Debtors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| Calpine Corporation, et al., | ) |
| | ) Case No. 05-60200 (BRL) |
| Debtors. | ) Jointly Administered |

**NOTICE OF DEBTORS' LIMITED OBJECTION TO GAS TRANSMISSION NORTHWEST CORPORATION'S CLAIM NOS. 4562, 5912, 5914, 5927, 5928 AND 5929, AND PORTLAND NATURAL GAS TRANSMISSION SYSTEM'S CLAIM NOS. 4769 AND 4773**

PLEASE TAKE NOTICE that at 10:00 a.m. (EST) on October 24, 2007, the above-captioned debtors and debtors in possession (the "Debtors"), by their counsel, shall appear before the Honorable Burton R. Lifland at the United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004-1408, Room 623 (the "Bankruptcy Court"), or as soon thereafter as counsel may be heard (the "Hearing"), and present Debtors' Limited Objection To Gas Transmission Northwest Corporation's Claim Nos. 4562, 5912, 5914, 5927, 5928 and 5929, and Portland Natural Gas Transmission System's Claim Nos. 4769 and 4773 (the "Objection").

PLEASE TAKE FURTHER NOTICE that the Hearing may be adjourned thereafter from time to time without further notice.

PLEASE TAKE FURTHER NOTICE that responses to the Objection, if any, must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court and shall be filed with the Bankruptcy Court electronically by registered users of the Bankruptcy Court's case filing system (the User's Manual for the Electronic Case Filing System can be found at http://www.nysb.uscourts.gov, the official website for the Bankruptcy Court) and, by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect or any other Windows-based word processing format (in either case, with a hard copy delivered directly to Chambers) and shall be served upon: (a) counsel to the Debtors, Kirkland & Ellis LLP, Citigroup Center, 153 East 53rd Street, New York, New York 10022, Attn.: Edward O. Sassower as well as Kirkland & Ellis LLP, Aon Center, 200 E. Randolph Street, Chicago, Illinois 60601, Attn: David Seligman and James J. Mazza Jr.; (b) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004, Attn.: Paul K. Schwartzberg; (c) counsel to the Unofficial Committee of First Lien Debtholders, Brown Rudnick Berlack Israels LLP, One Financial Center, Boston, Massachusetts 02111, Attn.: Steven B. Levine; (d) counsel to the Unofficial Committee of Second Lien Debtholders, Paul Weiss Rifkind Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019-6064, Attn.: Alan W. Kornberg, Andrew N. Rosenberg, Elizabeth R. McColm; (e) counsel to the Official Committee of Unsecured Creditors, Akin Gump Strauss Hauer & Feld LLP, 590 Madison Avenue, New York, New York 10022-2524, Attn.: Michael S. Stamer, Philip C. Dublin and Alexis Freeman; (f) counsel to the Debtors' postpetition lenders, Simpson Thacher & Bartlett LLP, 425 Lexington

Avenue, New York, New York 10017, Attn.: David Mack and Peter Pantaleo; (g) counsel to the Official Committee of Equity Security Holders, Fried Frank Harris Shriver & Jacobson LLP, One New York Plaza, New York, New York 10004, Attn.: Gary Kaplan; and (h) counsel to Gas Transmission Northwest Corporation and Portland Natural Gas Transmission System, Elrod PLLC, 500 N. Akard Street, Suite 3000, Dallas, Texas 75201, Attn.: David W. Elrod and Craig Tadlock, so as to be received no later than October 10, 2004 at 5:00 p.m. (EST).

Dated: September 21, 2007
       New York, New York

Respectfully submitted,

 /s/ Mark E. McKane
Richard M. Cieri (RC 6062)
Marc Kieselstein (admitted *pro hac vice*)
David R. Seligman (admitted *pro hac vice*)
Edward O. Sassower (ES 5823)
Mark E. McKane (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, New York  10022-4611
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Counsel for the Debtors

Hearing Date:  October 24, 2007 at 10:00 a.m. (EST)
Response Deadline:  October 10, 2007 at 5:00 p.m. (EST)

KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, NY 10022-4611
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
Richard M. Cieri (RC 6062)
Marc Kieselstein (admitted *pro hac vice*)
David R. Seligman (admitted *pro hac vice*)
Jeffrey S. Powell (admitted *pro hac vice*)
Mark E. McKane (admitted *pro hac vice*)

Counsel for the Debtors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Calpine Corporation, et al.,<br><br>                                   Debtors. | )<br>)<br>) Chapter 11<br>)<br>) Case No. 05-60200 (BRL)<br>) Jointly Administered<br>) |

**DEBTORS' LIMITED OBJECTION TO GAS TRANSMISSION NORTHWEST CORPORATION'S CLAIM NOS. 4562, 5912, 5914, 5927, 5928, AND 5929, AND PORTLAND NATURAL GAS TRANSMISSION SYSTEM'S CLAIM NOS. 4769 AND 4773**

Pursuant to 11 U.S.C. § 502 and Rule 3007 of the Federal Rules of Bankruptcy Procedure, Calpine Corporation ("Calpine") and its affiliated debtors and debtors in possession (collectively, the "Debtors") file this Limited Objection to the claims filed by Gas Transmission Northwest Corporation ("GTN") and Portland Natural Gas Transmission System ("PNGTS").

GTN and PNGTS are natural gas pipeline companies. They assert claims from the repudiation of nine long-term gas transportation agreements, and primarily seek damages for future unpaid pipeline capacity charges. GTN asserts claims of more than $525 million—the single largest set of contested claims remaining against the Debtors. PNGTS asserts claims of $202 million—the third largest, contested claims. These claims are grossly, and improperly,

overstated. An order granting this Limited Objection would reduce these claims by nearly $500 million.

Their claims for future damages must be calculated as follows: (1) the remaining term of the contract after repudiation is multiplied by the amount of capacity reserved and the contract rate for securing that firm capacity on the pipelines ("reservation rate"); (2) that amount must be reduced by mitigation of damages; and (3) that net amount must be reduced to present value by applying an appropriate discount rate.

GTN and PNGTS have improperly inflated their claims by nearly $500 million because they apply the wrong reservation rates, failed to mitigate their damages, and failed to discount the claims to present value. Applying proper reservation rates and discounting claims to present value are straightforward exercises, and can be resolved in advance of a confirmation hearing. Because mitigation is a more fact-intensive inquiry, the Debtors request that the Court bifurcate mitigation issues until after the confirmation hearing.

The Debtors object to these improperly inflated claims, and ask this Court to cap GTN's and PNGTS's claims at $231 million. The Debtors request that the Court sustain their Limited Objection for the following reasons:

*First*, GTN and PNGTS fail to discount their future damages claims back to present value. They acknowledge that future damages claims must be discounted; yet they fail to undertake this simple calculation. Application of the proper discount rate alone reduces their claims by over $200 million.

*Second*, GTN and PNGTS apply incorrect reservation rates in calculating their claims. A reservation rate is the rate that pipelines charge customers for securing firm capacity to transport natural gas. GTN improperly inflates its claims by more than $208 million by using a

2

reservation rate that was not in effect as of the petition date, has not been finally approved by the Federal Energy Regulatory Commission ("FERC"), and is inherently speculative because it will likely never receive final FERC approval. Likewise, PNGTS uses a speculative reservation rate that has not even been proposed to FERC and that is higher than the contract rate.

*Finally*, GTN and PNGTS have failed to mitigate their damages. Their contracts had between eight and 37 years remaining when the Debtors repudiated. Yet their claims suggest that they will have no ability to mitigate any of their damages for any portion of those years. This is improper and unsustainable. GTN and PNGTS will have ample opportunity to mitigate their damages, and are obligated as a matter of law to reduce their claims to reflect that mitigation.[1]

In sum, GTN's and PNGTS's combined claims of $727 million are improperly inflated by nearly $500 million. However, the Debtors must use the entire $727 million figure in their claims projections unless and until this Court limits their claims by ordering the application of a discount rate to future damages and ordering the application of proper reservation rates. Swift resolution of these two issues will provide clarity to those voting on the proposed Plan of Reorganization and greatly assist the Debtors in resolving similar unsecured claims.

## JURISDICTION

This Court has jurisdiction over the Limited Objection pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein

---

[1] Because the scope and value of mitigation opportunities are fact-intensive inquiries that require further discovery, the Debtors propose to bifurcate these proceedings and to address first the discount rate and reservation rate issues. The proposed bifurcation will provide maximum clarity to those entitled to vote on the Debtors' Plan before the voting deadline. Then, after the confirmation hearing, the Debtors will set a discovery and hearing schedule with GTN and PNGTS to address the mitigation issues.

3

are Sections 105 and 502 of title 11 of the United States Code, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 and Rule 3007 of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

### A.     The Debtors' Chapter 11 Filings and Schedules.

On December 20, 2005 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code.[2]  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

On April 16, 2006, the Debtors began filing schedules of liabilities, schedules of executory contracts and unexpired leases, and statements of financial affairs.  On April 26, 2006, this Court entered an Order Establishing a Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof [Docket No. 1348].  This order established August 1, 2006 as the bar date (the "Bar Date") for filing proofs of claim in these Chapter 11 Cases.  On or about May 15, 2006, the Debtors mailed notice of the Bar Date to more than 123,628 creditors and potential claimants.

On September 18, 2007, the Debtors filed their Second Amended Joint Plan of Reorganization (the "Plan"), which projects (under the most likely scenario with midpoint valuation and midpoint claims)—but does not guarantee—the full repayment of outstanding principal and accrued interest of general unsecured debt, including GTN's and PNGTS's claims.

---

[2]    Certain of the Debtors filed petitions for relief after the Petition Date.

4

B.  **The Debtors' Contracts With GTN And PNGTS.**

GTN and PNGTS are both subsidiaries of TransCanada Corp.  The Debtors had eight contracts with GTN and one contract with PNGTS.  See Exs. A-I.  The contracts provided firm gas transportation services for a set quantity of gas (ranging from 10,000 to 44,000 maximum daily quantity per day) for a stated term (ranging from 14 to 41 years):

| Contract Counterparty and No. | Date Signed | Termination Date | Quantity |
|---|---|---|---|
| GTN - 7357 | March 12, 2001 | October 31, 2023 | 15,000 Dth |
| GTN - 8096 | August 31, 2001 | November 30, 2042 | 35,800 Dth |
| GTN - 8115 | October 31, 2001 | October 31, 2023 | 19,438 Dth |
| GTN - 8155 | November 6, 2001 | October 31, 2023 | 10,000 Dth |
| GTN - 8158 | November 13, 2001 | October 31, 2023 | 21,348 Dth |
| GTN - 8194 | December 28, 2001 | October 31, 2015 | 10,000 Dth |
| GTN - 8428 | August 6, 2002 | October 31, 2028 | 25,000 Dth |
| GTN - 8429 | August 6, 2002 | October 31, 2028 | 25,000 Dth |
| PNGTS - 1998-001 | February 12, 1998 | October 31, 2020 | 44,000 MMBtu |

See Craig Chancellor's Sept. 21, 2007 Affidavit ("Chancellor Aff.") ¶¶ 4, 5.  Firm gas transportation services means the Debtors receive secure, uninterruptible service in exchange for paying a set reservation rate for the capacity, regardless of actual usage.  Id. ¶ 4.

C.  **The Debtors Repudiated The GTN And PNGTS Contracts.**

As part of their reorganization efforts, the Debtors determined that the contracts did not benefit the estates and repudiated them.  The Debtors repudiated three GTN contracts (numbers 7357, 8096, and 8429) and the PNGTS Contract in April 2006.[3]  Chancellor Aff. ¶ 6.  The Debtors repudiated the remaining five GTN contracts (numbers 8115, 8155, 8158, 8194, and 8428) in January 2007 when they stated in unequivocal terms that they would "no longer accept

---

[3] See Docket Nos. 1181 ("Objection to Motion of Gas Transmission Northwest, Portland Natural Gas Transmission System, and Transcanada Pipelines Limited to Enforce Stipulation and to Compel Debtors to Replenish Assurances Motion") and 1878 (Transcript of April 11, 2006 hearing).

service under the [contracts]" and "relinquish[ed] and release[ed] all rights to service or capacity under the Contracts." Id. ¶ 7.

### D. GTN And PNGTS Submit Grossly, And Improperly, Overstated Proofs Of Claim.

GTN and PNGTS have filed claims with the Bankruptcy Court for the Debtors' repudiation. GTN filed six nearly-identical proofs of claim—claim numbers 4562, 5912, 5914, 5927, 5928, and 5929— totaling $525,167,992. See Exs. J-O. PNGTS filed two identical proofs of claim—claim numbers 4769 and 4773— totaling $201,587,006.[4] See Exs. P, Q.

GTN and PNGTS overstate their claims by failing to discount their future damages claims to present value or reduce them to reflect any mitigation of damages. GTN and PNGTS acknowledge that they are obligated to do so, noting they are "subject to discounting to present value and reduction by potential mitigation, if any." See Ex. J at 1, 5; Ex. P at 1, 5.

GTN and PNGTS also overstate their claims by applying reservation rates higher than the final applicable rates approved by FERC. Chancellor Aff. ¶¶ 4, 9-10. GTN uses a $0.427193/Dth reservation rate from January 1, 2007 through the expiration of the contracts (the "Proposed Reservation Rate"), while the proper rate—the rate that was fully approved by FERC as of the Petition Date—is $0.254825/Dth (the "Actual Reservation Rate").[5] Id. ¶¶ 4, 9. GTN's asserted nominal claim value decreases by approximately $209 million when using the Actual

---

[4] Earlier in the bankruptcy proceedings, the Debtors and PNGTS resolved PNGTS's objection to certain settlement agreements related to the Rumford and Tiverton plants and PNGTS agreed to a maximum claim value of $174 million. Because the Debtors contend PNGTS's claim should be capped at $111 million, the $174 million maximum claim amount is not at issue. However, to the extent the Court values PNGTS's claim at more than $174 million, PNGTS cannot recover more than it agreed to in the Stipulation And Agreed Order Among Calpine Corporation, Rumford Power Associates Limited Partnership, The Official Committee Of Unsecured Creditors, And Portland Natural Gas Transmission System. See Docket Nos. 4814, 4899.

[5] In one contract at issue the tariff increase is from an Actual Reservation Rate of $0.13337/Dth to a Proposed Reservation Rate of $0.224172/Dth. For ease of discussion, the Debtors use the $0.254825/Dth and $0.427193/Dth rates in this Limited Objection. All damages calculations and analyses incorporated the $0.13337/Dth and $0.224172/Dth rates where appropriate.

6

Reservation Rate as opposed to the Proposed Reservation Rate. See Jared Yerian's September 20, 2007 Affidavit ("Yerian Aff.") ¶¶ 23, 24. Likewise, PNGTS uses a $0.85/MMBtu reservation rate from March 31, 2008 through the expiration of the contract even though the parties' settlement agreement—which was fully approved by FERC as of the Petition Date—provides for a reservation rate of $0.83/MMBtu. Chancellor Aff. ¶¶ 4, 10. These increased reservation rates account for more than $213 million of the asserted claim value ($209 million for GTN and $4 million for PNGTS). Yerian Aff. ¶¶ 23, 24.

    **E.  GTN Uses Proposed Reservation Rates From Its Pending FERC Rate Case.**

FERC accepts for filing the maximum reservation rates that pipelines like GTN or PNGTS may charge through a rate case. Chancellor Aff. ¶ 11. A rate case is a pipeline's proposal for new—typically higher—rates and conditions for service under section 4 of the Natural Gas Act. Id. GTN did not initiate its rate case until after the Petition Date. Id.. GTN is in the middle of a rate case and proposed an increased reservation rate in June 2006. Id. When GTN filed its claims, FERC had denied the Proposed Reservation Rates and suspended application of the Proposed Reservation Rates until January 2007. Id. ¶ 13. As such, FERC found that GTN's proposed tariff sheets were not "shown to be just and reasonable, and may be unjust, unreasonable, unduly discriminatory, or otherwise unlawful." Id.

As of this date, FERC has not granted GTN's Proposed Reservation Rates final approval so it remains "subject to refund." Id. ¶ 15. Thus, if FERC does not approve GTN's Proposed Reservation Rates in their entirety, GTN must refund, with interest, the difference between the final approved rates and its Proposed Reservation Rates to its customers. Id.

Importantly, it is unlikely that GTN's Proposed Reservation Rates will ever receive final approval. Id. ¶¶ 9-10. The Debtors have participated in several FERC pipeline rate cases in the last five years and, as the examples below show, the final rate was less than the proposed rate:

| Pipeline | Docket No. | Pre-Existing Rate per Dth | Proposed Rate per Dth | Approved Rate per Dth |
|---|---|---|---|---|
| Maritimes and Northeast Pipeline, L.L.C. | RP04-360 | $0.6950 | $1.0713 | $0.7800 |
| Transwestern Pipeline Company, LLC | RP06-614 | $0.3453 | $0.5735 | $0.3759 |
| Florida Gas Transmission Company | RP04-12 | $0.3687 | $0.4647 | $0.3855 |
| PNGTS | RP02-13 | $0.6270 | $1.5434 | $0.8500 |
| El Paso Natural Gas Company | RP05-422 | $0.3122 | $0.3419 | $0.3182 |
| Texas Gas Transmission, LLC | RP05-317 | $0.1289 | $0.1628 | $0.1495 |
| Northwest Pipeline Corporation | RP06-416 | $0.2776 | $0.4371 | $0.4367 |

In its recent rate case, PNGTS received only 25% of its proposed increase. In two other cases, the approved rate was actually lower than the pre-existing rate in effect at the time of the rate case. Id. ¶ 19.

FERC has recently extended all deadlines in GTN's rate case, creating further uncertainty regarding its Proposed Reservation Rates. Id. ¶ 16. FERC may not issue a final ruling on GTN's rate case until April 2008. Id.

## RELIEF REQUESTED

This Court should grant the Debtors' Limited Objection and order that GTN and PNGTS should receive no more than $231 million in claims.[6] By failing to apply the proper reservation rates and discount rates to reduce these claims to present value, GTN and PNGTS have overstated their claims by nearly $500 million.

The Debtors request that this Court consider the proper reservation rates and discount rate portions of this Limited Objection on October 24, 2007, and bifurcate and defer the issue of mitigation. Resolution of these core legal issues before the voting deadline will significantly reduce GTN's and PNGTS's claims, consume little of this Court's or the parties' resources, and

---

[6] The $231 million cap does not prevent GTN and PNGTS from recovering post-petition interest. The overall size of GTN's and PNGTS's claims will likely fall below the $231 million cap if the Court later orders GTN and PNGTS to reduce their claims for available mitigation of damages.

8

provide critical clarity to all stakeholders, including similarly situated unsecured creditors, as the Debtors move to exit chapter 11.

**ARGUMENT**

I.  **GTN AND PNGTS MUST DISCOUNT THEIR ASSERTED CLAIMS TO PRESENT VALUE.**

Damages claims based on a stream of future payments, such as the GTN and PNGTS claims, must be discounted to their present value. In re O.P.M. Leasing Services, Inc., 56 B.R. 678 (Bankr. S.D.N.Y. 1986); see also In re Chateaugay Corp., No. 94 CIV 1257, 1996 WL 346010, at *1 (S.D.N.Y. June 24, 1996) ("Discounting is most commonly applied in cases in which a plaintiff is awarded a lump sum for future income lost as a result of a defendant's conduct").

Courts discount to present value lump sum distributions for future payments because "money presently in hand is always more useful than staggered payments in the future." In re O.P.M. Leasing Services, Inc., 79 B.R. 161, 166 (S.D.N.Y. 1987). Further, "a full recovery [without discounting] would, in effect, overcompensate the claimants by the interest earning power of the money in their hands now." Id. Because GTN's and PNGTS's claims are based on monthly payments extending from eight to 37 years in the future, they must be discounted to present value.

  A. **This Court Should Discount GTN's And PNGTS's Claims Using The Debtors' Cost Of Unsecured Debt At The Time Of Contracting.**

In the last two years, two other bankruptcy courts have faced the *exact issue* of what discount rate should apply to claims for future damages by a gas pipeline when a debtor had terminated long-term gas transportation contracts. In re USGen New England, Inc., Case No. 03-30465(PM), 2007 WL 1074055 (Bankr. Md. Jan. 23, 2007); In re Mirant Corp., 332 B.R. 139, 159 (Bankr. N.D. Tex. 2005).

9

In both In re Mirant and In re USGen New England, the courts held that market-based risks of contracting with the debtor at the time the parties entered into the agreements should be used to determine the discount rate. See 2007 WL 1074055, at *8; 332 B.R. at 159. In Mirant, the court determined that the interest rates debtors paid for prepetition loans were a valid benchmark of the "riskiness" of contracting with the debtors. Id. at 158-59. In In re USGen New England, Inc., the court refined the Mirant analysis and looked to the debtors' credit facility at the time the contracts were entered. See 2007 WL 1074055 at *8. Both courts concluded that this approach properly valued the pipelines' claims because the claimant voluntarily undertook that risk when it contracted with the debtors. 2007 WL 1074055 at *8; 332 B.R. at 158-59.

The nearly perfect symmetry between the claims here and the claims in Mirant and USGen New England makes the debtors' cost of unsecured debt at time of contracting an appropriate approach to determine the appropriate discount rate. Consistent with those other courts' approach on this issue, the Debtors submit that this Court should use the Debtors' cost of unsecured debt to determine the appropriate discount rate.

The market risk of contracting with the Debtors on an unsecured basis is the cost of the Debtors' unsecured debt at the time of the contracts. Yerian Aff. ¶¶ 12-16. The rates for Calpine's cost of unsecured debt at those times are 10.78% for the GTN contracts and 8.47% for the PNGTS contract. Yerian Aff. ¶¶ 16. The GTN rate is based on the weighed average yield of Calpine's publicly traded unsecured debt at the various times when the Debtors contracted with GTN; the PNGTS rate is based on the same approach. Id. at ¶¶ 12-16.[7] Using those rates, the asserted claims are reduced by more than $496 million. Id. at ¶ 6, table 4.

---

[7] The Debtors' rates are low estimates of the cost of unsecured debt because the calculation is based, in part, on an incremental risk-free yield to compensate for the additional length of time to maturity for the contracts. Id. ¶ 15, n.6.

10

### B.   This Court Can Alternatively Discount GTN's And PNGTS's Claims By Their Disclosed Rates Of Return.

Alternatively, this Court can rely on its decision in In re Chateaugay, 126 B.R. 165, 167 (Bankr. S.D.N.Y. 1991), and apply a discount rate that is based on the expected rate of return available to the claimant. [8]

In a somewhat different context, this Court adopted a discount rate based on the rate of return available to the claimant in In re Chateaugay, 126 B.R. at 167. In that case, a pension fund submitted a claim seeking a lump-sum distribution instead of cash payments in the future. In order to value properly the pension fund's claim, this Court sought to provide an amount of money that would permit the pension fund to receive the same future benefit if the lump sum was invested in a "prudent" portfolio. 126 B.R. at 177.

For GTN and PNGTS, the rate of return is not necessarily matched to investment in a "prudent" portfolio because, unlike the pension fund in In re Chateaugay, pipelines do not typically invest funds in the market with specific investment goals. Instead, GTN and PNGTS use their capital to develop further their pipeline and business interests. As a result, the best benchmark for the expected rate of return is based on the rates of return provided by GTN and PNGTS to FERC in their rate cases. See Yerian Aff. ¶¶ 17-19.

Under an approach based on FERC-disclosed rates of return, the applicable discount rates are 9.66% for GTN and 10.71% for PNGTS. Id. ¶ 19. Discounting the GTN and PNGTS claims to present value using the FERC-disclosed rate of return reduces these claims by more than $500 million.

---

[8]   The decisions in In re Chateaugay, 115 B.R. 760 (Bankr. S.D.N.Y. 1990) and In re Chateaugay, 126 B.R. 165 (Bankr. S.D.N.Y. 1991) were later vacated and withdrawn pursuant to a settlement agreement and stipulation entered into by the parties and ordered by the Southern District of New York. See In re Chateaugay, Nos. 89 Civ. 6012 (KTD), 90 Civ. 6048 (KTD), 1993 WL 388809 (S.D.N.Y. June 16, 1993). The settlement and stipulation fully resolved the dispute between the parties and as a part of the settlement agreement, the decision of this Court was withdrawn without criticism of its rationale. Id. at *3.

11

### C. This Court Should Reduce The GTN And PNGTS Claims To Their Present Values As Of The Petition Date.

GTN's and PNGTS's claims should be valued as of the petition date. Section 502(b) of the Bankruptcy Code requires that claims are valued "as of the date of the filing of the petition." 11 U.S.C. § 502(b). See also In re Trace Intern. Holdings, Inc., 284 B.R. 32, 38 (Bankr. S.D.N.Y. 2002) ("Where a party objects to a claim, § 502(b) of the Bankruptcy Code directs the Court to determine the amount of the claim as of the petition date, and allow it in that amount"). As noted by this Court: "Except for administrative expense priority claims under Code § 503, there are no claims against an estate which are valued as of any time other than the petition date." In re Chateaugay Corp., 126 B.R. at 174 n.13. As the Bankruptcy Code and the case law demonstrate, GTN's and PNGTS's claims must be valued as of the Debtors' Petition Date.[9]

### D. This Court Should Reject Any Argument That A Risk-Free Discount Rate Should Be Applied.

This Court should reject any assertion that a risk-free discount rate applies. One of the purposes of discounting streams of future payments to present value is to "fairly compensate the [claimant] but not overcompensate it at the expense of all other similarly situated creditors." In re Mirant Corp., 332 B.R. at 159. This Court in In re Chateaugay and the courts in Mirant and USGen New England have all rejected "risk-free" discount rates. 126 B.R. at 174; 332 B.R. at 159; 2007 WL 1074055 at*8.

Application of a risk-free discount rate to these claims would overcompensate GTN and PNGTS at the expense of other similarly situated creditors. As the courts in Mirant and US Gen New England recognized, a risk component existed when these pipelines contracted with the

---

[9] Although the contracts were repudiated post-petition, the appropriate date for valuing the claims is the petition date. If, however, this Court were to disagree with that date, then this Court should utilize the date of breach as the appropriate date. See Sharma v. Skaarup Ship Management Corp., 916 F.2d 820, 825 (2d Cir. 1990) ("It is a fundamental proposition of contract law…that the loss caused by a breach is determined as of the time of breach.").

Debtors. It is, therefore, necessary to include a risk factor when determining the appropriate discount rate. Yerian Aff. ¶ 11. Otherwise, GTN and PNGTS would be inappropriately rewarded by receiving "risk-based dollars discounted at a risk-free rate." Id. To the extent that the Debtors may not provide for a full repayment of all outstanding principal and accrued interest for general unsecured debt under all scenarios under the Plan, GTN and PNGTS are inappropriately rewarded at the expense of other unsecured creditors.

## II.   GTN AND PNGTS MUST APPLY FINAL FERC-APPROVED RESERVATION RATES IN CALCULATING THEIR CLAIMS.

This Court should reject GTN's and PNGTS's attempts to calculate their claims using increased reservation rates that were not in effect as of the Petition Date and that are not final FERC-approved rates. Chancellor Aff. ¶¶ 9-10, 18-19.

### A.   GTN And PNGTS Fail To Use FERC-Approved Reservation Rates That Were In Effect As of the Petition Date.

GTN and PNGTS should calculate their claims as of the Petition Date. As noted *supra*, section 502(b) of the Bankruptcy Code requires that claims are valued "as of the date of the filing of the petition." 11 U.S.C. § 502(b). The GTN reservation rate in effect on the Petition Date is $.0254825/Dth; the PNGTS rate in effect on that date is $0.83/MMBtus. Id. ¶¶ 9-10. By failing to apply these reservations rates, GTN and PNGTS grossly inflate their claims by approximately $213 million. Yerian Aff. ¶¶ 23-24.

### B.   GTN And PNGTS Use Speculative Reservation Rates To Calculate Their Claims.

The Proposed Reservation Rates GTN uses to calculate its claims are inherently speculative. GTN uses Proposed Reservation Rates from its pending FERC rate case, but GTN had not even requested that the FERC approve the Proposed Reservation Rates as of the Petition Date. Chancellor Aff. ¶ 15. FERC does not automatically approve these rates upon filing a rate

case. At the time GTN filed its initial claims, FERC had denied the Proposed Reservation Rate. Chancellor Aff. ¶ 13. Even now that FERC has conditionally approved that Rate "subject to refund," GTN's Proposed Reservation Rates are not final. Id. ¶ 15. Given that GTN's rate case is ongoing, these Rates are not final and it is ultimately unknowable at this time whether the Proposed Reservation Rates will become final rates. Id. ¶¶ 9, 15, 17.

Moreover, it is unlikely that GTN's Proposed Reservation Rates will ever receive final FERC approval. Id. ¶¶ 9, 16-17. Historically, pipelines' proposed rates and "approved rates subject to refund" do not become the pipelines' final approved rates. Id. ¶¶ 9-10, 15. In two recent cases, the final approved rate was actually *lower* than the pre-existing rate in effect at the time the pipelines initiated the rate cases. Id. ¶ 19. Until FERC issues a final ruling or approves a settlement, GTN's Proposed Reservation Rates are inherently speculative.

The proposed reservation rate PNGTS employs is arguably more speculative. PNGTS has not even proposed this rate to FERC. Id. ¶ 10, 18-19. The applicable PNGTS reservation rate should be the $0.83/MMBtu reservation rate Calpine is required to pay pursuant to the FERC-approved settlement in PNGTS's most recent rate case, not the rate PNGTS hopes to recover at some unspecified time in the future. Id. ¶ 18-19.

### C. Speculative Claims Are Not Allowed.

Under section 502(b) the Bankruptcy Code, speculative claims are not permitted. Additionally, under the applicable state law for the contracts, speculative damages are not permitted. See Scott v. Pacific Gas & Electric Co., 11 Cal. 4th 454, 473 (1995) ("It is fundamental that [contract] damages which are speculative, remote, imaginary, contingent, or merely possible cannot serve as a legal basis for recovery."); see also Triple-A Baseball Club Associates v. Northeastern Baseball, Inc., 655 F. Supp. 513, 545 (D. Me. 1987), rev'd in part on

other grounds, 832 F.2d 214 (1st Cir. 1987) ("It is well settled that damages are not recoverable when uncertain, contingent, or speculative.").

Because GTN and PNGTS calculated their claims using a speculative reservation rates, the claims themselves are speculative. When the actual, final FERC-approved rates are applied, GTN's claims are reduced by approximately $209 million and PNGTS's claims are reduced by $4 million. Yerian Aff. ¶¶ 23-24. This Court should reduce their claims by these amounts to avoid overcompensating GTN and PNGTS at the expense of other unsecured creditors.

### III.    GTN AND PNGTS MUST MITIGATE THEIR DAMAGES AND REDUCE THEIR CLAIMS ACCORDINGLY.

GTN and PNGTS are obliged to take reasonable steps to mitigate their avoidable losses. See Thrifty-Tel, Inc. v. Bezenek, 46 Cal. App. 4th 1559, 1568 (1996) ("A plaintiff has a duty to mitigate damages and cannot recover losses it could have avoided through reasonable efforts"); see also Searles v. Fleetwood Homes of Pennsylvania, Inc., 878 A.2d 509, 521 (2005) (same). Such mitigation opportunities extend for the remaining duration of the contracts.

Despite acknowledging that their claims for future damages are "subject to…reduction by potential mitigation, if any," GTN and PNGTS do not account for any mitigation opportunities. Because the mitigation analysis will be fact-intensive and time-consuming, the Debtors will work with GTN and PNGTS to schedule discovery and a hearing after the confirmation hearing to address the mitigation opportunities.

In the interim, the Debtors request that this Court address the issues in this Limited Objection, by determining the proper discount rates and the proper reservation rates, reducing the value of the asserted claims by more than $496 million at the October 24, 2007 hearing, and assisting the Debtors in resolving other similar types of unsecured claims.

15

## CONCLUSION

When the proper reservation rates and discount rates are applied to GTN's and PNGTS's claims, their overstated claims decrease by more than $496 million. This Court should order that GTN should receive no more than $112.7 million in claims and PNGTS should receive no more than $118.3 million.

## NOTICE

Notice of this Limited Objection has been provided to: (a) the U.S. Trustee; (b) counsel for the Creditors' Committee; (c) counsel for the Equity Committee; (d) counsel to the administrative agents for the Debtors' prepetition secured lenders; (e) counsel to the ad hoc committees; (f) counsel for the indenture trustees pursuant to the Debtors' secured indentures; (g) counsel to the Debtors' postpetition lenders; and (h) counsel to GTN and PNGTS. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required. A copy of the Limited Objection is also available on the website of the Debtors' notice and claims agent, Kurtzman Carson Consultants LLC, at http://www.kccllc.net/calpine.

No prior objection for the relief requests herein has been made to this or any other court.

## MEMORANDUM OF LAW

This Limited Objection includes citations to the applicable authorities and a discussion of their application to this Limited Objection. Accordingly, the Debtors respectfully submit that such citations and discussion satisfy the requirement that the Debtors submit a separate memorandum of law in support of this Limited Objection pursuant to rule 9013-1 of the Local Bankruptcy Rules for the Southern District of New York.

WHEREFORE, the Debtors respectfully request that the Court (a) enter an order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein, and (b) grant such other and further relief as is just and proper.

Dated:  September 21, 2007  
        New York, New York

Respectfully submitted,

 /s/ Mark E. McKane  
Richard M. Cieri (RC 6062)  
Marc Kieselstein (admitted *pro hac vice*)  
David R. Seligman (admitted *pro hac vice*)  
Jeffrey S. Powell (admitted *pro hac vice*)  
Mark E. McKane (admitted *pro hac vice*)  
KIRKLAND & ELLIS LLP  
Citigroup Center  
153 East 53rd Street  
New York, New York  10022-4611  
Telephone:   (212) 446-4800  
Facsimile:    (212) 446-4900

Counsel for the Debtors