David W. Elrod (Texas State Bar No. 06591900)
Craig Tadlock (Texas State Bar No. 00791766)
ELROD, PLLC
500 N. Akard St., Suite 3000
Dallas, Texas 75201
Telephone:  (214) 855-5188
Facsimile:  (214) 855-5183

**Counsel for Gas Transmission Northwest Corporation
And Portland Natural Gas Transmission System**

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re: ) | Chapter 11 |
| ) | Case No. 05-60200-BRL |
| CALPINE CORPORATION, *et al.*, ) | (Jointly Administered) |
| ) |  |
| Debtors ) |  |

**RESPONSE TO DEBTORS' REQUEST FOR BIFURCATION OF DEBTORS' LIMITED OBJECTION TO GAS TRANSMISSION NORTHWEST CORPORATION'S CLAIM NOS. 4562, 5912, 5914, 5927, 5928 AND 5929, AND PORTLAND NATURAL GAS TRANSMISSION SYSTEM'S CLAIM NOS. 4769 AND 4773**

Gas Transmission Northwest Corporation ("GTN") and Portland Natural Gas Transmission System ("PNGTS") (collectively referred to as the "Pipelines") hereby file this Response to Debtors' Request for Bifurcation of Debtors' Limited Objection to Gas Transmission Northwest Corporation's Claim Nos. 4562, 5912, 5914, 5927, 5928 and 5929, and Portland Natural Gas Transmission System's Claim Nos. 4769 and 4773 ("Response").[1]

---

[1] This Motion is expressly made subject to the objection of GTN and PNGTS to the jurisdiction of the Court with respect to the FERC jurisdictional contracts at issue, as discussed at length in the Pipelines' Joint Objection to Debtors' Amended Disclosure Statement for Debtors' First Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code filed by GTN and PNGTS on September 14, 2007 [Docket No. 5905], and in the Objection of PNGTS to Debtors' February 6, 2006 Notice Rejecting Certain Executory Contracts [Docket No. 832].

**INTRODUCTION**

Debtors have filed their Limited Objection to Gas Transmission Northwest Corporation's Claim Nos. 4562, 5912, 5914, 5927, 5928 and 5929, and Portland Natural Gas Transmission System's Claim Nos. 4769 and 4773 ("Limited Objection"). The hearing on the Limited Objection was originally scheduled for October 24, 2007, with a response deadline of October 10, 2007.

As set forth in the Limited Objection, Debtors have objected only to the amount of the GTN and PNGTS claims, arguing that the recoverable portion of such claims is significantly lower than the face amount of the Proofs of Claim. In support of their objection to the amount of the Pipelines' Proofs of Claim, Debtors rely on three theories: (a) the GTN and PNGTS claims do not reflect the correct contract reservation rates; (b) the GTN and PNGTS claims do not reflect any reductions for mitigation; and (c) the GTN and PNGTS claims have not been discounted to present value.

In their Limited Objection Debtors have additionally requested the Court to "bifurcate" the mitigation issues from the other issues raised in the Limited Objection, and have requested the Court to refrain from determining the mitigation issue until after confirmation.[2] *See* Limited Objection, p. 15. Debtors argue that the mitigation analysis is "fact-intensive and time-consuming," and would require discovery, whereas they contend that the discount rate and contract rate issues are straight forward exercises and can be resolved in advance of a confirmation hearing. *See* Limited Objection, p. 2, 15. GTN and PNGTS disagree with Debtors' assessment that the mitigation issue is any more fact-intensive or that resolving it will

---

[2] Although Debtors have not filed their request for bifurcation in motion form, as is required under Fed. R. Bankr. P. 9014(a), GTN and PNGTS will respond to Debtors' request for bifurcation as if a proper motion had been filed.

**RESPONSE TO DEBTORS' REQUEST FOR BIFURCATION OF DEBTORS' LIMITED OBJECTION TO GAS TRANSMISSION NORTHWEST CORPORATION'S CLAIM  NOS. 4562, 5912, 5914, 5927, 5928 AND 5929, AND PORTLAND NATURAL GAS TRANSMISSION SYSTEM'S CLAIM NOS. 4769 AND 4773
PAGE  2**

be any more time-consuming than resolution of the reservation rate or discount rate issues. All issues will require fact and expert discovery and testimony, and therefore a bifurcated trial is unnecessary, is inconsistent with principles of judicial economy, and will prejudice the Pipelines' rights in that bifurcation will postpone indefinitely any distribution to the Pipelines under the Plan and will effectively strip the Pipelines of their appellate rights with respect to the determination of the amount of New Calpine Common Stock that will be held in reserve for payment of their claims. Bifurcated trials of the limited issues presented by Debtors' Limited Objection are not conducive to principles of convenience, judicial economy, or fairness.

Furthermore, since the time of the filing of Debtors' Limited Objection, Debtors and the Pipelines have reached an agreement as to the estimated amount of the Pipelines' claims, thus obviating the primary rationale for Debtors' proposed bifurcation, which was to provide "critical clarity to all stakeholders" of the amount of the Pipelines' claims prior to the voting deadline. Accordingly, Debtors' continued request for separate trials of the issues to be tried in connection with the Pipelines' claims is both unnecessary and inconsistent with the parties' agreement.

The parties have agreed to an adjournment of the hearing on the substance of the Debtors' Limited Objection such that the merits will not be heard before November 14, 2007, and have agreed to a new deadline of October 31, 2007 for GTN and PNGTS to file their response on the merits. The only matter remaining for hearing on October 24, 2007 is the Debtors' request for bifurcation. Accordingly, this response addresses only Debtors' request for bifurcation.

## BACKGROUND & PROCEDURAL HISTORY

1. GTN and PNGTS own and operate natural gas pipelines in the United States. Each of them is a party to one or more long-term contracts with various Debtor entities for the firm transportation of natural gas on pipelines owned by PNGTS and GTN, respectively.

2. GTN has filed proofs of claim against Calpine Corporation ("Calpine Corp.")., Calpine Energy Services, L.P. ("CES"), Calpine Energy Services Holdings, Inc. ("CES Holdings"), CPN Energy Services GP, Inc. ("CPN GP"), CPN Energy Services, L.P. ("CPN LP"), and Calpine Power Company ("Calpine Power") in the amount of $525.1 million.

3. PNGTS originally filed proofs of claim against Calpine Corp. and Rumford Power Associates Limited Partnership ("Rumford Power") in the amount of $201.5 million.

4. Debtors have neither assumed nor rejected the long-term contracts which are the subject of the GTN and PNGTS proofs of claim. Instead, Debtors have "repudiated" the contracts and attempt to treat them as rejected, contrary to the Bankruptcy Code and binding precedent in this case regarding FERC's exclusive jurisdiction over these contracts. *See* 4th Amended Disclosure Statement, p. 138, §I, ¶3; 4th Amended Plan, p. 45, ¶2; p. 47, §E; Plan Supplement Exhibit 8, pp. 1-2; *see also California Dept. of Water Resources v. Calpine Corp.* (*In re Calpine Corp.*), 337 B.R. 27, 36 (S.D.N.Y. 2006).

5. By stipulation entered into between PNGTS and the Debtors on June 2, 2007, and so ordered by the Court on June 12, 2007, PNGTS was granted an allowed claim in the estates of Calpine Corp. and Rumford Power for an undetermined amount not to exceed $174 million. On September 28, 2007, PNGTS filed an Amended Proof of Claim against Calpine Corp. and

Rumford Power describing claims in the amount of $ 253.1 million, but recognizing the agreed cap of $174 million.[3]

6.      On June 20, 2007, Debtors filed their proposed Plan of Reorganization and Disclosure Statement.[4]  On September 14, 2007, GTN and PNGTS filed a Joint Objection to Debtors' First Amended Disclosure Statement ("Joint Objection") [Docket 5905] wherein the Pipelines raised a number of objections, including certain objections related to the Plan provisions governing the estimation of claims by Debtors for voting purposes and for purposes of establishing reserves of New Calpine Common Stock for distribution to claim holders.[5]  In particular, the Pipelines objected to Disclosure Statement provisions that allowed Debtors to treat a claim as having been objected to under Bankruptcy Code §502 even if no objection had been filed by Debtors at the time of voting, and then proceeding to estimate such claim -- and the amount of New Calpine Common Stock held in reserve to pay such claim -- as the Debtors saw fit.[6]  At the time of filing its Plan and Disclosure Statement, Debtors had not filed any objection

---

[3]  As specifically provided by the terms of the June 2, 2007 Stipulation, PNGTS reserved the right to file amended proofs of claim against Calpine Corp. and Rumford Power.

[4]  Subsequently, on August 27, 2007, Debtors filed their First Amended Plan and Disclosure Statement.

[5]  In their Joint Objection, the Pipelines argued that as stated by the District Court in its ruling in *In re Calpine Corp.*, 337 B.R. 27, 36 (S.D.N.Y. 2006), the courts are without subject matter jurisdiction to authorize the Debtors to reject, pursuant to Bankruptcy Code Section 365, agreements that are subject to the jurisdiction of FERC, "because doing so would directly interfere with FERC's jurisdiction over the rates, terms, conditions, and duration of wholesale energy contracts." *Id.*

[6]  Subsequent to the Pipelines' filing of their Joint Objection to Debtors' First Amended Disclosure Statement, Debtors filed a Second Amended Plan and Disclosure Statement on September 18, 2007, a Third Amended Plan and Disclosure Statement on September 23rd and 24th, respectively, and a Fourth Amended Plan and Disclosure Statement on September 27, 2007.

**RESPONSE TO DEBTORS' REQUEST FOR BIFURCATION OF DEBTORS' LIMITED OBJECTION TO GAS TRANSMISSION NORTHWEST CORPORATION'S CLAIM  NOS. 4562, 5912, 5914, 5927, 5928 AND 5929, AND PORTLAND NATURAL GAS TRANSMISSION SYSTEM'S CLAIM NOS. 4769 AND 4773
PAGE  5**

to the PNGTS proofs of claim, and had filed limited objections to some, but not all, of GTN's proofs of claim.[7]

7. In response to some of the issues raised by the Pipelines' Joint Objection, on September 21, 2007, Debtors' filed their Limited Objection [Docket 6074]. Debtors objected to the amount of the Pipelines' claims and raised three defenses which they contend would significantly lower the allowed amount of the Pipelines' claims. Specifically, Debtors asserted that: (a) the GTN and PNGTS claims do not reflect the correct contract reservation rates; (b) the GTN and PNGTS claims do not reflect any reductions for mitigation; and (c) the GTN and PNGTS claims have not been discounted to present value. Based on the contract reservation rate and discount rate defenses, Debtors have requested the Court to "cap" GTN's claims at $112.7 million and PNGTS's claims at $118.3 million. *See* Limited Objection, pp. 2, 8, 16.[8]

8. Debtors requested the Court to "bifurcate" the mitigation issues from the other issues raised in the Limited Objection, and requested the Court to refrain from determining the mitigation issue until after confirmation. *See* Limited Objection, p. 15.

9. Three days after the filing of Debtors' Limited Objection, and on the eve of the Disclosure Statement hearing, the Pipelines and Debtors entered into a claims estimation agreement whereby GTN's and PNGTS's claims have now been estimated at $300 million and $174 million, respectively, both for voting purposes and for purposes of establishing reserves of

---

[7] Prior to the filing of the Limited Objection, Debtors filed objections to GTN's claims against CES Holdings, CPN GP, CPN LP, and Calpine Power, but filed no objections to GTN's claims against Calpine Corp. or CES. Debtors had filed no objections to PNGTS's claims until the filing of the Limited Objection.

[8] In support of their objections related to the contract reservation rate and discount rate defenses, Debtors rely on the affidavits of Bruce Craig Chancellor, an officer of Calpine Corp. and Jared Yerian, a Managing Director at Alix Partners LLP, respectively, which are attached to Debtors' Limited Objection. Debtors have not presented any facts to support their mitigation defense, nor have they attached to their Limited Objection any evidence thereof.

**RESPONSE TO DEBTORS' REQUEST FOR BIFURCATION OF DEBTORS' LIMITED OBJECTION TO GAS TRANSMISSION NORTHWEST CORPORATION'S CLAIM  NOS. 4562, 5912, 5914, 5927, 5928 AND 5929, AND PORTLAND NATURAL GAS TRANSMISSION SYSTEM'S CLAIM NOS. 4769 AND 4773**
**PAGE  6**

New Calpine Common Stock under Articles VI.C and VII.C3 of the Plan (referred to herein as the "Claims Estimation Agreement"). The Claims Estimation Agreement was approved by the Court and is set forth in paragraph 33 of the September 26, 2007 Order approving the Disclosure Statement. *See* Order Approving Disclosure Statement, p. 9-10 [Docket 6136].[9]

## ARGUMENT

**A.   Debtors' Request for Bifurcation of the Mitigation Issue is Inconsistent With the Parties' Claims Estimation Agreement, is Not Conducive to Convenience, Expedition or Economy, and Will Prejudice the Rights of the Pipelines.**

10.   Debtors have requested that the Court bifurcate the mitigation defense which they have raised with respect to the Pipelines' claims, and try that issue separately, after confirmation. Debtors base their request for bifurcation on their argument that determination of the proper contract reservation rates and discount rates to apply to the Pipelines' claims involves "straightforward exercises," whereas "mitigation is a more fact-intensive inquiry." *See* Limited Objection, p. 2. Debtors further argue that resolution of the contract reservation rates and discount rates before the voting deadline "will significantly reduce GTN's and PNGTS's claims, consume little of this Court's or the parties' resources, and provide critical clarity to all stakeholders, including similarly situated unsecured creditors. *Id.* at pp. 8-9.

---

[9] The Order Approving Disclosure Statement provides as follows:

"Pursuant to section 502(c) of the Bankruptcy Code and Bankruptcy Rule 3018(a), the Claims of Portland Natural Gas Transmission System [Claim Nos. 4769 and 4773] [and] Gas Transmission Northwest Corporation [Claim Nos. 4562, 5912, 5914, 5927, 5928, and 5929] … shall be estimated for voting purposes as follows: (a) the Claims of [PNGTS] are estimated in the aggregate at $174 million; (b) the Claims of [GTN] are estimated in the aggregate at $300 million… Pursuant to section 502(c) of the Bankruptcy Code, the Claims of [PNGTS]…[and] [GTN]… shall be estimated for purposes of establishing reserves of New Calpine Common Stock under Articles VI.C and VII.C3 of the Plan as follows: (a) the Claims of [PNGTS] are estimated in the aggregate at $174 million; (b) the Claims of [GTN] are estimated in the aggregate at $300 million …; provided, however, that the amounts reserved for payment of such Claims may only be adjusted by Court order."

**RESPONSE TO DEBTORS' REQUEST FOR BIFURCATION OF DEBTORS' LIMITED OBJECTION TO GAS TRANSMISSION NORTHWEST CORPORATION'S CLAIM  NOS. 4562, 5912, 5914, 5927, 5928 AND 5929, AND PORTLAND NATURAL GAS TRANSMISSION SYSTEM'S CLAIM NOS. 4769 AND 4773**
**PAGE  7**

11. It is important to note that at the time that Debtors filed their Limited Objection, the Pipelines' claims had not been estimated under Bankruptcy Code §502. To resolve the Pipelines' objections to the claims estimation procedures described in the Disclosure Statement, Debtors and the Pipelines agreed to estimate the Pipelines' claims for the purposes of §502. As a result of the parties' Claims Estimation Agreement, the GTN claim amount was voluntarily reduced by more than $225 million -- from $525.1 million to $300 million. The PNGTS estimated claim amount remains at $174 million, which is the amount that the parties agreed on June 2, 2007 would be the maximum amount of the claim.[10]

12. The reduction in the GTN claim amount represents a discounting of the claim to present value and a reduction from GTN's proposed toll in its rate case to the toll to which all parties in interest, including Calpine and the FERC staff, have now agreed as part of the recent GTN rate case settlement.[11] These are the very issues Debtors assert in the Limited Objection. Accordingly, as a result of the parties' Claims Estimation Agreement, the "significant reduction" to the Pipelines' claims argued by Debtors has now occurred, thus providing -- prior to the voting deadline -- the critical clarity which Debtors sought to achieve for all stakeholders as to the amount of the Pipelines' claims.[12]

---

[10] In addition, even if the Debtors' Limited Objection were completely successful as to the PNGTS claim, the estimated amount would not be substantially reduced in light of the PNGTS Amended Proof of Claim. According to the Limited Objection, PNGTS's original claim would be reduced to $118.3 million. In the Amended Proof of Claim, PNGTS added claims of another $53.5 million. So, even if the Limited Objection were entirely successful, the PNGTS claim would still be $171.8 million – a reduction of slightly more than 1% that does not justify the effort of the Debtors' proposed bifurcation procedure.

[11] *See* Exhibit A (Motion of FERC Trial Staff and corresponding FERC Order confirming settlement in principle and suspending procedural schedule pending the filing of a formal offer of settlement based on the settlement in principle).

[12] Apparently Debtors do not believe that their mitigation defense will result in much of a reduction to the Pipelines' claims; if they believed so, they would have sought to have that issue determined prior to the voting

**RESPONSE TO DEBTORS' REQUEST FOR BIFURCATION OF DEBTORS' LIMITED OBJECTION TO GAS TRANSMISSION NORTHWEST CORPORATION'S CLAIM  NOS. 4562, 5912, 5914, 5927, 5928 AND 5929, AND PORTLAND NATURAL GAS TRANSMISSION SYSTEM'S CLAIM NOS. 4769 AND 4773
PAGE  8**

13. Despite the fact that the parties agreed to estimated claim amounts for both of the Pipelines' claims, Debtors continue to push forward with their request for a partial determination of the Pipelines' claims prior to the voting deadline. By having the Court determine a portion of the Pipelines' claims prior to the voting deadline, Debtors apparently hope to have the Pipelines' claims reduced further. However, this flies in the face of the parties' Claims Estimation Agreement. In exchange for the Pipelines' agreement not to pursue their objections to Debtors' Disclosure Statement, Debtors agreed that the GTN and PNGTS claims would be estimated in the amounts of $300 million and $174 million, respectively.

14. Any determination by this Court, prior to confirmation, of the contract reservation rate and discount rate issues which reduces the amount of the Pipelines' claims will allow Debtors, under the Plan and the Order Approving Disclosure Statement, to also reduce the number of shares of New Calpine Common Stock which Debtors must hold in reserve for distribution to the Pipelines. *See* 4th Amended Plan, pp. 52-53; *see also* Order Approving Disclosure Statement, pp. 9-10, ¶33. A bifurcation of the mitigation issue means that this Court's determination of the contract reservation rate and discount rate issues will result in an interlocutory order, thus making it more difficult, if not impossible, for the Pipelines to appeal any adverse determination on the contract reservation rate and discount rate issues.[13] The Pipelines' appellate rights will then effectively have been lost because any determination by the Court which reduces the amount of the Pipelines' claims will likewise reduce the number of shares of New Calpine Common Stock that Debtors must reserve for payment of such claims.

---

deadline as well, since doing so would have accomplished Debtors' goal of providing "critical clarity to all stakeholders" as to the amount of the Pipelines' claims prior to voting.

[13] Under Fed. R. Bankr. P. 8001, the Pipelines are entitled to appeal any final order, but must obtain leave of court to appeal an interlocutory order. *See* Fed. R. Bankr. P. 8001(a) and (b).

**RESPONSE TO DEBTORS' REQUEST FOR BIFURCATION OF DEBTORS' LIMITED OBJECTION TO GAS TRANSMISSION NORTHWEST CORPORATION'S CLAIM  NOS. 4562, 5912, 5914, 5927, 5928 AND 5929, AND PORTLAND NATURAL GAS TRANSMISSION SYSTEM'S CLAIM NOS. 4769 AND 4773
PAGE  9**

Even if the Pipelines' claims were later determined on appeal to be higher than the amount determined by this Court, the Plan's provisions could arguably prevent the Pipelines from recovering any greater distribution than the amount of New Calpine Common Stock that was reserved for them on the Effective Date of the Plan.  *See* 4th Amended Plan, p. 52, ¶3.

15. The Pipelines specifically objected to Debtors' Plan provisions which allow them to make their own determination of the amount of New Calpine Common Stock to hold in reserve for the payment of disputed claims.  *See* Pipelines' Joint Objection, ¶¶48-61.  The parties' Claims Estimation Agreement was crafted specifically to prevent Debtors from being able to use Plan Section VII.C.3. to override the Court's claims estimation determinations and thus reserve fewer shares of New Calpine Common Stock than might be necessary for payment of the Pipelines' allowed claims.  *See* Order Approving Disclosure Statement, pp. 9-10, ¶33. Debtors' request for bifurcation threatens to cause the same harm to the Pipelines that the Claims Estimation Agreement sought to remedy, i.e. the risk that under the Plan, Debtors would be allowed to reserve less New Calpine Common Stock than would ultimately end up being necessary to pay the Pipelines' claims.

16. Debtors should not be allowed, through a request for bifurcation, to circumvent the effect of the Claims Estimation Agreement which they entered into in order to obtain the Pipelines' agreement to stand down on their Disclosure Statement objections.  A bifurcated trial will serve no purpose but to prejudice the Pipelines and effectively deprive them of their appellate rights with respect to the amount of their distributions under the Plan.

17. Debtors' proposal to have a portion of the Pipelines' claims determined prior to the voting deadline would serve only to override the parties' Claims Estimation Agreement, and

would not accomplish the only task that remains for this Court: final determination of all issues related to the Pipelines' claims. There is no reason for the Court to determine only a portion of the Pipelines' claims, and such an exercise would do nothing but thwart principles of judicial economy, expedition, convenience, and justice. Moreover, postponing determination of the Debtors' mitigation defense until after confirmation, as requested by Debtors, would serve to substantially prejudice the Pipelines because it will postpone their distributions under the Plan -- possibly for many months or in excess of a year. The Pipelines are further prejudiced because they would be forced to ride the market for New Calpine Common Stock and thus face significant uncertainty as to the value of their ultimate distributions under the Plan. Each of the Pipelines' claims can and should be determined in a single proceeding. Judicial economy, convenience, and justice will be best served by trying all objection issues in one proceeding for each pipeline.[14]

18. Under California law, which governs the Debtors' contracts with GTN,[15] the burden of proof is on the breaching party to prove all matters related to mitigation, including the amount of mitigation. *Steelduct Co. v. Henger-Seltzer Co.*, 160 P.2d 804, 815 (Cal. 1945) ("The burden of proof is on the party whose breach caused damage, to establish matters relied on to mitigate damage."); *Vitagraph, Inc. v. Liberty Theatres Co. of California*, 242 P. 709, 712 (Cal. 1925) (the burden is on the defendant to prove mitigation); *Carnation Co. v. Olivet Egg Ranch*,

---

[14] Although Debtors have filed their objections to both the GTN and PNGTS claims in one objection, the claims of GTN and PNGTS are independent of one another and should be tried separately since they depend on different facts and different witnesses. Furthermore, the GTN and PNGTS pipelines at issue are on opposite sides of the country, and the contracts at issue are governed by the laws of different states, i.e., the GTN contracts are governed by California law and the PNGTS contract is governed by Maine law.

[15] *See* Declaration of Christopher W. Keegan In Support of Debtors' Limited Objection ("Keegan Declaration"), Exhibits A-H.

**RESPONSE TO DEBTORS' REQUEST FOR BIFURCATION OF DEBTORS' LIMITED OBJECTION TO GAS TRANSMISSION NORTHWEST CORPORATION'S CLAIM  NOS. 4562, 5912, 5914, 5927, 5928 AND 5929, AND PORTLAND NATURAL GAS TRANSMISSION SYSTEM'S CLAIM NOS. 4769 AND 4773
PAGE 11**

229 Cal. Rptr. 261, 265 (Cal. App. 1986) (same, and collecting cases). Maine law, which governs the Debtors' contracts with PNGTS is the same.[16] *See Lee v. Scotia Prince Cruises Ltd.*, 2003 ME 78, ¶22, 828 A.2d 210 (Me. 2003) ("the burden is on the defendant to show that the plaintiff failed to take reasonable steps to mitigate damages"); *Tang of the Sea, Inc. v. Bayley's Quality Seafoods, Inc.*, 1998 ME 264, ¶12, 721 A.2d 648 (Me. 1998) ("Failure to mitigate damages is an affirmative defense, and therefore [defendant] has the burden of proving that [the plaintiff] failed to take reasonable steps to mitigate its damages.").

19.     The Pipelines contend that they are "lost volume sellers" which would limit the amount of mitigation which applies, and that market conditions on the GTN and PNGTS pipelines are highly unfavorable; therefore, Debtors' mitigation defense will not result in any significant reduction, if any, in the amount of the Pipelines' claims.[17]

20.     Debtors seek a separate trial of a defense that they have raised in their Limited Objection, but for which they have presented no facts or evidence. Debtors have attached no evidence to their Limited Objection in support of their mitigation objection to the Pipelines'

---

[16] *See* Keegan Declaration, Exhibit I.

[17] *See* RESTATEMENT (SECOND) OF CONTRACTS §350 cmt. d (noting that "[t]he mere fact that an injured party can make arrangements for the disposition of the goods or services that he was to supply under the contract does not necessarily mean that by doing so he would avoid loss  Under the "lost volume" rule, the doctrine of mitigation "may not be imposed to deprive [a claimant] of the benefit of subsequent contracts which would have been available to him irrespective of the original breach." *See also Seaboard Music Co. v. Germano*, 101 Cal. Rptr. 255, 258, 24 Cal. App. 3d 618, 623 (Cal. App. 1972) (holding that the "trial court's ruling that plaintiff was not required to mitigate damages because it had the opportunity to release the repossessed equipment was correct"); RESTATEMENT (SECOND) OF CONTRACTS §347 cmt. f (noting that "[i]f the injured party could and would have entered into the subsequent contract, even if the contract had not been broken, and could have had the benefit of both, he can be said to have 'lost volume' and the subsequent transaction is not a substitute for the broken contract.").

    In the instant case, neither the GTN nor the PNGTS pipelines at issue are currently subscribed to capacity, nor are they operating at full capacity. Current market forecasts indicate that the GTN and PNGTS pipelines are likely to operate at somewhat less than full capacity for the foreseeable future and probably through the terms of the transportation contracts at issue.

**RESPONSE TO DEBTORS' REQUEST FOR BIFURCATION OF DEBTORS' LIMITED OBJECTION TO GAS TRANSMISSION NORTHWEST CORPORATION'S CLAIM  NOS. 4562, 5912, 5914, 5927, 5928 AND 5929, AND PORTLAND NATURAL GAS TRANSMISSION SYSTEM'S CLAIM NOS. 4769 AND 4773
PAGE  12**

claims, as is required to overcome the prima facie validity of a properly filed proof of claim. *See* Fed. R. Bankr. P. 3001(f). Debtors have not argued that they need additional time to prepare for the determination of their mitigation defense. In fact, Debtors have not attempted to take any discovery from the Pipelines on this issue. The Pipelines stand to be significantly prejudiced by the Debtors' requested postponement of the trial of a defense raised by Debtors, but as to which Debtors have presented no facts or evidence, and taken no discovery. Accordingly, Debtors' request for bifurcation of the mitigation issue should be denied.

21. Federal Rule of Civil Procedure 42(b) governs separate trials and provides as follows:

> "The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues…"[18]

In the normal course of litigation, all claims and issues in a civil action are presented for resolution in one trial. *Johns Hopkins University v. Cellpro*, 160 F.R.D. 30, 32-33 (D. Del. 1995). However, Fed. R. Civ. P. 42(b) provides that a court may order separate trials on claims or issues in an action when it is in the interest of efficient judicial administration. *Id.*

22. Courts have allowed for bifurcation of issues when the trial of one issue might obviate the need for a trial of another issue. *Id.* at 33; *see also In re Dow Corning Corp.*, 211 B.R. 545, 583 (Bankr. E.D. Mich. 1997) ("Many courts have… permitted separate issue trials when the issue first tried would be dispositive of the litigation. The courts do so because the efficiency of the trial proceedings is greatly enhanced when a small part of the case can be tried separately and resolve the case completely… 'This procedure should be encouraged because

---

[18] Fed. R. Civ. P. 42 is made applicable to contested matters under Fed. R. Bankr. P. 9014(c).

**RESPONSE TO DEBTORS' REQUEST FOR BIFURCATION OF DEBTORS' LIMITED OBJECTION TO GAS TRANSMISSION NORTHWEST CORPORATION'S CLAIM NOS. 4562, 5912, 5914, 5927, 5928 AND 5929, AND PORTLAND NATURAL GAS TRANSMISSION SYSTEM'S CLAIM NOS. 4769 AND 4773**
**PAGE 13**

court time and litigation expenses are minimized.'…"  (citing *Hoffman v. Merrell Dow Pharm., Inc. (In re Bendectin Litig.)*, 857 F.2d 290, 317 (6th Cir. 1988))); *Kaiser Steel Corp. v. Frates (In re Kaiser Steel Corp.)*, 110 B.R. 20, 21, 25 (D. Colo. 1990) (bankruptcy court's order of separate trial of factually unrelated counterclaims upheld where one of the primary reasons for the severance was the fact that the adjudication of the counterclaims against the debtor would be unnecessary unless the debtor succeeded in its claims.)

23.     Severing or bifurcating claims or issues for later trial in those situations in which the claims or issues may not ever need to be tried, is a more efficient use of the court's resources, and thus advances the principles of expedition and economy.  *In re Kaiser Steel Corp.*, 110 B.R. at 25.; *see also United States v. Alcan Aluminum Corp.*, 990 F.2d 711, 720 (2nd Cir. 1993) (stating that in a CERCLA case "[l]iability may be decided first before the more complicated questions implicated in clean-up measures, which includes fixing the proportionate fault of liable parties… Bifurcation and summary judgment provide power legal tools which, by effectively isolating the issues to be resolved, avoid lengthy and perhaps needless litigation.").

24.     Requests for bifurcation often arise in the context of bifurcating damage issues from liability issues.  *Cellpro*, 160 F.R.D. at 33; *SurfWalk Condominium Ass'n v. Wildman*, 84 B.R. 511, 514 (N.D. Ill. 1988).  In the instant case, the only issue presented by the Pipelines' proofs of claim and the Debtors' Limited Objection is the issue of damages.  A separate trial of Debtors' mitigation defense will not advance principles of expedition or judicial economy because regardless of how the Court determines the contract reservation rate and discount issues, the mitigation issue must still be determined.  The Pipelines have found no cases which would

**RESPONSE TO DEBTORS' REQUEST FOR BIFURCATION OF DEBTORS' LIMITED OBJECTION TO GAS TRANSMISSION NORTHWEST CORPORATION'S CLAIM  NOS. 4562, 5912, 5914, 5927, 5928 AND 5929, AND PORTLAND NATURAL GAS TRANSMISSION SYSTEM'S CLAIM NOS. 4769 AND 4773
PAGE  14**

support Debtors' proposed bifurcation or severance of one defense from the trial of other defenses when the only issue before the court is damages.

25. As stated by the Fifth Circuit, "this Court has cautioned that separation of issues is not the usual course that should be followed, and that the issue to be tried must be so distinct and separate from the others that a trial of it alone may be had without injustice." *State of Alabama v. Blue Bird Body Co., Inc.*, 573 F.2d 309, 318 (5th Cir. 1978) (citing *Swofford v. B & W, Inc.*, 336 F.2d 406, 415 (5th Cir. 1964)).

26. The District Court for the Southern District of New York has held that "[i]n determining whether separate trials are appropriate, a court considers (1) whether the issues sought to be tried separately are significantly different from one another, (2) whether the separable issues require the testimony of different witnesses and different documentary proof, (3) whether the party opposing the severance will be prejudiced if it is granted, and (4) whether the party requesting the severance will be prejudiced if it is not granted." *Hecht v. City of New York*, 217 F.R.D. 148, 150 (S.D.N.Y. 2003). *See also In re Zyprexa Products Liability Litigation*, 2004 WL 2812095, *3 (S.D.N.Y. 2004), not reported in F.Supp. 2d.

27. In the instant case, there is no justification for a separate trial of Debtors' mitigation defense which would outweigh the convenience and economy of having all issues related to the Pipelines' claims resolved in one proceeding. Debtors will not be prejudiced by having all issues tried together, but the Pipelines will be significantly prejudiced by having the mitigation issue tried after confirmation in that they will suffer a substantial delay in their receipt of any distributions under the Plan. Debtors' request for bifurcation serves only to keep the Pipelines' claims in the bucket of disputed claims for no justifiable reason. If the Pipelines'

claims are determined in their entirety prior to confirmation, then they – like nearly all other unsecured creditors in this case – will be able to receive their distributions under the Plan on or shortly after Plan confirmation, rather than waiting indefinitely for them. Debtors will not be prejudiced by the Pipelines' receipt of their distributions under the Plan at the same time that nearly all other unsecured creditors receive their distributions.

28. Contrary to Debtors' assertions, the mitigation issue is not any more fact-intensive or time-consuming to resolve than the contract reservation rate and discount rate issues. All three issues raised by Debtors' Limited Objection require fact and expert testimony and thus will require discovery by the parties. The discount rate issue is not as simple to resolve as Debtors appear to argue.[19] Contrary to Debtors' apparent assertions, there is no universal discount rate that is applied in all cases. As Debtors' own filings in this case indicate, there are several possible discount rates that could apply to the Pipelines' claims, and Debtors already have applied a variety of discount rates to various gas transportation claims presented in this Bankruptcy Case.

29. Despite the fact that in resolving claims Debtors have agreed to the application of a variety of discount rates, Debtors now take the position that there is little to no debate over which discount rate is appropriate in the resolution of the Pipelines' claims. Rather than requesting the Court early on in this Bankruptcy Case to establish a universal discount rate which would be applied to all pipeline claims, Debtors have clearly handled the discount rate issue on a

---

[19] In support of their discount rate argument, Debtors have attached to their Limited Objection the 27 page Affidavit of Jared Yerian, Managing Partner of AlixPartners, which contains a lengthy analysis and numerous calculations, and is replete with fact issues that will be subject to counter expert testimony and will have to be determined by this Court.

**RESPONSE TO DEBTORS' REQUEST FOR BIFURCATION OF DEBTORS' LIMITED OBJECTION TO GAS TRANSMISSION NORTHWEST CORPORATION'S CLAIM NOS. 4562, 5912, 5914, 5927, 5928 AND 5929, AND PORTLAND NATURAL GAS TRANSMISSION SYSTEM'S CLAIM NOS. 4769 AND 4773**
**PAGE 16**

case-by-case basis.[20] Furthermore, the discount rates which have been applied to other pipeline claims were negotiated discount rates, not court determinations of an appropriate discount rate.

30.     Notably, in the *Solutia* Bankruptcy case, where Calpine was the creditor as the result of the debtor's rejection of long-term contracts, Calpine took the position that its contract damages should be discounted at a "safe investment" discount rate.[21] GTN and PNGTS are in virtually the same position here as Calpine occupied in the *Solutia* bankruptcy. GTN and PNGTS agree that their contract damages should be calculated using a "safe investment" or risk-free rate.[22]

31.     The Debtors' assertions that the determination as to the appropriate discount rate to apply to the Pipelines' claims is a more straightforward exercise than the resolution of Debtors' mitigation defense is incorrect. It is likely that the parties will require less time to prepare for a determination of the mitigation issue than the other two issues – and less time to try it -- because there are limited facts involved in the mitigation determination. Moreover, the contract reservation rate, discount rate and mitigation issues involve interrelated and overlapping proof, including:

- the background facts of each of the Pipelines and their business;
- the business relationships between each of the Pipelines and Calpine;

---

[20] Despite Debtors arguments to the contrary, the resolution of the discount rate and contract reservation rate issues with respect to the GTN and PNGTS claims will not assist Debtors in resolving other similar types of unsecured claims. Debtors have already resolved, or are in the process of resolving, all pipeline claims other than those of GTN and PNGTS.

[21] *See* Exhibit B (Objection to Proofs of Claim Filed by Decatur Energy Center, LLC and Calpine Central, L.P.) at pp. 5-7.

[22] By contrast, streams of potential future mitigation, if any, should be discounted at a higher rate that reflects the risk and uncertainty of the Pipelines' business going forward in generating any such projected revenues. GTN and PNGTS understand that Calpine also took that position in the *Solutia* proceedings.

**RESPONSE TO DEBTORS' REQUEST FOR BIFURCATION OF DEBTORS' LIMITED OBJECTION TO GAS TRANSMISSION NORTHWEST CORPORATION'S CLAIM  NOS. 4562, 5912, 5914, 5927, 5928 AND 5929, AND PORTLAND NATURAL GAS TRANSMISSION SYSTEM'S CLAIM NOS. 4769 AND 4773
PAGE  17**

- the terms and conditions of the contracts at issue;

- the pipeline industry and the nature of its regulation by the FERC;

- the business factors and risks faced by each of the Pipelines in selling capacity going forward.

On all of these issues, bifurcation which will result in the unnecessary duplication of proof if separate trials are granted, and thus the unnecessary waste of this Court's time and resources.

32.    Finally, separate trials of Debtors' objections to the Pipelines' claims will result in the Pipelines' fact witnesses and in-house counsel having to travel across the continent from Calgary, Canada, Portland, Oregon, and other locations to New York twice, thus inconveniencing the Pipelines and causing them to unnecessarily incur additional costs in the determination of their claims.

33.    Judicial economy is not served by the piecemeal trial of the Pipelines' claims, but instead is best served by trying all of the issues raised by Debtors in their Limited Objection in one proceeding. The prejudice to the Pipelines which will result from separate trials outweighs any potential benefit to the Debtors by postponing the determination of Debtors' mitigation defense.

## CONCLUSION

34.    For the reasons set forth hereinabove, GTN and PNGTS respectfully request the Court to deny Debtors' request for bifurcation, and to grant the Pipelines all such other and further relief to which they are entitled.

Dated: October 10, 2007                    Respectfully submitted,

        /s/  David W. Elrod
David W. Elrod (TX State Bar 06591900)
Craig Tadlock (TX State Bar 00791766)
ELROD, PLLC
500 N. Akard Street, Suite 3000
Dallas, Texas 75201
Telephone: (214) 855-5188
Facsimile: (214) 855-5183

**ATTORNEYS FOR GAS TRANSMISSION NORTHWEST CORPORATION AND PORTLAND NATURAL GAS TRANSMISSION SYSTEM**

**CERTIFICATE OF SERVICE**

  I hereby certify that on October 10, 2007, the above-referenced document was served upon parties in interest via the Court's ECF notification system and in accordance with the Debtor's September 21, 2007 Notice of Debtors' Limited Objection to Gas Transmission Northwest Corporation's Claim Nos. 4562, 5912, 5914, 5927, 5928 and 5929, and Portland Natural Gas Transmission System's Claim Nos. 4769 and 4773 via facsimile and e-mail to: **(a)** Kirkland & Ellis LLP, Citigroup Center, 153 East 53rd Street, New York, New York 10022, *Attn: Edward Sassower;* and Kirkland & Ellis LLP, 200 East Randolph Street, Chicago, Illinois 60601, *Attn.: David R. Seligman, James J. Mazza, Jr., and Mark E. McKane* **(b)** the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004, *Attn: Paul Schwartzberg*; **(c)** counsel to the Unofficial Committee of First Lien Debtholders, Brown Rudnick Berlack Israels LLP, One Financial Center, Boston, Massachusetts 02111, *Attn.: Steven B. Levine*; **(d)** counsel to the Unofficial Committee of Second Lien Debtholders, Paul Weiss Rifkind Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019-6064, *Attn.: Alan W. Kornberg, Andrew N. Rosenberg, Elizabeth R. McColm*; **(e)** counsel to the Official Committee of Unsecured Creditors, Akin Gump Strauss Hauer & Feld LLP, 590 Madison Avenue, New York, New York 10022-2524, *Attn: Michael S. Stamer, Philip C. Dublin, Alexis Freeman*; **(f)** counsel to Debtors' postpetition lenders, Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York 10017, *Attn: David Mack and Peter Pantaleo*; **(g)** the Official Committee of Equity Security Holders, Fried Frank Harris Shriver & Jacobson LLP, One New York Plaza, New York, New York, 10004, *Attn: Gary Kaplan.*

                 ___/s/ Craig Tadlock_____
                 Craig Tadlock